IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KARISSA VACKER, MARK BOYETT, BRIAN LARSON, IRON TOWER PRESS, INC. and VAUGHN HEPPNER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 24-987 (RGA) |
| ELEVEN LABS INC., | ) ) | |
| Defendant. | ) ) | |

**OPENING BRIEF IN SUPPORT OF
DEFENDANT ELEVEN LABS INC.'S MOTION TO DISMISS
AND FOR ATTORNEYS' FEES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
began@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant Eleven Labs Inc.*

OF COUNSEL:

Dori Ann Hanswirth
Joseph A. Greenaway, Jr.
Theresa M. House
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000

December 6, 2024

TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.................2

III.    SUMMARY OF ARGUMENT .................................................................2

IV.     STATEMENT OF FACTS .......................................................................4

        A.      Defendant and Its Expressive Works.........................................4

        B.      Plaintiffs and Their Claims .....................................................5

V.      ARGUMENT ........................................................................................7

        A.      The DMCA Claims Are the Sole Basis for Federal Jurisdiction; Because
                They Are Fatally Flawed, the Court Should Dismiss in Full...................7

                i.      The Publisher Clients Lack Both Article III and Statutory Standing .........7

                ii.     The Author Plaintiffs Fail to Identify Any Protected Works...................10

                iii.    The Complaint Fails to State Any DMCA Claim as a Matter of
                        Law ........................................................................11

        B.      The Court Should Decline to Exercise Supplemental Jurisdiction.......................16

        C.      The Voice Actor Plaintiffs' Claims Fail Because New York and Texas
                Narrowly Construe Their Misappropriation Remedies, Which Do Not
                Encompass "Substantially Similar" Digital Voices and Expressly Exclude
                Claims Based on Works of Expression...................................................17

                i.      Neither State Has Applied Its Misappropriation Tort to Digital
                        Voices ......................................................................17

                ii.     Both New York and Texas Misappropriation Law Strictly Exclude
                        Expressive Works ........................................................21

        D.      Voice Actor Plaintiff Boyett's Claim Is Time-Barred...........................24

        E.      Defendant Is Entitled to Attorneys' Fees Under N.Y.'s Anti-SLAPP.................24

VI.     CONCLUSION.....................................................................................25

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Alan Ross Mach. Corp. v. Machinio Corp.*,
No. 17-cv-3569, 2019 WL 1317664 (N.D. Ill. Mar. 22, 2019) ................................................8

*Altbach v. Kulon*,
302 A.D.2d 655, 754 N.Y.S.2d 709 (3d Dep't 2003) ............................................................23

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) ...................................................................................12

*Andersen v. Stability AI Ltd.*,
No. 23-CV-00201-WHO, 2024 WL 3823234 (N.D. Cal. Aug. 12, 2024) .............................12

*Arrington v. New York Times Co.*,
55 N.Y.2d 433 (1982) .............................................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................4

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*,
No. 2:10-cv-09378-CBM, 2012 WL 7683452 (C.D. Cal. Nov. 20, 2012)......................11, 15

*Avaya, Inc. v. Telecom Labs, Inc.*,
No. 06-2490 (GEB), 2012 WL 13035096 (D.N.J. May 1, 2012) ......................................11, 14

*Bendit v. Canva, Inc.*,
No. 23-CV-473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023)...................................17

*Bobulinkski v. Tarlov*, No. 24-CV-2349(JPO), Opinion & Order at 20-33
(S.D.N.Y. Nov. 26, 2024) ......................................................................................................24

*Brown v. Entm't Merchants Ass'n & Entm't Software Ass'n*,
564 U.S. 786 (2011)................................................................................................................22

*Bungie, Inc. v. Aimjunkies.com*,
No. C21-0811 TSZ, 2022 WL 16853626 (W.D. Wash. Nov. 10, 2022)................................16

*Busch v. Viacom Int'l, Inc.*,
477 F. Supp. 2d 764 (N.D. Tex. 2007) ...................................................................................21

*Cardiovascular Provider Res. Inc. v. Gottlich*,
No. 05-13-01763-CV, 2015 WL 4914725 (Tex. App. Aug. 18, 2015) ............................17, 20

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
   381 F.3d 1178 (Fed. Cir. 2004) ...................................................................14

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) .......................................................................................14

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008) .......................................................................................8

*Doe 1 v. GitHub, Inc.*,
   672 F. Supp. 3d 837 (N.D. Cal. 2023) ............................................................8

*Doe 1 v. GitHub, Inc.*,
   No. 22-CV-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ...............12, 14

*Doe 1 v. GitHub, Inc.*,
   No. 22-CV-06823-JST, 2024 WL 1643691 (N.D. Cal. Apr. 15, 2024) ..............12

*Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*,
   451 F.3d 295 (2d Cir. 2006) .........................................................................10

*DSMC, Inc. v. Convera Corp.*,
   273 F. Supp. 2d 14 (D.D.C. 2002) ................................................................10

*Elvis Presley Enters., Inc. v. Capece*,
   950 F. Supp. 783 (S.D. Tex. 1996), *rev'd*, 141 F.3d 188 (5th Cir. 1998) ..............20

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008) .......................................................................23

*Finger v. Omni Publ'ns Int'l, Ltd.*,
   77 N.Y.2d 138 (1990) ...................................................................................21

*Fischer v. Forrest*,
   No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 128705 (S.D.N.Y. Jan. 13, 2017) ..........24

*FMHUB, LLC v. Muniplatform, LLC*,
   No. 19-15595 (FLW) (DEA), 2020 WL 4581828 (D.N.J. Aug. 10, 2020) ..........10, 14

*Foster v. Svenson*,
   128 A.D.3d 150 (1st Dep't 2015) ......................................................... *passim*

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ....................................................10, 12, 14

*Henley v. Dillard Dep't Stores*,
   46 F. Supp. 2d 587 (N.D. Tex. 1999) ..........................................................20, 21

*Hoepker v. Kruger*,
    200 F. Supp. 2d 340 (S.D.N.Y. 2002) ................................................................22

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020) ...............................................................................24

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    No. 16-CV 1318 (GBD) (BCM), 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017),
    *report & rec. adopted sub. nom., Joint Stock Co. v. Infomir LLC*, No. 16-CIV
    1318 (GBD) (BCM), 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) ......................15

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006) ...........................................................................24

*Lohan v. Perez*,
    924 F. Supp. 2d 447 (E.D.N.Y. 2013) ................................................................22

*Lohan v. Take-Two Interactive Software, Inc.*,
    31 N.Y.3d 111 (2018) ...........................................................................17, 18, 21

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................................8

*Matthews v. Wozencraft*,
    15 F.3d 432 (5th Cir. 1994) ...................................................................19, 20, 21

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) .............................................................................20

*Messenger v. Gruner + Jahr Printing & Publ'g*,
    208 F.3d 122 (2d Cir. 2000) .................................................................17, 18, 21

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011) ..........................................................................13, 14

*Nussenzweig v. diCorcia*,
    9 N.Y.3d 184 (2007) .........................................................................................24

*O'Grady v. Twentieth Century Fox Film Corp.*,
    No. 5:02 CV 173, 2003 WL 24174616 (E.D. Tex. Dec. 19, 2003) ........................20

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................9

*Patel v. Meridian Health Sys., Inc.*,
    666 F. App'x 133 (3d Cir. 2016) ........................................................................16

*Pellegrino v. Epic Games, Inc.*,
  451 F. Supp. 3d 373 (E.D. Pa. 2020) ................................................................23

*Poole v. Marks*,
  441 F. App'x 854 (3d Cir. 2011) .......................................................................17

*Raw Story Media, Inc. v. OpenAI, Inc.*,
  No. 24 CIV. 01514, 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024) ................8, 9, 10

*Roberson v. Rochester Folding Box Co.*,
  171 N.Y. 538 (1902) .........................................................................................18

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).............................................................................................7

*Steele v. Bongiovi*,
  784 F. Supp. 2d 94 (D. Mass. 2011) ...................................................................8

*Synopsys, Inc. v. Khanh*,
  No. 22-CV-02546-JD, 2023 WL 4748836 (N.D. Cal. July 24, 2023) ................11

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)......................................................................................7, 8, 9

*Tremblay v. OpenAI, Inc.*,
  716 F. Supp. 3d 772 (N.D. Cal. 2024) ...............................................................13

*Universal City Studios, Inc. v. Corley*,
  273 F.3d 429 (2d Cir. 2001).............................................................................22

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
  43 F.4th 1313 (11th Cir. 2022) ..........................................................................13

*Whitehurst v. Showtime Networks, Inc.*,
  No. 1:08-CV-47, 2009 WL 3052663 (E.D. Tex. Sept. 22, 2009).................22, 23

*Winer Fam. Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007)................................................................................4

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
  845 F. App'x 54 (2d Cir. 2021) ........................................................................13

## Statutes and Rules

17 U.S.C. § 301(a) ...................................................................................................23

17 U.S.C. § 1201(c) .................................................................................................14

17 U.S.C. § 1202(b) .................................................................................................12

17 U.S.C. § 1202(b)(1) ..................................................................................13

17 U.S.C. § 1202(b)(3) ..................................................................................13

28 U.S.C. § 1331 ...........................................................................................16

28 U.S.C. § 1338(a) .......................................................................................16

28 U.S.C. § 1367 ...........................................................................................16

28 U.S.C. § 1367(c)(1) ............................................................................16, 17

28 U.S.C. § 1367(c)(3) ..................................................................................16

Digital Millennium Copyright Act, Pub. L. No. 105-304, 112 (Oct. 28, 1998) ................... *passim*

Fed. R. Civ. P. 8 ............................................................................................10

Fed. R. Civ. P. 12(b)(1) ...................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................................1

N.Y. Civ. R. L. § 50 ..................................................................................17, 19

N.Y. Civ. R. L. § 51 ............................................................................... *passim*

N.Y. C.P.L.R. § 215(3) ..................................................................................24

N.Y. Civ. R. L. § 70-a(1) ........................................................................3, 4, 24

N.Y. Civ. R. L. § 76-a(1) ...............................................................................25

Texas Const., Article 1 § 8 .............................................................................21

Tex. Prop. Code. Ann. §§ 26.001-26.015 .....................................................19

**Other Authorities**

4 *Nimmer on Copyright* § 12A.03[D][2] (2024) .........................................19

*Restatement (Second) of Torts* § 652C (1977) ............................................20

## I.    INTRODUCTION

This lawsuit attacks Defendant Eleven Labs Inc.'s unique, voice-generating artificial intelligence (AI) program, by claiming that Defendant's alleged use of unidentified audiobook recordings to create two premade synthetic voices called "Adam" and Bella" (a) violated the Digital Millennium Copyright Act, Pub. L. No. 105-304, 112 (Oct. 28, 1998) (the "DMCA") and (b) misappropriated the identities of the two voice actor Plaintiffs, one of whose audiobook narrations were allegedly affixed in those unidentified recordings. Because Plaintiffs[1] lack standing and fail to state a claim, Defendant respectfully requests that this Court dismiss the Complaint (D.I. 1) under Fed. R. Civ. P. 12(b)(1) and (b)(6), and award Defendant its attorneys' fees under New York's anti-SLAPP Law, on grounds that this is a strategic lawsuit aimed at Defendant's lawful exercise of its right of free expression (i.e., a "SLAPP" suit).

Plaintiffs' lengthy Complaint—one of many around the country taking aim at new AI technology—leans heavily on technical jargon, but its relevant factual content is fatally thin. It alleges no cognizable injury for any of the DMCA claims, which means the Author Plaintiffs lack standing and the case can and should be dismissed in its entirety for that reason. On the merits, their allegations fare no better, failing to identify essential facts to support their mishmash of legal theories (as one example, omitting any allegation that Defendant "trafficked" in anything; obviously fatal to their DMCA "trafficking" claim) and advancing theories that have already been rejected by other courts. The Voice Actors Plaintiffs' state-law claims likewise fail for lack of supplemental jurisdiction and because their allegations do not fit within the limited definitions of misappropriation under New York and Texas law. Plaintiffs' Complaint is legally unsustainable and lacks a substantial basis in law or fact. It should be dismissed in full, and Defendant should be

---

[1] We refer to Plaintiffs Karissa Vacker and Mark Boyett as "Voice Actor Plaintiffs," and to Brian Larson, Iron Tower Press Inc. ("ITP"), and Vaughn Heppner as "Author Plaintiffs."

awarded its attorneys' fees under New York's anti-SLAPP law.

## II.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed and served their Complaint on August 29, 2024, asserting two sets of claims by two sets of plaintiffs. First, the Voice Actor Plaintiffs assert claims for misappropriation under Section 51 of the New York Civil Rights Law (for Plaintiff Boyett, a New York resident) and Texas common law (for Plaintiff Vacker, a Texas resident). Second, the Author Plaintiffs, who claim to own certain copyrights in some works associated with Plaintiff Boyett's audiobook performances (but not all of them, and none of Plaintiff Vacker's) assert three claims under the DMCA: (1) § 1201(a)(1)(A) (the "Access Control Claim," claiming circumvention of a technological measure protecting access to a copyrighted work (a "TPM")); (2) § 1201(a)(2) (the "Trafficking Claim," based on alleged trafficking in technology enabling circumvention); and (3) § 1202(b)(1) (the "CMI Removal Claim," based on alleged removal of "copyright management information" ("CMI")). No scheduling order has been submitted in the case, and discovery has not commenced.

## III.    SUMMARY OF ARGUMENT

Plaintiffs' claims relate to a developing technology, but their legal theories fail based on established legal principles. The sole basis alleged for this Court's jurisdiction is that the Author Plaintiffs filed federal claims under the DMCA.[2] All three of those claims, however, are blocked for at least two reasons: (1) the Author Plaintiffs do not and cannot allege injury that is attributable to alleged violations of that statute, and thus lack standing; and (2) the Author Plaintiffs fail to identify any protected work for which they purportedly own a relevant copyright. *Either* of those failures is sufficient, on its own, to dismiss *all* of the DMCA claims.

---

[2] Defendant is a citizen of New York, as is Plaintiff Boyett (D.I. 1 ¶¶ 2, 6); thus, there is no diversity jurisdiction.

The DMCA claims also fail individually. Specifically, (i) for the Trafficking Claim under § 1201(a)(2), Plaintiffs do not and cannot allege that Defendant "trafficked" in any circumventing technology; (ii) for the CMI Removal Claim under § 1202(b)(1), they do not and cannot allege that any output was identical to their works, and cannot satisfy the "double-scienter requirement"; and (iii) for the Access Control Claim § 1201(a)(1)(A), they do not allege any nexus to infringement, or that Defendant circumvented a TPM controlling access.

With no viable federal claim, this Court should dismiss the balance of the Complaint, in which the Voice Actor Plaintiffs claim state-law misappropriation. The Voice Actor Plaintiffs do not allege that they qualify for supplemental jurisdiction, and it would be inappropriate to exercise it here, where the federal claims fail and the Voice Actor Plaintiffs' state-law claims call for an expansion of state law. Both Section 51 (for Boyett) and Texas's common-law misappropriation remedy (for Vacker) are narrowly construed to *solely* prohibit advertisements and affirmatively do *not* apply to the use alleged here, in connection with protected works of expression. Further, neither state has applied their misappropriation law to an alleged sound-alike digital replica of a living person's voice, and in fact, the New York State Legislature declined to extend its strictly guarded statutory right to such claims. Further, Boyett's claim is time-barred, and Vacker's claim fails because she is not a famous singer, nor is she alleged to be identifiable to more than a *de minimis* number of people.

Because Plaintiffs' claims (a) take aim at Defendant's exercise of free speech; and (b) fail at the pleading level, this Court should conclude that this is a SLAPP suit. Thus, in addition to dismissal, this Court should award Defendant attorneys' fees under N.Y. Civ. R. L. § 70-a(1).

## IV.    STATEMENT OF FACTS[3]

### A.    Defendant and Its Expressive Works

Defendant is a startup research company that focuses on deployment of AI to generate audio content, including synthetic voices that can be used to generate narrations. D.I. 1 at 1. Defendant launched in beta on January 23, 2023. *Id*. at 9, ¶ 35 n.4.[4] Upon release, Defendant offered nine premade, synthetic voices that could be used with its text-to-speech platform, called "Speech Synthesis": Adam, Antoni, Arnold, Bella, Domi, Elli, Josh, Rachel, and Sam. *Id.*; Ex. A.

Speech Synthesis is both a scientific breakthrough and highly creative artistic expression. Speech Synthesis was designed to communicate the *meaning* and *emotion* of written text by high contextual understanding. D.I. 1 ¶ 73 (alleging the software operates by: "identifying sentence boundaries" so that it conveys "*context and emotional cues* within the text"; "identify[ing] and represent[ing] prosody (rhythm, stress, and intonation) *based on the text's context and semantic content*"; and "phonemically interpret[ing] the text" and "match[ing]" a "synthesized voice" with "phonemes" to "produce speech that *sounds natural*") (emphases added).

Speech Synthesis does so by using an AI model that has high understanding of how text should be spoken in any specific context and then layering over outputs of that model a "voice" which speaks the input text.  *Id.*  The "voice" itself is a computer-generated audio sound created through "speaker embedding[s]," or a series of numbers that "represents" that "voice" in a format that computers can understand and use. *Id.* ¶ 73(iii). The combination of this model and these

---

[3] The following is based on the allegations of Plaintiffs' Complaint, which are deemed to be true for purposes of this Rule 12 motion only, and only to the extent that they are not conclusory and are supported by "plausible" factual content. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] Plaintiffs cite an archived version of Defendant's landing page, dated March 5, 2023. D.I. 1 ¶ 35 n.4. A copy of the landing page is annexed as Ex. A to the Declaration of Dori Ann Hanswirth ("Hanswirth Decl.") ("Ex. A"), filed herewith. Motions to dismiss may consider materials referenced in the complaint. *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007).

speaker embeddings is what allows an AI voice model to produce audio works, such as narrations, based on text or audio a user inputs into an AI model. *See id.* ¶ 73.

Defendant's synthetic voices, including as relevant here the premade "Adam" and "Bella" voices, are each different sets of speaker embeddings that represent and communicate Defendant's portrayal of unique human voices. *Id.* ¶¶ 75, 86(4). As Plaintiffs acknowledge, Defendant designed and crafted (among others) the Adam and Bella voices using a creative process (which included rejecting synthesized voices that did not sound, in Defendant's opinion, "sufficiently real"), such that the audio works the voices create would be recognized as human voices, reflect human-recognizable features (*e.g.*, gender, age, accent, pitch and speaking style), could "synthesiz[e] vocal emotion and intonation," and could be used to create additional creative, expressive works by Defendant and its users. *Id.* ¶¶ 41, 45, 81 n.35, 83, 107. Indeed, even the selection of their names—"Adam" and "Bella"—is Defendant's creative expression.

The result of this creative process is the crafting of synthetic voices that are "able to *communicate feelings and nuanced meanings*," *id.* ¶ 84 n.38 (emphasis added), as well as a platform that can use those voices to "generat[e] speech that aligns with the *intended message* and *emotional tone*," *id.* ¶ 73(i) (same) (emphasis added)—in other words, based on Plaintiffs' own allegations, both the premade voices and the platform as a whole are highly creative works of artistic expression.

### B.    Plaintiffs and Their Claims

The Voice Actor Plaintiffs are voice actors who are alleged to have developed "recognition in the audiobook industry" but do <u>not</u> claim to be celebrities. *Id.* ¶¶ 12, 19. The Author Plaintiffs are two authors and a publisher entity who allegedly own copyrights in unidentified audiobooks or texts that were narrated by Boyett (but not Vacker), which the Complaint concedes represent a

small fraction of the universe of voice work that Boyett has performed.[5] *Id.* ¶¶ 3-5.

The Author Plaintiffs' dispute centers on the creation of the Adam premade voice (i.e., they make no claims based on the Bella voice). Specifically, they allege that Defendant used unspecified audio content from copyrighted recordings of unidentified audiobook narrations by Voice Actor Plaintiff Boyett as raw material to create the Adam voice—more specifically, the *speaker embeddings* that comprise the Adam voice. *Id.* ¶¶ 23-30, 153-79. The Author Plaintiffs do not, however, allege that Defendant engaged in copyright infringement, nor do they claim that it distributed their works or any content that was substantially similar to any expression in their works. D.I. 6; D.I. 1. Indeed, they do not identify any of the works that Defendant purportedly used, nor do they provide any copyright registration information for them. D.I. 1 ¶¶ 23-30.

They also do not identify what CMI was allegedly attached to their works, nor what Defendant purportedly removed. *Id.* ¶ 153-79. They do not allege that Defendant distributed, sold, provided, or otherwise trafficked any CMI removal software; instead vaguely claiming "on information and belief" that it "created data processing procedures and/or processes to streamline the removal of DRM [digital rights management] protections from DRM-protected works" so that they could be "used to train its AI models"—in other words, a purported CMI removal tool that, based on Plaintiffs' own allegations, would have been used solely on an internal basis. *Id.* ¶ 164. They do not identify the TPMs that were allegedly circumvented, nor do they allege how Defendant purportedly accomplished that task. *Id.* ¶ 153-79. They do not allege any injury, except for a stray, unsupported allegation that CMI removal deprived them of licensing fees. *Id.* ¶ 173.

The Voice Actor Plaintiffs claim that the Adam and Bella voices were created using their

---

[5] The Voice Actor Plaintiffs do not claim to own any copyrights, and the Author Plaintiffs do not claim to own any interest in the Voice Actor Plaintiffs' likenesses. D.I. 1.

audiobook performances (which, again, they do not identify) as raw materials to create new, synthetic voices that purportedly "mimic Plaintiffs' distinctive vocal timbres, accents, intonation, pacing, vocal mannerisms, and speaking styles." *Id.* at 2.[6] The Voice Actor Plaintiffs do not claim any advertising use by Defendant of their voices. Rather, the voices were available on Defendant's website, in a drop-down menu, displayed in alphabetical order when a user clicked to expand it. *Id.* ¶ 36 (screenshot); Ex. A.

Defendant did not indicate in any fashion that the Adam and Bella voices were intended to, or did, mimic or otherwise seek to replicate any individual's voice. D.I. 1 ¶ 36; Ex. A. Likewise, Defendant never referenced or depicted the Voice Actor Plaintiffs' names, images, portraits, or pictures in any fashion, including in connection with its platform, website, or the Adam or Bella voices. D.I. 1 ¶ 36; Ex. A.

## V.    ARGUMENT

### A.    The DMCA Claims Are the Sole Basis for Federal Jurisdiction; Because They Are Fatally Flawed, the Court Should Dismiss in Full.

#### i.    *The Publisher Clients Lack Both Article III and Statutory Standing*

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant, and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "The party invoking

---

[6] Although the Complaint repeatedly references "clones" of the Voice Actor Plaintiffs' voices, the allegations are clear that Plaintiffs are not asserting that Adam or Bella used their unaltered voices; rather, they claim that the synthetic voices are "substantially similar" or "close[] matches" to their voices. D.I. 1 ¶¶ 122-23,143; *id.* at 1. Defendant does offer a "voice clone" service, to which Plaintiffs allude in their Complaint, *id.* ¶¶ 6, 73-83, but Adam and Bella are not voice clones; they are pre-made synthetic voices not designed to sound like any existing person, D.I. 1 ¶ 36; Ex. A.

federal jurisdiction bears the burden." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, the Author Plaintiffs must plausibly allege, for "each form of relief," a concrete injury that is "actual or imminent" and "fairly traceable" to the alleged DMCA violation. *TransUnion LLC*, 594 U.S. at 431; *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733-34 (2008).

In addition to Article III, Section 1203(a) of the DMCA states that "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action … for such violation." Merely alleging the DMCA was violated does not suffice; "to have standing," the plaintiff "must show that [it] was injured *by that violation*." *Steele v. Bongiovi*, 784 F. Supp. 2d 94, 97-98 (D. Mass. 2011) (emphasis added); *Raw Story Media, Inc. v. OpenAI, Inc.,* No. 24 CIV. 01514, 2024 WL 4711729, at *3 (S.D.N.Y. Nov. 7, 2024) (no standing where "Plaintiffs have not alleged any *actual* adverse effects stemming from this alleged DMCA violation.") (emphasis in original). A "failure to allege any injury" traced to the alleged DMCA violation is "fatal." *Alan Ross Mach. Corp. v. Machinio Corp.*, No. 17-cv-3569, 2019 WL 1317664, at *4 (N.D. Ill. Mar. 22, 2019).

Here, the Author Plaintiffs have not even attempted to allege any injury flowing from their claims under Sections 1201(a)(1) (Access Control Claim) or 1201(a)(2) (Trafficking Claim). D.I. 1 ¶¶ 153-79. That alone is fatal to those claims. Rather, they solely allege to have suffered actual damages "as a result of [Defendant's] violations of [§] 1202 of the DMCA." *Id.* ¶ 173.[7]

---

[7] Apparently in support of their request for injunctive relief, the Author Plaintiffs allege that Defendant's conduct has caused irreparable harm "by creating unlicensed and unauthorized copies of their work that are free of DRM and copyright information, and risking their inclusion in future datasets used by Eleven Labs, its employees, and/or distributed to others for use in AI training." D.I. 1 ¶ 175. But merely "creating unlicensed or unauthorized copies of works" (without actual injury) is insufficient to allege injury for standing. *See supra* IV(A)(i). The hypothetical risk of inclusion in future datasets also does not suffice. First, this is an allegation of future harm alone. *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 850-51 (N.D. Cal. 2023) (allegation that inclusion of plaintiffs' code in training data created an "increased and imminent risk" that their works could be copied by others "cannot provide standing for Plaintiffs' damages claims"); *Raw Story Media*, 2024 WL 4711729, at *4-5 (same). Nor is it sufficient for injunctive relief, because Plaintiffs have

For their 1202 claim, i.e., their CMI Removal claim, the Author Plaintiffs allege that they have been injured "in the form of lost licensing fees." *Id.* But they do not identify, much less describe, any such purported losses. To the extent that the Author Plaintiffs are alleging that the removal of CMI deprived them of licensing fees that should have been paid *by third parties*, that theory is contradicted by the allegations in their Compliant. Indeed, each of the Author Plaintiffs' DMCA claims is based on Defendant's allegedly using "Plaintiffs' copyrighted audio recordings to train its AI system," *id.* ¶¶ 69-70, 100, 155, 158, 164, 177, meaning they are solely premised on a use that was exclusively *internal* to Eleven Labs' operations. The Complaint is devoid of any allegation that Defendant ever disseminated *any* of the Author Plaintiffs' works to any third party, in whole or in part. *See generally id*. Thus, the Author Plaintiffs do not and cannot plausibly allege a causal connection between Defendant and any third-party license.

Further, Plaintiffs have not alleged that Defendant failed to pay the appropriate licensing fee for any of their audiobooks, nor could they. And even if they tried, this would be a complaint about Defendant's alleged *use* of the Author/Publishing Plaintiffs' works, not the removal of CMI, which is not a cognizable injury under Section 1202 of the DMCA. Indeed, in a decision issued just last month by the U.S. District Court of the Southern District of New York, Judge McMahon flatly rejected a similar argument in *Raw Story Media*:

> Let us be clear about what is really at stake here. The alleged injury for which Plaintiffs truly seek redress is not the exclusion of CMI from Defendants' training sets, but rather Defendants' *use* of Plaintiffs' articles to develop ChatGPT without compensation to Plaintiffs. *See* Compl. ¶ 57 ("The OpenAI Defendants have

---

not and cannot allege any plausible facts to support their speculation that Defendant's internal dataset either contains copies of their work or would ever be distributed to others. *Raw Story Media*, 2024 WL 4711729, at *4-5 (plaintiffs lacked standing to seek injunctive relief because they had not "plausibly alleged that there is a 'substantial risk' that the *current* version of ChatGPT will generate a response plagiarizing one of *Plaintiffs'* articles") (emphasis in original); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (injury must be "real," not "conjectural"); *TransUnion*, 594 U.S. at 438.

acknowledged that use of copyright-protected works to train ChatGPT requires a license to that content, and in some instances, have entered licensing agreements with large copyright owners...They are also in licensing talks with other copyright owners in the news industry, but have offered no compensation to Plaintiffs."). Whether or not that type of injury satisfies the injury-in-fact requirement, it is not the type of harm that has been "elevated" by Section 1202(b)(i) of the DMCA. *See Spokeo*, 578 U.S. at 341, 136 S. Ct. 1540 (Congress may "elevate to the status of legally cognizable injuries, *de facto* injuries that were previously inadequate in law.").

2024 WL 4711729, at *5 (dismissing for lack of standing). This Court should reject it here as well

and hold that the Author Plaintiffs have not and cannot meet their burden to allege an injury.

ii.    ***The Author Plaintiffs Fail to Identify Any Protected Works***

The Author Plaintiffs also fail to allege any valid copyright interest that has been

purportedly implicated, as is required under both Section 1201 and 1202 of the DMCA, and thus

fail to comply with Fed. R. Civ. P. 8, *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295,

307 (2d Cir. 2006); this, too, warrants dismissal, *see, e.g., FMHUB, LLC v. Muniplatform, LLC*,

No. 19-15595 (FLW) (DEA), 2020 WL 4581828, at *6, (D.N.J. Aug. 10, 2020); *Free Speech Sys.,*

*LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019). Furthermore, the Author Plaintiffs

fail to identify any registered copyrights. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 24

(D.D.C. 2002), *appeal dis'd*, 349 F.3d 679 (D.C. Cir. 2003) ("a claim under the … Digital

Millennium Copyright Act cannot be brought prior to actually applying to register a copyright.").

Plaintiff ITP fails to allege its ownership of *any* copyright at all.[8] The Author Plaintiffs

Larson and Heppner fail to identify any relevant copyrighted works. To the contrary, they allege

that "Eleven Labs has used a *substantial number* of Author Plaintiffs' copyrighted audio

---

[8] Instead, it alleges that it "publishes written works and commissions audiobook narrations," D.I. 1 ¶ 4, and that the Author Plaintiffs, collectively, "are authors and copyright owners of certain audiobook recordings performed by Boyett and/or the underlying written work narrated by him," *id.* ¶ 23. But publishing a work does not confer ownership of its copyright, and ITP's conclusory "group pleading" allegations fail to show it owned anything at all.

recordings to train its AI system…," D.I. 1 ¶¶ 155, (emphasis added), but never specify *even a single work*, much less a registered work (D.I. 6), that they claim was purportedly included in this "substantial number." Nor do they allege any facts that would support an inference that their works were actually used by Defendant. To the contrary, they freely admit that they each authored only a fraction (and own copyrights in an even smaller fraction) of Boyett's narrated audiobook performances (D.I. 1 ¶¶ 26-27, 29[9])—and that there are scores of other available recordings of Boyett's voice, spanning a range of authors and audio/audiovisual media, which they do not own.[10] Nor do they allege any factual matter that plausibly connects the contents of their works to any training dataset. Thus, it is complete speculation for the Author Plaintiffs to assert that *their copyrighted works* were allegedly used by Defendant.

### iii.    *The Complaint Fails to State Any DMCA Claim as a Matter of Law*

**No Trafficking Claim Under § 1201(a)(2)**. Known as the "anti-trafficking" provision, Section 1201(a)(2) "focus[es] on whether the defendant trafficked in a [technology] that circumvents a[] [TPM]"—that is, whether the defendant manufactured, imported, offered, provided, or otherwise trafficked such a device or service *to the public*. *Avaya, Inc. v. Telecom Labs, Inc.*, No. 06-2490 (GEB), 2012 WL 13035096, at \*9 (D.N.J. May 1, 2012); *Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, No. 2:10-cv-09378-CBM, 2012 WL 7683452, at \*9 (C.D. Cal. Nov. 20, 2012); *Synopsys, Inc. v. Khanh*, No. 22-CV-02546-JD, 2023 WL 4748836, at \*3 (N.D. Cal. July 24, 2023).

---

[9] Larson claims to own only *some* copyrights in a *portion* of Boyett's performances of his works, which (again) are not identified. D.I. 1 ¶ 27.

[10] *E.g.,* D.I. 1 ¶¶ 2 (Boyett "creates audiobook narrations of published books *for a number of publishers*"); 18 (Boyett has "narrated an *extensive* catalog of works spanning *a range of literary genres*"); 20 ("Boyett has produced a *voluminous* body of audiobook narrations") (emphases added); *id.* ¶¶ 2, 21 (alleging Boyett and his "vocal talent" has appeared in 17 films and TV shows, as well as in advertisements).

This claim fails for the simple reason that the Author Plaintiffs do not and cannot allege that Defendant held out to others any circumventing technology. Rather, they allege a purely *internal* process, never intended for nor offered to *any* third party. D.I. 1 ¶ 164.

**No CMI Removal Claim Under § 1202(b)(1)**. Section 1202(b)(1) requires: (1) that the defendant "intentionally remove[d]" CMI from copyrighted works, *and* (2) the defendant undertook such removal "having reasonable grounds to know[] that [the removal] will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).

Here, in addition to failing to identify even a single work from which Defendant allegedly removed CMI, which by itself bars this claim, the Author Plaintiffs also fail to identify what CMI was purportedly removed. *Free Speech Sys.*, 390 F. Supp. 3d at 1175 (dismissing DMCA claim where the plaintiff failed to "describe what the removed or altered CMI was"); *Andersen v. Stability AI Ltd.*, No. 23-CV-00201-WHO, 2024 WL 3823234, at *6 (N.D. Cal. Aug. 12, 2024). Further, "wholly conclusory" allegations that CMI includes "the creator's name" or was in the "the form of artist's signatures" are insufficient; a plaintiff must "identify the exact type of CMI included in [plaintiff's] works." *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 872 (N.D. Cal. 2023). The Author Plaintiffs allege only that their files "contain [CMI], *such as* watermarks and metadata, that identify the work, the author, and the copyright owners" (D.I. 1 ¶ 157; *id.* ¶ 166) (emphasis added). Such pleadings are insufficient.

This claim also fails because the Author Plaintiffs have not alleged—and cannot —that any output from Defendant's platform is identical to their (unidentified) works. *See, e.g., Doe 1 v. GitHub, Inc.*, No. 22-CV-06823-JST, 2024 WL 235217, at *8-9 (N.D. Cal. Jan. 22, 2024) (citing cases); *Doe 1 v. GitHub, Inc.*, No. 22-CV-06823-JST, 2024 WL 1643691, at *2 (N.D. Cal. Apr. 15, 2024); *Andersen*, 2024 WL 3823234, at *8. To the contrary, their claims are based solely

on the alleged *inputs used to create the voice models*, not any *output—much less any output that is identical to their works in their entireties, as is required*. D.I. 1 ¶ 164. Accordingly, they do not and cannot satisfy the identicality requirement.

The Author Plaintiffs separately fail to satisfy Section 1202(b)'s "double-scienter requirement." *See, e.g.*, *Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 57-58 (2d Cir. 2021). To do so, a plaintiff must allege both that a defendant knew CMI was removed and that the defendant knew that doing so "will induce, enable, facilitate, or conceal an infringement." *Id.* (quoting 17 U.S.C. § 1202(b)). The "reasonable grounds to know[]" requirement demands "some identifiable connection between the defendant's actions and the infringement or the likelihood of infringement." *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1325 (11th Cir. 2022); *see Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 n.8 (3d Cir. 2011) ("[T]hose intending to make fair use of a copyrighted work are unlikely to be liable under § 1202").

Here, again, Plaintiffs allege only that Defendant removed CMI in connection with using their works in an internal dataset. They do not allege that any of their works were distributed to users or to any other member of the public, much less that Defendant was ever on notice that its platform somehow enabled anyone to infringe their works. When presented with the same question, Judge Martinez-Olguin of the Northern District of California rejected the notion that "removal of CMI in an internal database will knowingly enable infringement" and the plaintiffs did not attempt to replead. *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024). The Court should reach the same conclusion here.[11]

---

[11] The Complaint also contains a solitary reference to § 1202(b)(3) of the DMCA, which prohibits distributing works while knowing their CMI has been removed. D.I. 1 ¶ 172 ("ElevenLabs' conduct violates 17 U.S.C. § 1202(b)(1) and (3)."). To the extent that the Author/Author Plaintiffs intend to assert a claim under that section, it fails, as they do not allege that Defendant ever distributed *any* of their works—again, none of their DMCA claims are based on any *output* from

**No Access Control Claim Under § 1201(a)(1)(A)**. Under § 1201(a)(1)(A), a plaintiff must allege that: (1) the work is protected by copyright; (2) the work was protected by TPM "that effectively controls access"; and (3) the TPM was "circumvented" to obtain access. *FMHUB, LLC*, 2020 WL 4581828, at *6. Plaintiff must also establish "a reasonable relationship between the circumvention … and a use relating to a property right for which the Copyright Act permits the copyright owner to withhold authorization." *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1193-94, 1204 (Fed. Cir. 2004).[12]

First, as discussed above, the Author Plaintiffs fail to identify any protected work, which alone bars this claim. *See supra* IV(A)(ii). Further, they fail to show any nexus to infringement. They do not assert a claim for infringement, D.I. 6, and Defendant's alleged use—to create synthesized voices which the Author Plaintiffs never allege appropriate *any* protected content from their works—would be a transformative, fair use, which the DMCA protects. 17 U.S.C. § 1201(c).

The Author Plaintiffs also fail to adequately allege either "circumvention" or an "access

---

Defendant's platform. *See generally id.* ¶¶ 153-79; *Free Speech Sys.*, 390 F. Supp. 3d at 1175 (dismissing 1202(b)(3) claim where plaintiff failed to allege any facts regarding distribution). To the contrary, the Author Plaintiffs solely allege that their works were used as *input* for Defendant's internal training dataset. D.I. 1 ¶ 164. Further, even if they wished to make such a claim, this provision of the DMCA also is subject to the "identicality requirement," *supra* IV(A)(iii), which they cannot satisfy because the Adam voice is not (and is not alleged to be) an identical copy of the Author Plaintiffs' alleged works. *GitHub, Inc.*, 2024 WL 235217, at *8-9.

[12] The United States Court of Appeals for the Third Circuit has not ruled on whether the DMCA "permit[s] plaintiffs to bring causes of action for circumvention even when they cannot bring causes of action for infringement"; however, it has cited *Chamberlain* for the notion that it does not and has expressed concern that an overbroad scope of remedies allowed under the statute may chill legitimate and constitutionally protected speech. *Murphy*, 650 F.3d at 301 & n.4; *contra Avaya, Inc.*, 2012 WL 13035096, at *7 n.1 (predicting that the Third Circuit would not follow *Chamberlain*). But *Chamberlain* is consistent with the Supreme Court's instruction that courts should not interpret other federal laws (in that case, the Lanham Act) to create "a species of mutant copyright law that limits the public's 'federal right to copy and to use'" copyrighted works fairly, or works that are not protected by copyright. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003).

14

control." A person "circumvents" a TPM only when "he affirmatively performs an action that disables or voids the measure that was installed to prevent them from *accessing* the copyrighted material. This act can be characterized as 'breaking and entering (or hacking) into computer systems.'" *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV 1318 (GBD) (BCM), 2017 WL 696126, at *18 (S.D.N.Y. Feb. 15, 2017), *report & rec. adopted sub. nom., Joint Stock Co. v. Infomir LLC*, No. 16-CIV 1318 (GBD) (BCM), 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) (cleaned up). "Violating contractual restrictions on access to or distribution of encrypted transmissions is not the type of 'circumvention' that Congress intended to combat in passing the DMCA." *Id.* (cleaned up). For this reason, allegations that defendants "(for example) obtain[ed] plaintiffs' [works] after they [were] decrypted by another party, acquir[ed] them through misuse of a password, m[ade] unlawful use of lawfully acquired signals, or [engaged in] other misconduct that is not within the reach of § 1201(a)(1)(A)" will not suffice to allege "circumvention." *Id.* at *19. Furthermore, if *access* to a work does not involve circumvention, then Section 1201(a)(1)(A) does not bar subsequent *use* of a work. *Ass'n for Info. Media & Equip.*, 2012 WL 7683452, at *9 ("[A] person who engages in prohibited usage of a copyrighted work to which he has lawful access does not fall afoul of any provision of Section 1201."); 4 *Nimmer on Copyright* § 12A.03[D][2] (2024) (Section 1201(a)(1)(A) "is *inapplicable* to 'the subsequent actions of a person once he or she has obtained authorized access to a copy of a work protected under Title 17, even if those actions involve circumvention of additional forms of technological protection measures.'") (citing H. Rep. (DMCA), p.18; S. Rep. (DMCA), p.28) (emphasis added); S. Rep. (DMCA), p.29 ("[W]here a copy control technology is employed to prevent the unauthorized reproduction of a work, the circumvention of that technology would not itself be actionable under section 1201, but any reproduction of the work that is thereby facilitated

15

would remain subject to the protections embodied in title 17.").

Here, the Author Plaintiffs effectively concede in their allegations that Defendant did not need to hack or circumvent any TPM to obtain *access* to the recordings. D.I. 1 ¶ 116 (alleging Defendant "obtained the recordings for its training corpus from sources including the *open internet*, 'torrent' *file-sharing sites*, and/or by creating unauthorized copies of audio recordings *distributed legally* through audiobook subscriptions ….") (emphasis added). To the extent that the Author Plaintiffs allege that, after acquiring access *without* circumvention, Defendant subsequently engaged in unauthorized copying, that is not within the scope of conduct prohibited under this section. Nor do Author Plaintiffs adequately identify a TPM (instead only asserting that their unidentified works were protected by unidentified "technological measures, including encryption and DRM technologies") or how Defendant circumvented it (instead alleging various theories as to why it would be beneficial to do so). *Id.* ¶ 157, 161-62. The claim thus lacks sufficient "factual content" to survive a motion to dismiss. *Bungie, Inc. v. Aimjunkies.com*, No. C21-0811 TSZ, 2022 WL 16853626, at *2-3 (W.D. Wash. Nov. 10, 2022).

For all of these reasons, all of Plaintiffs' federal claims fail as a matter of law.

### B.    The Court Should Decline to Exercise Supplemental Jurisdiction

For the Court to have jurisdiction over the remaining state law claims, the Complaint must plead supplemental jurisdiction pursuant to 28 U.S.C. § 1367. It has not done so. Instead, it solely alleges that the Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). D.I. 1 ¶ 7. Because the DMCA claims fail, the state law claims should be dismissed. 28 U.S.C. § 1367(c)(3); *Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).

Furthermore, supplemental jurisdiction is inappropriate under 28 U.S.C. § 1367(c)(1), because, as discussed *infra* IV(C), the claims raise "novel or complex" issues of state law. These

are questions best answered by state courts and Legislatures under 28 U.S.C. § 1367(c)(1).[13]

     **C.**    **The Voice Actor Plaintiffs' Claims Fail Because New York and Texas Narrowly Construe Their Misappropriation Remedies, Which Do Not Encompass "Substantially Similar" Digital Voices and Expressly Exclude Claims Based on Works of Expression**

     The Voice Actor Plaintiffs seek to dramatically expand the scope of New York and Texas's misappropriation claims, which have never been applied to a situation like the one presented in this case. This is a topic that should be addressed by the New York and Texas legislatures, not this Court. And New York and Texas courts have repeatedly emphasized that their misappropriation remedies are narrowly tailored and, as a result, routinely dismiss claims that go beyond their carefully guarded scopes. *Cardiovascular Provider Res. Inc. v. Gottlich*, No. 05-13-01763-CV, 2015 WL 4914725, at *3 (Tex. App. Aug. 18, 2015) ("Texas law applies a very restrictive interpretation of the tort."); *Messenger v. Gruner + Jahr Printing & Publ'g*, 208 F.3d 122, 122 (2d Cir. 2000) (same, for New York). The same result should occur here.

           **i.**    *Neither State Has Applied Its Misappropriation Tort to Digital Voices*

     New York has no common-law misappropriation right; rather, it codifies a statutory right to privacy in Sections 50 and 51 of the N.Y. Civil Rights Law. *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 119 (2018). The claim has four elements: "(1) the use of [plaintiff's] name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without written consent," *Bendit v. Canva, Inc.*, No. 23-CV-473 (RA), 2023 WL 5391413, at *8 (S.D.N.Y. Aug. 22, 2023). While the statute references "voice," no New York

---

[13] Voice Actor Plaintiff Vacker's state law claims also do not meet the requirements of supplemental jurisdiction because they do not "derive from a common nucleus of operative fact" as the DMCA claims. *Poole v. Marks*, 441 F. App'x 854, 858 (3d Cir. 2011) (citation omitted). The DMCA claims are based on allegations that the Author Plaintiffs own copyrights in certain audiobook narrations by *Boyett only*; they do not allege that Vacker narrated any of audiobook narrations that form the basis of any DMCA claims.

court, or court applying New York law, has applied Section 51 to "AI-generated" audio that purportedly mimics someone else's voice, as claimed here. D.I. 1 at 1, ¶ 122. The statute does not address, much less prohibit, such uses. Indeed, New York courts have rejected claims based on voices that were purportedly "substantially similar to," *id*., the plaintiff's. *See, e.g.*, *Lohan*, 31 N.Y.3d at 123 n.2 (avatar reminiscent of Lindsay Lohan did not qualify as a "likeness," even if it approximated her "voice resemblance and accent").

This Court should not take this opportunity to expand Section 51. The New York Court of Appeals has repeatedly emphasized that the statutory right created by New York's Legislature must be narrowly construed to its limited terms. Indeed, in *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 (1982) the Court of Appeals discussed the history of the statute in detail, emphasizing that it "was enacted as a direct response to" that court's holding in *Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538, 556-57 (1902), which, in dismissing a claim based on the unauthorized use of approximately 25,000 copies of a photograph of an infant to advertise the defendant's flour, "broadly denied the existence" of any common-law right to privacy in New York. *Arrington*, 55 N.Y.2d at 439. In enacting Section 51, the Legislature provided a remedy for commercial misappropriation, but "confined its measured departure from existing case law to circumstances akin to those presented in *Roberson*," the Court of Appeals warned, and "[i]n no other respect did it undertake to roll back the court-pronounced refusal to countenance an action for invasion of privacy." *Id.* As a result, as a matter of New York public policy, Section 51 must "be narrowly construed." *Messenger*, 208 F.3d at 125.

New York courts have held this line even in response to novel technologies. For example, in *Foster v. Svenson*, 128 A.D.3d 150 (1st Dep't 2015), the intermediate appellate court rejected a Section 51 claim based on allegations that the defendant, a professional photographer, used a

telephoto lens to photograph through the windows of the people living in the building across from him, and then used those photographs in an art show and in promotional materials on his own website, his gallery's website, and an art sale website. *Id.* at 152-53. In a carefully analyzed opinion, the court catalogued the history of the statute and its interpretation, and concluded that, despite "public apprehension over new technologies," the statute did not apply to the alleged conduct. *Id.* at 152 ("This case highlights the limitations of New York's statutory privacy tort….").

Furthermore, the only recent action that the New York Legislature has taken with respect to Sections 50 and 51 indicates that it has chosen *not* to prohibit the type of use alleged in this case. In 2021, New York added Section 50-f, which creates a carefully limited[14] prohibition against unauthorized "digital replicas" of *deceased* persons, defined as "[a] newly created, original, computer-generated electronic performance" and a "newly created, original expressive *sound recording* … in which the individual did not perform." N.Y. C.R.L. § 50-f (emphasis added). Tellingly, the Legislature did *not* extend that same protection to *living* persons, such as Boyett. Neither should this Court.

Likewise, Texas's common law misappropriation tort applies to a "name or likeness." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994).[15] Vacker makes no claim that her name was used; accordingly, her claim is premised on the notion that "likeness" can encompass "voice." But no Texas court has applied this tort to a claim based on a person's voice, nor even analyzed such a claim. The only place where Texas law recognizes a claim for voice misappropriation is in

---

[14]  For example, the statute requires pre-registration of a successor-in-interest's claim to a deceased personality and carves out entertainment, art, and other expressive uses. *Id.*

[15] Texas's claim has three elements: "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Id.*

its statute, Tex. Prop. Code. Ann. §§ 26.001-26.015, which (like Section 50-f in New York) only applies to the estates of deceased persons. Vacker is not a deceased person and she makes no claim under the Texas statute. Nor is it appropriate to predict that a Texas court would extend the common law misappropriation claim to the voice of a living person, because (a) Texas law applies a "very restrictive" interpretation of this tort, *Cardiovascular Provider Res. Inc.*, 2015 WL 4914725, at *3, and (b) Texas relies on the *Restatement (Second) of Torts* § 652C (1977), *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir. 2007), which does not state that use of "voice" alone can qualify as an appropriation of identity.

Furthermore, no Texas court has held that "likeness" could extend to use of a voice alone, other than those of very famous singers with unique singing styles. While the Fifth Circuit has stated that "the term 'likeness' includes such things as … the use of a singer's distinctive voice," *Matthews*, 15 F.3d at 438, and District Courts have also referenced "voice," *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587, 590-91 (N.D. Tex. 1999) and *Elvis Presley Enters., Inc. v. Capece*, 950 F. Supp. 783, 801 (S.D. Tex. 1996), *rev'd*, 141 F.3d 188 (5th Cir. 1998), none *involved a claim based on voice alone*; thus, their references to "voice" were merely dicta.[16] Further, in *Matthews*, the dictum reference to "voice" was not about voice actors, but rather the hypothetical use of the voice of a famous singer. 15 F.3d at 438. Vacker does not fit into this category, and thus she is ineligible to assert this claim.[17]

---

[16] Notably, despite involving singer plaintiffs (or their estate), neither *Henley* nor *Elvis Presley Enters.* involved claims based on voice; Don Henley objected to use of his name and *Elvis Presley Enters.* involved an image and catchphrases.

[17] Vacker's claim also fails because the allegations in the Complaint are insufficient to allege that she is "reasonably identifiable in defendant's use to more than a de minimis number of persons." *Henley*, 46 F. Supp. 2d at 595; *O'Grady v. Twentieth Century Fox Film Corp.*, No. 5:02 CV 173, 2003 WL 24174616, at *10 (E.D. Tex. Dec. 19, 2003). Here, Vacker alleges that in late 2023, she "learned from fans that ElevenLabs had digitally cloned her voice and was distributing recordings performed in her unique likeness," and then provides three separate screenshots of people either

ii. *Both New York and Texas Misappropriation Law Strictly Exclude Expressive Works*

But even if the misappropriation torts could conceivably encompass the Voice Actor Plaintiffs' novel claims (which they do not), they would still be barred by New York and Texas's robust limitations of the tort to exclude uses that are expressive works, like those alleged here.

In its most recent decision applying Section 51, the New York Court of Appeals put it simply: New York "courts have cabined Section 51 to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest guaranteed by the First Amendment." *Lohan*, 31 N.Y.3d at 120 (internal quotation marks omitted); *Messenger*, 208 F.3d at 126 (restrictions on tort reflect "constitutional values in the area of free speech"). Texas similarly restrains the cause of action. *Matthews*, 15 F.3d at 440 (finding it "unlikely that Texas courts would extend the tort to create liability" for a novel claim, in part because Texas Const., Article 1 § 8 "grants broader protection to speech and press than the United States Constitution").

Accordingly, both New York and Texas exclude liability for all types of expressive works so long as they are not "simply a disguised commercial advertisement for the sale of goods or services." *Id.*; *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 141 (1990). Thus, dissemination of expressive works is beyond either state's reach. *See, e.g.*, *Foster*, 128 A.D.3d at 155-57, 158-59 ("the exemption has been applied to many others forms of First Amendment speech, protecting literary and artistic expression from the reach of the statutory tort of invasion of privacy," including "written and nonwritten materials published … for the purpose of entertainment" and "artistic expression"); *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 777 (N.D. Tex. 2007).

---

messaging or leaving comments on her social media account, D.I. 1 ¶¶ 51-53, the third of which shows nothing to indicate that the referenced voice is "Bella." Thus, all Vacker really alleges is that two people thought the Bella voice sounded like hers. These *de minimis* allegations are insufficient to show that Vacker's voice is reasonably identifiable in Defendant's use to "more than a few people." *Henley*, 46 F. Supp. 2d at 595.

It also excludes claims based on sales of copies of expressive works, as well as claims based on ads or other promotions of protected works. *Foster*, 128 A.D.3d at 160; *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 350 (S.D.N.Y. 2002) (advertising "in connection with a use protected by the First Amendment falls outside the statute[].")"; *Lohan v. Perez*, 924 F. Supp. 2d 447, 454 (E.D.N.Y. 2013); *Whitehurst v. Showtime Networks, Inc.*, No. 1:08-CV-47, 2009 WL 3052663, at *6-8 (E.D. Tex. Sept. 22, 2009) ("Because the film itself is protected and not subject to suit, it follows that the promotion of the film is protected")*.*

Computer code and programs are protected speech, particularly software with expressive qualities, as is the case here. *See, e.g.*, *Brown v. Entm't Merchants Ass'n & Entm't Software Ass'n*, 564 U.S. 786 (2011) (video game software protected by the First Amendment); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 447 n.19 (2d Cir. 2001) (communication of "information" is not a "prerequisite of protected 'speech'"; computer programs that communicate "emotion" and "thoughts" are protected by the First Amendment).

Here, the allegations in the Complaint are clear that neither of the Adam or Bella voices were used in any advertisement. Indeed, the Voice Actor Plaintiffs never claim anywhere in the Complaint that the Adam or Bella voices—which they admit were offered as one of "nine default voices," D.I. 1 ¶ 35, to be used for the expressive purpose of "creat[ing] synthetic audio narrations of a written text supplied by the user," *id.* ¶ 31—are, in themselves, an "advertisement." Rather, they claim that the voices were part of Defendant's "browser-based, 'Speech Synthesis' AI-assisted text-to-speech software." *Id.* ¶ 41. This alleged use of the Adam and Bella voices on Defendant's web platform is not an advertisement in disguise, but an expressive and transformative use communicating Defendant's creative vision and artistic judgment.[18] This occurred at several

---

[18] Plaintiffs' allegations that Defendant sold text-to-speech services or that the voices were used to

levels. First, as described *supra* III(A), Defendant had to make concrete choices utilizing vision and artistic determination to create the synthetic voices and integrate them into their web platform. As Plaintiffs acknowledge, the Adam and Bella voices were designed to "synthesiz[e] vocal emotion and intonation," D.I. 1 ¶ 41, and both they and the platform as a whole were used to create content, *id*. ¶¶ 45 (alleging Defendant created, broadcast/performed, and distributed "synthetic narrations created using its 'Bella' and 'Adam' voices"), 107.[19] Second, Plaintiffs' allegations also show that Defendant's premade voices are expressive works in another sense—namely, because users can employ the platform to make their own expressive works. *Id.* ¶ 45.

Because Defendant's voices and platform as a whole communicate "ideas," "emotions," and "thoughts," they are protected, expressive speech and thus are not actionable misappropriation in New York or Texas.[20]

---

promote its platform (D.I. 1 at 8, ¶ 148(a)), do not change this result because the platform and voices are themselves expressive works and are designed to create other expressive works. *See Foster*, 128 A.D.3d at 160; *Altbach v. Kulon*, 302 A.D.2d 655, 658, 754 N.Y.S.2d 709 (3d Dep't 2003) (use of a photograph in an ad to "prove[] the worth and illustrate[] the content of" an expressive work is not within Section 51); *Whitehurst*, 2009 WL 3052663, at *8 ("promotion" of a protected work is protected).

[19] Further underscoring that Defendant's use is protected expression outside the scope of either state's remedies, Defendant's use of generative AI to create synthetic voices as alleged by Plaintiffs would be highly transformative. As the Complaint itself details: A computer program analyzes a large dataset of samples from a large number of different speakers to learn the patterns and characteristics that define each unique voice; the model learns to represent these different vocal characteristics, speaking styles, and traits that vary across speakers; and thereby represents the voice of a specific speaker as a point in "latent space." D.I. 1 ¶¶ 27-28. The Complaint alleges that Defendant's voice creation model requires use of large quantities of professional-quality audiobook recordings to train its data and that Defendant trained its Speech Synthesis model on 500,000 hours of audio. *Id*. ¶¶ 70, 88. Assuming for the purposes of this motion the allegations are taken as true, any trace of the Voice Actor Plaintiffs' voices allegedly used in the input is clearly transformed into something new, with a different purpose or different character than the original. *See, e.g.*, *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 381 (E.D. Pa. 2020) (use of plaintiff's likeness in a video game avatar that can be customized was transformative and thus publicity claim barred by First Amendment).

[20] Because the Adam and Bella voices are expressive works, the Voice Actor Plaintiffs' claims are also barred by copyright preemption. 17 U.S.C. § 301(a); *Facenda v. N.F.L. Films, Inc.*, 542 F.3d

### D.    Voice Actor Plaintiff Boyett's Claim Is Time-Barred

Section 51 claims are subject to a one-year statute of limitations. N.Y. C.P.L.R. § 215(3). New York applies the "single publication rule" to Section 51 claims. *Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188 (2007); *Fischer v. Forrest*, No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 128705, at *14 (S.D.N.Y. Jan. 13, 2017). Here, Boyett's claim accrued when Defendant released its platform in January 2023, and upon release, offered the Adam voice. D.I. 1 ¶¶ 34-35. The Complaint, however, was filed on August 29, 2024—nine months too late. Boyett's claim with respect to the Adam voice is time barred.

### E.    Defendant Is Entitled to Attorneys' Fees Under N.Y.'s Anti-SLAPP

In short, Plaintiffs' Complaint fails several times over—it impermissibly uses facially invalid DMCA claims to gin up federal jurisdiction, and it asserts wildly overbroad claims that are inconsistent with New York and Texas's repeated warnings that their torts are to be strictly construed, particularly when they involve works of expression. Under New York's anti-SLAPP law, a defendant in an action involving "public … participation" "shall" be awarded its "costs and attorney's fees" upon a demonstration that the action "was commenced or continued without a substantial basis in fact and law." N.Y. Civ. R. L. § 70-a(1). As detailed in a recent decision issued by the United States District Court of the Southern District of New York, this provision applies in federal court and is properly invoked via fee requests submitted with Rule 12 motions. *Bobulinkski v. Tarlov*, No. 24-CV-2349(JPO), Opinion & Order at 20-33 (S.D.N.Y. Nov. 26, 2024).[21]

Here, Defendant is "a defendant in an action involving public petition and participation"

---

1007, 1029 (3d Cir. 2008) (a right of publicity claim that seeks to "limit[] the way that material can be used in expressive works extends beyond the purview of state law and into the domain of copyright law"); *In re Jackson*, 972 F.3d 25, 34 (2d Cir. 2020); *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1142-43 (9th Cir. 2006).

[21] A copy of this decision is annexed as Ex. B to the Hanswirth Decl. ("Ex. B").

under N.Y. Civ. R. L. § 76-a(1) because Plaintiffs assert claims based on "communication[s]" in "a public forum" and "lawful conduct in furtherance of" the "constitutional right of free speech." If Defendant's motion to dismiss is granted, then by definition the action was not commenced with a substantial basis. Ex. B at 32. Accordingly, Defendant is entitled to attorney's fees, and respectfully requests that if its motion is granted then Defendant be permitted to submit evidence in support of the amount of fees it has expended on this action to date. *Id*. at 34.

## VI.    CONCLUSION

For these reasons, Defendant respectfully moves to dismiss Plaintiffs' Complaint in full and with prejudice and for an award of its attorneys' fees incurred to date in this matter.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

Dori Ann Hanswirth
Theresa M. House
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
(212) 836-8000

Brian P. Egan (#6227)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
began@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant*

December 6, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 6, 2024, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                    *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Michael C. Wilson, Esquire                                  *VIA ELECTRONIC MAIL*
Charles Theodore Zerner, Esquire
Abigail R. Karol, Esquire
MUNCK WILSON MANDALA, LLP
1900 Texas Capital Center
2000 McKinney Avenue
Dallas, TX  75201
*Attorneys for Plaintiffs*

/s/ *Brian P. Egan*
_____
Brian P. Egan (#6227)