IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KARISSA VACKER, MARK BOYETT,      )
BRIAN LARSON, IRON TOWER PRESS, INC. )
and VAUGHN HEPPNER,               )
                                  )
            Plaintiffs,           )
                                  )
        v.                        )    C.A. No. 24-987 (RGA)
                                  )
ELEVEN LABS INC.,                 )    REDACTED - PUBLIC VERSION
                                  )
            Defendant.            )

**DEFENDANT ELEVEN LABS INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO TRANSFER VENUE
TO THE SOUTHERN DISTRICT OF NEW YORK**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
began@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant Eleven Labs Inc.*

OF COUNSEL:

Dori Ann Hanswirth
Joseph A. Greenaway, Jr.
Theresa M. House
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000

Originally Filed: December 11, 2024
Redacted Version Filed: December 18, 2024

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF PROCEEDINGS ................................................... 1

III.    SUMMARY OF ARGUMENT .......................................................................... 2

IV.     STATEMENT OF FACTS ................................................................................. 3

        A.    Relevant Allegations of the Complaint. .................................................. 3

        B.    Plaintiffs Have No Ties to Delaware. ..................................................... 3

        C.    Defendant has Relevant Ties to the SDNY, Not Delaware. ................... 4

V.      LEGAL STANDARD ........................................................................................ 4

VI.     ARGUMENT ..................................................................................................... 5

        A.    Transfer to SDNY Would Best Serve the Convenience of the Parties and
              Witnesses and the Interests of Justice. .................................................. 6

              1.    Less Deference Should be Afforded to Plaintiffs' Choice to Sue in This
                    District. .......................................................................................... 6

              2.    Eleven Labs Prefers the SDNY ..................................................... 7

              3.    Plaintiffs' Claims Do Not Arise from Any Specified Activity in
                    Delaware, But Do Arise From Alleged Activities in New York and are
                    Based-in-Part on New York Law .................................................. 7

              4.    The Convenience of the Parties Favors Transfer. ......................... 8

              5.    The Location of Relevant Evidence Favors Transfer. ................... 9

              6.    Practical Considerations Favor Transfer. ...................................... 10

              7.    Relative Court Congestion in Delaware Favors Transfer. ............ 10

              8.    The SDNY Has a Local Interest in This Case. .............................. 11

              9.    SDNY is More Familiar With the Applicable State Law, and Public
                    Policy Favors Transfer .................................................................. 12

              10.   The Remaining Factors Are Neutral. ............................................ 14

B.     Considered in Totality, the Factors Weigh Strongly in Favor of Transfer. .......... 15

VII.     CONCLUSION ............................................................................................................... 16

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arrington v. New York Times Co.*,
   55 N.Y.2d 433 (1982) ........................................................................................ 12

*Blackbird Tech LLC v. Cloudflare, Inc.*,
   C.A. No. 17-283-MSG, 2017 WL 4543783 (D. Del. Oct. 11, 2017) .......................... 9

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*,
   C.A. No. 16-733-GMS, 2017 WL 1536394 (D. Del. Apr. 27, 2017) .......................... 4

*Bobulinkski v. Tarlov*,
   No. 24-CV-2349(JPO), Opinion & Order (S.D.N.Y. Nov. 26, 2024) ........................ 14

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
   C.A. No. 11-1050-GMS, 2013 WL 828220 (D. Del. Mar. 6, 2013) ........................... 9

*Contour IP Holding, LLC v. GoPro, Inc.*,
   C.A. No. 15-1108-LPS-CJB, 2017 WL 3189005 (D. Del. July 6, 2017) ............... 7, 10

*Deloitte Consulting LLP v. Sagitec Sols. LLC*,
   692 F. Supp. 3d 421 (D. Del. 2023) ..................................................................... 11

*Dermansky v. Young Turks, Inc.*,
   C.A. No. 22-345-GBW, 2023 WL 4351340 (D. Del. July 5, 2023) ...................... 6, 14

*Express Mobile, Inc. v. Web.com Grp., Inc.*,
   C.A. No. 19-1936-RGA, 2020 WL 3971776 (D. Del. July 14, 2020) ..................... 8, 9

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................... 11

*Link_A_Media Devices Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011) ......................................................................... 6, 15

*Isaly v. Garde*,
   213 N.Y.S.3d 852 (N.Y. Sup. Ct. 2024) ............................................................... 13

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) .......................................................................... *passim*

*Lohan v. Take-Two Interactive Software*,
   31 N.Y.3d 111 (2018) ........................................................................................ 12

*MEC Res., LLC v. Apple, Inc.*,
  269 F. Supp. 3d 218 (D. Del. 2017)..............................................................8

*Messenger v. Gruner Jahr Printing & Pub.*,
  208 F.3d 122 (2d Cir. 2000) .......................................................................12

*Mitel Networks Corp. v. Facebook, Inc.*,
  943 F. Supp. 2d 463 (D. Del. 2013) ...........................................................10

*Nottenkamper v. Modany*,
  C.A. No. 14-672-GMS, 2015 WL 1951571 (D. Del. Apr. 29, 2015)............7

*NXP USA, Inc. v. Impinj, Inc.*,
  C.A. No. 19-1875-RGA, 2020 WL 5665257 (D. Del. Sept. 23, 2020) .......14

*OpenTV, Inc. v. Netflix, Inc.*,
  C.A. No. 12-1733-GMS, 2014 WL 1292790 (D. Del. Mar. 31, 2014) .......11

*Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*,
  C.A. No. 23-1250-RGA, 2024 WL 3925117 (D. Del. Aug. 23, 2024) .........6

*Reeves v. Associated Newspapers, Ltd.*,
  218 N.Y.S.3d 19 (1st Dep't 2024) ..............................................................13

*Samsara Inc. v. Motive Techs., Inc.*,
  C.A. No. 24-84-MN, 2024 WL 3822981 (D. Del. Aug. 14, 2024) .......11, 12

*Signal Tech, LLC v. Analog Devices, Inc.*,
  C.A. No. 11-1073-RGA, 2012 WL 1134723 (D. Del. Apr. 3, 2012) ............6

*Sweigert v. Goodman*,
  No. 118-CV-08653, 2021 WL 1578097 (S.D.N.Y. Apr. 22, 2021) .............13

*Werner v. Hive Media Group, LLC*,
  C.A. No. 20-1176-LPS, 2021 WL 3662902 (D. Del. Aug. 18, 2021)..............6, 11, 15

**Rules and Statutes**

28 U.S.C. § 1404(a) .................................................................................. 2, 16

DMCA §§ 1201-1203 .................................................................................. 2, 3

Fed. R. Civ. P. 12(b)(1) and (b)(6) ........................................................ 2, 14

N.Y. Civ. R. l. § 70-a(1) ............................................................................... 13

§ 51 of the New York Civil Rights Law ................................................. 8, 12

## I.    INTRODUCTION

Defendant Eleven Labs Inc. ("Eleven Labs") respectfully requests that the Court transfer this case to the United States District Court for the Southern District of New York ("the SDNY") because it is a more convenient forum for this proceeding than this District and the *Jumara* analysis[1] weighs strongly in favor of transfer. The only connection Delaware has to this case is Eleven Labs' incorporation here. Other than that, neither the parties nor the facts underlying this case has any meaningful connection with Delaware. None of the parties have a physical presence in Delaware, no Eleven Labs documents are stored in Delaware, and Eleven Labs is not aware of any potential witnesses in Delaware. Among other facts favoring transfer to the SDNY, Eleven Labs is headquartered in New York, one named Plaintiff is a resident of New York, relevant Eleven Labs documents are accessible in New York, and New York is more convenient for witness travel than Delaware, particularly since anticipated witnesses from Eleven Labs would need to travel internationally to appear for trial in this matter. Moreover, Plaintiff Mark Boyett ("Boyett") asserts a claim under New York law, and there are no Delaware law claims in the case. Boyett's claim is based on purported activity in New York and involves important issues of New York law and public policy. In sum, for the convenience of the parties, and in the interests of justice, this Court should transfer this case to the SDNY.

## II.    NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Boyett and Karissa Vacker ("Vacker") (collectively, the "Voice Actor Plaintiffs"), and Plaintiffs Brian Larson ("Larson"), Iron Tower Press, Inc. ("ITP"), and Vaughn Heppner ("Heppner") (collectively, the "Author Plaintiffs"), filed their Complaint on August 29, 2024. Plaintiffs allege that Defendant Eleven Labs misappropriated their likenesses,

---

[1]    *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).

identities, and publicity rights under Texas and New York law, and allege violations of the Digital Millennium Copyright Act ("DMCA"). D.I. 1 at 1-2, ¶¶ 130-179. On December 6, 2024, Eleven Labs moved to dismiss this case under Fed. R. Civ. P. 12(b)(1) and (b)(6) because Plaintiffs lack standing and fail to state a claim, and requested an award of attorneys' fees under the New York anti-SLAPP law on grounds that this is a strategic lawsuit aimed at Eleven Labs' exercise of its right of free expression. Eleven Labs now moves pursuant to 28 U.S.C. § 1404(a) to transfer this case to the SDNY.

## III. SUMMARY OF ARGUMENT

The SDNY is a more convenient forum under 28 U.S.C. § 1404(a). Eleven Labs is headquartered in the SDNY. Most, if not all, of the relevant Eleven Labs documents were created in or are otherwise readily accessible in the SDNY. Witnesses with relevant knowledge are located in the SDNY. Moreover, Plaintiffs assert claims under New York and Texas law (in addition to federal law), and none under Delaware law.

The District of Delaware, by contrast, has no connection to this dispute aside from the fact that Eleven Labs is incorporated here—**no party, no witness, and no documents** are located in Delaware. None of the witnesses Eleven Labs has identified to date with relevant knowledge is located here, and Eleven Labs has no offices in Delaware. New York would be a far more convenient forum for relevant witnesses, and transfer to SDNY would not impose any meaningful additional burden on Plaintiffs—indeed, it would be more convenient for Plaintiff Boyett, a New York resident, and equally or more convenient for the remaining Plaintiffs that are based in Texas, California, and Nevada. Thus, Eleven Labs respectfully requests that the Court transfer this case to the SDNY pursuant to 28 U.S.C. § 1404(a).

## IV.    STATEMENT OF FACTS

### A.    Relevant Allegations of the Complaint.

Plaintiffs allege misappropriation of likeness, identity, and publicity rights under the law of New York, where Boyett lives, and Texas, where Vacker lives. D.I. 1 at ¶¶ 130-152. Plaintiffs also allege violations of the DMCA. DMCA §§ 1201-1203 *Id.* at ¶¶ 153-179. Specifically, the Voice Actor Plaintiffs allege that Eleven Labs used unidentified audiobook recordings to create two premade synthetic voices called "Adam" and "Bella," and that Eleven Labs violated the DMCA and misappropriated the identities of the Voice Actor Plaintiffs, one of whose audiobook narrations was allegedly affixed in those unidentified recordings. *Id.* at ¶¶ 10-22.[2] The Author Plaintiffs, two authors and a publisher that allegedly own copyrights in several works that Boyett narrated, allege that Eleven Labs used their audiobooks without permission to train its text-to-speech system. *Id.* at ¶¶ 23-30.  None of these allegations are tied to any conduct in Delaware, other than a bare assertion that Eleven Labs does business throughout the United States, including in the District of Delaware. *Id.* at ¶ 6. However, the Complaint implicates substantial issues of New York law, and makes specific allegations that the Adam voice has been delivered to users in New York.  *Id.* at ¶ 151.

### B.    Plaintiffs Have No Ties to Delaware.

Boyett is a citizen and resident of New York and Vacker is a citizen and resident of Texas *Id.* at ¶¶ 1-2. Larson resides in California, Heppner resides in Nevada, and ITP is a California corporation organized and based in California *Id.* at ¶¶ 3-5. Plaintiffs allege no relevant ties to Delaware and appear to have none.

---

[2]    To be clear, Eleven Labs disagrees with many of the factual allegations in the Complaint. *See, e.g.,* D.I. 19 (Opening Brief in Support of Eleven Labs' Motion to Dismiss and For Attorneys' Fees) at 5-7.

### C.     Defendant has Relevant Ties to the SDNY, Not Delaware.

Eleven Labs is a software company that specializes in developing natural-sounding, artificial intelligence-assisted speech synthesis software, which can produce lifelike speech by synthesizing vocal emotion and intonation. Declaration of Alex T. Haskell ("Haskell Decl.") at ¶ 4, filed herewith.  Eleven Labs is headquartered in New York, New York, has an office in London, United Kingdom, and will soon open an office in Warsaw, Poland. *Id.* at ¶ 7.  Eleven Labs has approximately 112 employees worldwide, including a number of employees based in New York who are members of █████████████████████████████████████████ *Id.* at ¶ 6. No potential Eleven Labs witnesses are located in Delaware; rather, they are located in New York, ████████████████████████████████████ *Id.* at ¶¶ 6, 7, 11.

Other than its incorporation in Delaware, which has nothing to do with the merits of the case, there are no ties between Eleven Labs and this District that warrant maintaining this case here. Eleven Labs does not have any offices in Delaware and is not aware of any person with knowledge relevant to this case who resides in Delaware, nor is it aware of any documentary evidence relevant to this case that was created in or is readily accessible in Delaware. *Id.* at ¶¶ 10, 12-15.

## V.     LEGAL STANDARD

A district court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883. To evaluate whether transfer is warranted, the court first determines "whether the action could have been brought originally in the proposed transferee forum." *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, C.A. No. 16-733-GMS, 2017 WL 1536394, at *1 (D. Del. Apr. 27, 2017). Second, the court evaluates "whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice." *Id.*

District courts in the Third Circuit weigh twelve private and public interest factors in evaluating the second part of the test. *Jumara*, 55 F.3d at 879–80. The private interest factors are:

    (1)    plaintiff's forum preference as manifested in the original choice;

    (2)    the defendant's preference;

    (3)    whether the claim arose elsewhere;

    (4)    the convenience of the parties as indicated by their relative physical and financial condition;

    (5)    the convenience of the witnesses; and

    (6)    the location of books and records.

*See id.* The public interest factors are:

    (7)    the enforceability of the judgment;

    (8)    practical considerations that could make the trial easy, expeditious, or inexpensive;

    (9)    the relative administrative difficulty in the two fora resulting from court congestion;

    (10)    the local interest in deciding local controversies at home;

    (11)    the public policies of the fora; and

    (12)    the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.*

## VI.    ARGUMENT

This case should be transferred to the SDNY, where it can be more conveniently and efficiently litigated. Because Eleven Labs has its principal place of U.S. business in the SDNY, there is no question that Plaintiffs could have brought this action there. And as shown below, both the private and public interest factors strongly favor transfer.

5

A.    **Transfer to SDNY Would Best Serve the Convenience of the Parties and Witnesses and the Interests of Justice.**

1.    **Less Deference Should be Afforded to Plaintiffs' Choice to Sue in This District.**

Courts generally defer to a plaintiff's choice of forum. But when "a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011); *see also Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*, C.A. No. 23-1250-RGA, 2024 WL 3925117 (D. Del. Aug. 23, 2024) (granting transfer motion and finding that Plaintiff's choice to sue in Delaware does not weigh as strongly in Plaintiff's favor as it would if Plaintiff had its principal place of business in Delaware); *Dermansky v. Young Turks, Inc.*, C.A. No. 22-345-GBW, 2023 WL 4351340, at *2 (D. Del. July 5, 2023) ("'[T]he weight to be accorded to [plaintiff's] forum preference is somewhat lessened' where, as here, Plaintiff is an out-of-state resident 'without any apparent connection to Delaware.'") (quoting *Werner v. Hive Media Group, LLC*, C.A. No. 20-1176-LPS, 2021 WL 3662902, at *2 (D. Del. Aug. 18, 2021)); *Werner v. Hive Media Group, LLC*, C.A. No. 20-1176-LPS, 2021 WL 3662902, at *2 (D. Del. Aug. 8, 2021) (granting motion to transfer and stating that "the weight to be accorded to [plaintiff's] forum preference is somewhat lessened by the fact that he is a resident of California without any apparent connection to Delaware.").

This Court has granted motions to transfer where neither the plaintiff nor the defendant's "home turf" was in Delaware, regardless of any party's state of residence or incorporation. *See, e.g., Signal Tech, LLC v. Analog Devices, Inc.*, C.A. No. 11-1073-RGA, 2012 WL 1134723, at *4-5 (D. Del. Apr. 3, 2012) (granting motion to transfer where plaintiff with "no connection at all to Delaware" was deemed "the equivalent of" not being a Delaware corporation despite incorporation in the state); *Pacira Biosciences,* 2024 WL 3925117, at *2 (granting motion to transfer where both

plaintiff and defendant were incorporated in Delaware but neither party had its principal place of business in Delaware).

Here, Plaintiffs have no connection to Delaware. Because Plaintiffs have no connection whatsoever to this District, this factor, which as shown below is the only factor in Plaintiffs' favor, is entitled to little weight.

### 2.    Eleven Labs Prefers the SDNY.

Courts weigh a defendant's preference in favor of transfer when "the defendant can articulate rational, legitimate reasons to support that preference." *Nottenkamper v. Modany*, C.A. No. 14-672-GMS, 2015 WL 1951571, at *3 (D. Del. Apr. 29, 2015). Eleven Labs has several legitimate reasons for preferring to litigate in SDNY and seeking transfer there: (1) it is the location of its principal place of business in the U.S.; (2) relevant witnesses are located in the SDNY, and relevant documents were created or are otherwise readily accessible there; and (3) for those potential Eleven Labs witnesses located overseas, it would be easier and less costly for these witnesses to travel to the SDNY rather than this District. *See* Haskell Decl. at ¶ 6; *see also Contour IP Holding, LLC v. GoPro, Inc.*, C.A. No. 15-1108-LPS-CJB, 2017 WL 3189005, at *9 (D. Del. July 6, 2017) ("As this Court has often held, the physical proximity of the proposed transferee district to a defendant's principal place of business (and relatedly, to witnesses and evidence potentially at issue in the case) is a clear, legitimate basis for seeking transfer."). This factor favors transfer.

### 3.    Plaintiffs' Claims Do Not Arise from Any Specified Activity in Delaware, But Do Arise From Alleged Activities in New York and are Based-in-Part on New York Law.

None of the research or development activities for Eleven Labs' accused speech synthesis software occurred in Delaware, Haskell Decl. at ¶ 8, and no other relevant conduct is alleged to have taken place in Delaware. Indeed, the events underlying this case did not occur in Delaware,

while many purportedly occurred in New York. D.I. 1 at ¶ 151. Plaintiff Boyett specifically asserts a claim under Section 51 of the New York Civil Rights Law and alleges that "[n]arrations in the 'Adam' voice and its progeny are being created and delivered to users in the state of New York." *Id.* This reliance on New York law and the pursuit of claims arising out of purported conduct in New York strongly supports transfer.

### 4.    The Convenience of the Parties Favors Transfer.

This factor requires the Court to consider: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Express Mobile, Inc. v. Web.com Grp., Inc.*, C.A. No. 19-1936-RGA, 2020 WL 3971776, at *2 (D. Del. July 14, 2020).

Transfer to the SDNY is far more convenient for Eleven Labs and at least Plaintiff Boyett, and should not significantly affect the convenience to the remaining Plaintiffs. Absent transfer, all parties will need to spend time and money to travel to Delaware. Transferring this action to the SDNY will save significant logistical and travel costs for Eleven Labs because a number of potential witnesses are either located in New York or in Europe, all of whom can more easily and efficiently travel to New York than Delaware. Haskell Decl. ¶¶ 6, 11; *see MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 226 (D. Del. 2017) (granting motion to transfer and finding that the convenience of the parties factor favors transfer given the complicated and expensive logistical and operational costs that would be associated with defendant's employees travelling to Delaware). As to the Plaintiffs, one Voice-Actor Plaintiff is located in New York and the other in Texas. The Author Plaintiffs are located in California and Nevada. Thus, with no apparent Delaware presence and one New York resident, transfer should not impose any additional burden on Plaintiffs, and will in fact lessen the burden for Plaintiff Boyett while also potentially lessening the burden for

the remaining Plaintiffs as travel to New York will likely be more efficient than travel to Delaware. *See ChriMar Sys., Inc. v. Cisco Sys., Inc.*, C.A. No. 11-1050-GMS, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013) (granting motion to transfer and finding that the convenience of the parties factor weighed in favor of transfer where plaintiff would be "forced to bear travel costs no matter the court's decision, but proceeding in California will likely spare the defendants significant expense").

In sum, "it is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties." *Express Mobile*, 2020 WL 3971776, at *3 (granting motion to transfer and finding that it would be "undoubtedly substantially more convenient to litigate where [defendant's] [ ] principal place of business is located"). Thus, this factor strongly favors transfer to the SDNY.

### 5.    The Location of Relevant Evidence Favors Transfer.

Here, none of the relevant evidence is in Delaware. Rather, the research and development of the speech synthesis software at issue in this case took place in Europe and information pertaining to such is readily accessible in New York. Haskell Decl. at ¶¶ 8-9. *Blackbird Tech LLC v. Cloudflare, Inc.*, C.A. No. 17-283-MSG, 2017 WL 4543783, at *10 (D. Del. Oct. 11, 2017) (granting motion to transfer and finding that the location of relevant evidence weighed in favor of transfer because it was reasonable to presume that much of the evidence would be found at defendant's place of business). This factor should not be overlooked even if the production of documents in Delaware is eased by modern technology. *See id.* (according weight to this factor despite plaintiff's argument that modern technology makes transporting electronic discovery less onerous); *Express Mobile*, 2020 WL 3971776, at *3 (same).

### 6.    Practical Considerations Favor Transfer.

Because neither party has facilities, offices, or employees in Delaware while both parties have ties to New York, practical considerations favor transfer. *See Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 476 (D. Del. 2013) ("[I]n consideration of the fact that neither party operates nor has facilities, offices, or employees in Delaware, the court finds that the practical considerations of efficiency, expense, and ease favor transfer.") As noted, transferring this action to the SDNY will save significant logistical and travel costs for Eleven Labs because its potential witnesses are located in New York and Europe. Plaintiffs' travel expenses would likewise decrease or at least remain the same since one of the Plaintiffs resides in New York and the other Plaintiffs must travel regardless. Furthermore, transfer to New York would spare Eleven Labs the expense of continuing to retain local counsel, as its lead counsel is based in New York, while Plaintiffs' expense in retaining local counsel would remain the same. *See Contour IP Holding,* 2017 WL 3189005, at *13 (granting motion to transfer and finding that the practical considerations factor favors transfer because "if trial proceeded in Delaware, this would require the additional cost of retaining Delaware counsel"). Transfer would therefore decrease the disruption and expense of litigation, and the practical considerations factor thus weighs in favor of transfer.

### 7.    Relative Court Congestion in Delaware Favors Transfer.

The court-congestion factor favors transfer to SDNY. According to the most recent data provided by the Administrative Office of the United States Courts, the weighted case filings per each of the four active judges in this District between June 30, 2023, and June 30, 2024, was 657, as compared to 504 weighted case filings per each of the 28 active judges in the SDNY for that

same period.[3] Thus, the District of Delaware is more congested overall than the SDNY, and this factor favors transfer.

### 8.    The SDNY Has a Local Interest in This Case.

"[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *OpenTV, Inc. v. Netflix, Inc.*, C.A. No. 12-1733-GMS, 2014 WL 1292790, at \*4 (D. Del. Mar. 31, 2014) (quoting *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)). This factor strongly favors transfer in this case because Plaintiffs' claims implicate New York law and purported activity in New York. By contrast, Delaware has little interest in this action other than being Eleven Labs' state of incorporation. Thus, New York's interest in this case outweighs any interest Delaware may have. *Samsara Inc. v. Motive Techs., Inc.*, C.A. No. 24-84-MN, 2024 WL 3822981, at \*7 (D. Del. Aug. 14, 2024) (granting transfer motion and finding local interest of transferee district favored transfer where, inter alia, the claims implicated the state law of that district). Indeed, SDNY has an interest in deciding a local controversy at home. This case involves a dispute between Plaintiffs who live and reside in New York, Texas, California and Nevada, and a company that operates from New York. *See, e.g., Deloitte Consulting LLP v. Sagitec Sols. LLC*, 692 F. Supp. 3d 421, 437–38 (D. Del. 2023) (granting motion to transfer and finding that the transfer district had a local interest in the case because defendant had its headquarters in that district). The national accessibility of Eleven Labs' AI software does not diminish the SDNY's local interest in the underlying allegations. *Werner*, 2021 WL 3662902, at \*5 (granting motion to transfer and finding that the local interest of the transferee district favored transfer where plaintiff resided in California

---

[3]    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630_2024.pdf.

and defendant had its headquarters there, and the national accessibility of defendant's website did not diminish the transferee district's interest in the underlying facts).

9.    **SDNY is More Familiar With the Applicable State Law, and Public Policy Favors Transfer**

Plaintiff Boyett asserts a claim under New York privacy law that implicates New York public policy and strongly favors adjudication by a New York court. Boyett's Section 51 claim seeks to dramatically expand a tort that the New York Court of Appeals has repeatedly emphasized must be narrowly construed and which poses significant public policy and state constitutional limits, as discussed in greater detail in Eleven Labs' pending motion to dismiss. *See* D.I. 19 (Opening Br. In Support of Motion to Dismiss) at pp. 16-23; *see also Lohan v. Take-Two Interactive Software*, 31 N.Y.3d 111, 120 (2018) (explaining that New York courts have cabined section 51 "to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest guaranteed by the First Amendment. . . because freedom of speech and the press. . . transcends the right to privacy") (citations omitted); *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439-440 (1982) (describing complex legislative and judicial history of Section 51 and explaining that it was drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more, and further noting that "the value of our State and Federal Constitutions bespeak in the area of free speech and free press"). The SDNY is "undoubtedly more familiar" with New York law than is this District. *See Samsara*, 2024 WL 3822981, at *7 (finding that this factor favored transfer to the Northern District of California where plaintiff asserted California state law claims and the transferee district was "undoubtedly more familiar with California law than this Court"). And a New York court is better positioned to understand the public policy concerns implicated by Boyett's state-law claim and the appropriate application of Section 51. *See, e.g., Messenger v. Gruner Jahr Printing & Pub.,* 208 F.3d 122, 123

(2d Cir. 2000) (Second Circuit certifying question to the New York Court of Appeals concerning the "important issue … under New York law" of whether, under the facts of the case, a plaintiff can recover under New York's statutory right of privacy, including Section 51, and adopting the Court of Appeals' Opinion).

In addition, in its Motion to Dismiss, Eleven Labs seeks attorneys' fees from all Plaintiffs under N.Y. Civ. R. L. § 70-a(1), New York's anti-SLAPP law, on grounds that this is a strategic lawsuit aimed at Eleven Labs' lawful exercise of its right of free expression. D.I. 19 at 5-7. In 2020, New York amended its anti-SLAPP statute to broaden the scope of the law and provide greater protections to defendants in SLAPP defamation suits. *See, e.g.*, *Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 25-30 (1st Dep't 2024) (providing a detailed analysis of the text, history, and structure of the anti-SLAPP law). That amendment included Section 70-a(1), which provides that a defendant in an action involving "public … participation" "shall" be awarded its "costs and attorney's fees" upon a demonstration that the action "was commenced or continued without a substantial basis in fact and law." N.Y. Civ. R. L. § 70-a(1).  New York courts not only have a unique interest in the application of New York state laws, they are also better positioned to interpret and apply New York's evolving anti-SLAPP statute, as reflected in the host of New York state and federal court decisions that have analyzed what types of speech or activity are covered by the current statute. *See, e.g., Sweigert v. Goodman*, No. 118-CV-08653, 2021 WL 1578097, at *1-2 (S.D.N.Y. Apr. 22, 2021) (Aaron, Mag. J.) (noting that the amendments to New York's anti-SLAPP law in 2020 "expanded the definition of an 'action involving public petition and participation' and, thus, 'substantially broadened the reach of the actual malice rule,'" and addressing whether plaintiff's lawsuit constituted an action involving public petition and participation under the expanded definition of the anti-SLAPP law); *Isaly v. Garde*, 213 N.Y.S.3d

852, 862 (N.Y. Sup. Ct. 2024) (holding that defendant's demand for attorney's fees was sufficient to trigger Section 70-a(1), and it was not necessary to file a separate action or counterclaim, stating that "the legislature's clear intent in crafting [the anti-SLAPP statute] [was to be] a vehicle through which defendants could expeditiously halt SLAPP claims and recover attorney's fees and costs without the burden of the same protracted litigation that [the anti-SLAPP statute] was designed to combat."); *Bobulinkski v. Tarlov*, No. 24-CV-2349(JPO), Opinion & Order at 20-33 (S.D.N.Y. Nov. 26, 2024) (dismissing claims of defamation and injurious falsehood under New York law and finding that Section 70-a(1) applies in federal court because the only element of New York's anti-SLAPP law that the Court was applying was substantive, not procedural, and it did not conflict with Rule 12(b), and, further, that defendant was not required to bring a separate action or counterclaim for fees).

Accordingly, these policy and law-based factors strongly favor transfer to the SDNY.

### 10.    The Remaining Factors Are Neutral.

The remaining factors—the enforceability of any judgment and the convenience of the witnesses—are neutral. *See Dermansky*, 2023 WL 4351340, at *4.  Eleven Labs does not contest that any judgment in this case would be as enforceable in New York as it would be in Delaware.

As to the convenience of witnesses factor, this Court has recognized that the "focus of this factor" is on third-party witnesses, and whether such witnesses may be "available in one court but not the other."  *NXP USA, Inc. v. Impinj, Inc.*, C.A. No. 19-1875-RGA, 2020 WL 5665257, at *3 (D. Del. Sept. 23, 2020). Eleven Labs has not identified any potential third-party witnesses located in New York, Delaware, or elsewhere and the Complaint identifies none. This factor is therefore neutral.  *Id.* (weighing the convenience of the witnesses factor as neutral, but nonetheless granting transfer in view of the overall *Jumara* analysis).

14

**B.**    **Considered in Totality, the Factors Weigh Strongly in Favor of Transfer.**

The only connection between this case and the District of Delaware is that Eleven Labs is incorporated in Delaware. The only factor that weighs in favor of keeping this case in Delaware is Plaintiffs' forum preference, which is afforded little deference here given that Plaintiffs have no ties to Delaware. All of the other pertinent private and public interest factors under *Jumara* weigh either in favor of transfer or are neutral, as illustrated in the chart below:

| No. | Factor | Weighs in Favor of / Against Transfer |
|---|---|---|
| 1 | Plaintiff's choice of forum | Slightly against |
| 2 | Defendant's forum preference | In favor |
| 3 | Where the claims arose | In favor |
| 4 | Convenience of the parties | In favor |
| 5 | Convenience of the witnesses | Neutral |
| 6 | Location of relevant evidence | In favor |
| 7 | Enforceability of the judgment | Neutral |
| 8 | Practical considerations | In favor |
| 9 | Court congestion | In favor |
| 10 | Local interest in deciding local controversies | In favor |
| 11 | Public policies of the fora | In favor |
| 12 | Familiarity of trial judge with applicable state law | In favor |

Considered in their totality, the factors weigh strongly in favor of transferring this action to the SDNY. *See, e.g.*, *Link_A_Media*, 662 F.3d at 1225 (granting writ of mandamus to transfer venue).

**VII.   CONCLUSION**

For the reasons set forth above, Eleven Labs respectfully requests that the Court grant its motion to transfer venue to the SDNY pursuant to 28 U.S.C. § 1404(a).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Brian P. Egan (#6227)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
began@morrisnichols.com
ccucuzzella@morrisnichols.com

OF COUNSEL:

Dori Ann Hanswirth
Joseph A. Greenaway, Jr.
Theresa M. House
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
(212) 836-8000

*Attorneys for Defendant*

December 11, 2024

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 11, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Michael C. Wilson, Esquire<br>Charles Theodore Zerner, Esquire<br>Abigail R. Karol, Esquire<br>MUNCK WILSON MANDALA, LLP<br>1900 Texas Capital Center<br>2000 McKinney Avenue<br>Dallas, TX 75201<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 18, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire | *VIA ELECTRONIC MAIL* |
| Michael J. Farnan, Esquire | |
| FARNAN LLP | |
| 919 North Market Street, 12th Floor | |
| Wilmington, DE 19801 | |
| *Attorneys for Plaintiffs* | |
| | |
| Michael C. Wilson, Esquire | *VIA ELECTRONIC MAIL* |
| Charles Theodore Zerner, Esquire | |
| Abigail R. Karol, Esquire | |
| MUNCK WILSON MANDALA, LLP | |
| 1900 Texas Capital Center | |
| 2000 McKinney Avenue | |
| Dallas, TX 75201 | |
| *Attorneys for Plaintiffs* | |

*/s/ Lucinda C. Cucuzzella*

_____

Lucinda C. Cucuzzella (#3491)