# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **KARISSA VACKER, MARK BOYETT,** | ) | |
| **BRIAN LARSON, IRON TOWER** | ) | |
| **PRESS, INC., and VAUGHN HEPPNER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 24-cv-987-RGA** |
| | ) | |
| **v.** | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| **ELEVENLABS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Dated: January 16, 2025

OF COUNSEL:

Michael C. Wilson *(admitted pro hac vice)*
Charles Theodore Zerner *(admitted pro hac vice)*
Abigail R. Karol *(admitted pro hac vice)*
**MUNCK WILSON MANDALA, LLP**
1900 Texas Capital Center
2000 McKinney Avenue
Dallas, Texas 75201
(972) 628-3600

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs Karissa Vacker, Mark Boyett, Brian Larson, Iron Tower Press, Inc., and Vaughn Heppner*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION AND OVERVIEW OF THE ARGUMENT ....................................... 1

II.    LAW AND ARGUMENT ....................................................................................... 2

    A.    Plaintiffs Have Standing Under the DMCA. ......................................................... 2

        1.    Copyright registration is not required to bring a DMCA claim. ................. 2

        2.    Plaintiffs properly allege a concrete injury under the DMCA. ................... 3

            a.    The DMCA was enacted to prevent digital piracy .......................... 3

            b.    DMCA Violations that enable infringement constitute actionable injury without a separate pecuniary loss. ...................... 4

            c.    Lawful "access" to listen to a work does not excuse DMCA liability for circumventing copy protections. .................................. 6

            d.    *Raw Story Media Inc v OpenAI Inc.* is distinguishable, anomalous, and does not reflect the law in its own jurisdiction; the same court reached the opposite conclusion on near-identical facts 2 weeks later. ................................................ 8

    B.    Plaintiffs Have Properly Alleged Their Individual DMCA Claims. ...................... 9

        1.    The Complaint properly identifies the protected works at issue. ............... 9

        2.    Notice pleading does not require that Plaintiffs identify with certainty which works at issue ElevenLabs actually used. ..................... 10

        3.    Plaintiffs properly assert their claim that ElevenLabs circumvented digital protection measures in violation of Section 1201(a)(1)(A). .......... 11

            a.    Plaintiffs properly allege their works were protected by TPM that was circumvented by ElevenLabs to train its AI systems. ......................................................................................... 11

            b.    The First Amendment (fair use) does not apply to circumvention claims because it regulates *conduct—not speech*. ................................................................................................ 12

        4.    Plaintiffs properly allege that ElevenLabs removed CMI conveyed with the works in violation of 1202(b)(1). ................................................ 13

            a.    Plaintiffs properly identify the relevant CMI and allege its removal by ElevenLabs to train its text-to-speech system. .......... 14

            b.    Plaintiffs meet the "double-scienter" requirement. ....................... 15

            c.    There is no distribution requirement under Section 1202(b)(1). .................................................................................... 16

            d.    Plaintiffs' allegations meet the "identicality" requirement, should it apply. .......................................................................... 17

C.    Plaintiffs Have Properly Asserted Valid Claims for Misappropriation of Their Likeness and Identity. .................................................................. 18

    1.    Personality Rights Apply to Voices. ................................................... 18

        a.    New York Civil Rights Law § 51 encompasses digital voices. ............................................................................... 18

        b.    Texas's common law misappropriation tort applies to voices. ............................................................................... 20

    2.    ElevenLabs' use is not protected by the First Amendment. .................... 22

    3.    Claims are not barred by Copyright law. ................................................. 24

    4.    Boyett's Claim is Not Time-Barred. ........................................................ 24

D.    ElevenLabs Offers Anti-SLAPP Fee Request Is Without Merit or Support. ....... 25

III.    CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
    307 F. Supp. 2d 1085 (N.D. Cal. 2004) ...................................................................7

*ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*,
    667 F. Supp. 3d 411 (S.D. Tex. 2023) ...............................................11, 14, 15, 18

*Ali v. Playgirl, Inc.*,
    447 F. Supp. 723 (S.D.N.Y. 1978)..........................................................................20

*Allen v. Men's World Outlet, Inc.*,
    679 F. Supp. 360 (S.D.N.Y. 1988)..........................................................................20

*Andersen v. Stability AI Ltd.*,
    No. 23-CV-00201-WHO, 2024 WL 3823234 (N.D. Cal. Aug. 12, 2024) .......15, 18

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
    No. 23-CV-06012-SI, 2024 WL 3522196 (N.D. Cal. July 23, 2024)....................18

*Broad. Music, Inc. v. Crocodile Rock Corp.*,
    634 F. App'x 884 (3d Cir. 2015) ..............................................................................5

*Brown v. Ames*,
    201 F.3d 654 (5th Cir. 2000) ...........................................................................21, 22

*Chamberlain Group, Inc. v. Skylink Technologies, Inc.*,
    381 F.3d 1178 (Fed. Cir. 2004)..............................................................................16

*Cohen v. Herbal Concepts, Inc.*,
    472 N.E.2d 307 (N.Y. 1984)...................................................................................20

*Comolli v. Huntington Learning Centers, Inc.*,
    117 F. Supp. 3d 343 (S.D.N.Y. 2015)....................................................................25

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) ...............................................................................10

*Diamondback Indus., Inc. v. Repeat Precision, LLC*,
    No. 4:18-CV-902-A, 2019 WL 5842756 (N.D. Tex. Nov. 7, 2019) .........................3

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ...................................................................................7

*Doe 1 v. GitHub, Inc.*,
    No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 3, 2024) ..........4, 6, 17, 18

*Edmondson v. RCI Hosp. Holdings, Inc.*,
No. 16-CV-2242 (VEC), 2021 WL 4499031 (S.D.N.Y. Oct. 1, 2021) .................................20

*Energy Intel. Grp., Inc. v. Jefferies, LLC*,
101 F. Supp. 3d 332 (S.D.N.Y. 2015) ...............................................................................11

*Energy Intel. Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*,
948 F.3d 261 (5th Cir. 2020) ...............................................................................................5

*F. W. Woolworth Co. v. Contemp. Arts*,
344 U.S. 228 (1952) ..............................................................................................................5

*Facenda v. N.F.L. Films, Inc.*,
542 F.3d 1007 (3d Cir. 2008) ......................................................................................22, 24

*Fischer v. Forrest*,
No. 14CIV1304PAEAJP, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) ............................25

*FMHUB, LLC v. MuniPlatform, LLC*,
No. 19-15595, 2020 WL 4581828 (D.N.J. Aug. 10, 2020) .................................................10

*FMHUB, LLC v. MuniPlatform, LLC*,
No. CV 19-15595 (FLW), 2021 WL 1422873 (D.N.J. Apr. 15, 2021) ...............................10

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019) ..............................................................................................................2

*Friss v. City of Hudson Police Dep't*,
592 N.Y.S.2d 855 (N.Y. App. Div. 1993) ...........................................................................19

*FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*,
2022 WL 891473 (D. Minn. Mar. 25, 2022) .......................................................................4

*GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*,
391 F. Supp. 3d 828 (N.D. Ill. 2019) ...................................................................................5

*Glob. Ref. Grp., Inc. v. PMD Analysis Inc.*,
No. 21CV0532JLRBCM, 2023 WL 5733968 (S.D.N.Y. Aug. 15, 2023) ..............................3

*Green v. United States Dep't of Just.*,
111 F.4th 81 (D.C. Cir. 2024) ........................................................................................4, 13

*Henley v. Dillard Dep't Stores*,
46 F. Supp. 2d 587 (N.D. Tex. 1999) ............................................................................21, 23

*Lohan v. Take-Two Interactive Software, Inc.*,
97 N.E.3d 389 (N.Y. 2018) .................................................................................................20

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) .................................................................................24

*Mantel v. Smash.com Inc.*,
No. 19-CV-6113-FPG, 2019 WL 5257571 (W.D.N.Y. Oct. 17, 2019)....................................6

*Matthews v. Wozencraft*,
15 F.3d 432 (5th Cir. 1994) .............................................................................................21, 22

*In re: Maxim Integrated Prods., Inc.*,
No. 12-244, 2013 WL 12141373 (W.D. Pa. Mar. 19, 2013) ......................................11, 12, 13

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*,
629 F.3d 928 (9th Cir. 2010) ............................................................................................16

*Med. Broad. Co. v. Flaiz*,
No. CIV.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) ......................................3

*Microsoft Corp. v. AT&T Corp.*,
550 U.S. 437 (2007).........................................................................................................4

*Midler v. Ford Motor Co.*,
849 F.2d 460 (9th Cir. 1988) .........................................................................19, 21, 22, 24

*Murphy v. Millennium Radio Grp. LLC*,
650 F.3d 295 (3d Cir. 2011)...................................................................................8, 9, 14

*New Parent World, LLC v. True To Life Prods., Inc.*,
No. CV-23-08089-PCT-DGC, 2024 WL 4277865 (D. Ariz. Sept. 24, 2024).................17, 18

*Notte v. New Sushi, LLC*,
No. 22CV6394 (EP) (JBC), 2024 WL 706783 (D.N.J. Feb. 20, 2024)..................................6

*Onassis v. Christian Dior-New York, Inc.*,
472 N.Y.S.2d 254 (Sup. Ct. 1984), *aff'd*, 488 N.Y.S.2d 943 (1985)....................................20

*In re Orthopedic Bone Screw Products Liab. Litig.*,
193 F.3d 781 (3d Cir. 1999)...............................................................................................23

*Raw Story Media, Inc. v. OpenAI, Inc.*,
24 CIV. 01514, 2024 WL 4711729, at *3–5 (S.D.N.Y. Nov. 7, 2024). ...............................8, 9

*Raydiola Music v. Revelation Rob, Inc.*,
729 F. Supp. 369 (D. Del. 1990)...........................................................................................5

*Real World Media LLC v. Daily Caller, Inc.*,
No. CV 23-1654 (JDB), 2024 WL 3835351 (D.D.C. Aug. 14, 2024)..............................17, 18

*Realnetworks, Inc. v. DVD Copy Control Ass'n*,
641 F. Supp. 2d 913 (N.D. Cal. 2009) .................................................................................7

*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) .............................................................................................4

*Sydney Nicole LLC v. Sheil*,
   No. 1:24-CV-00423-RP, 2024 WL 4923847 (W.D. Tex. Nov. 15, 2024)..............................21

*The Intercept Media, Inc. v. OpenAI, Inc.*,
   24-CV-1515 (JSR) (S.D.N.Y. Nov. 21, 2024)..........................................................................9

*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*,
   529 F. Supp. 3d 303 (D. Del. 2021)........................................................................................11

*Tremblay v. OpenAI, Inc.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024) ..............................................................................16, 17

*Trent P. Fisher Enters., LLC v. SAS Automation, LLC*,
   No. 3:20-CV-216, 2023 WL 4967375 (S.D. Ohio Aug. 3, 2023) ............................................5

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001).............................................................................................7, 8, 9

*VIP Pet Grooming Studio, Inc. v. Sproule*,
   203 N.Y.S. 681 (N.Y. Sup. Ct. 2024) ....................................................................................25

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir. 1992) ..........................................................................................21, 22

*Wells v. Talk Radio Network-FM, Inc.*,
   No. 07 C 4314, 2008 WL 4888992 (N.D. Ill. Aug. 7, 2008).................................................22

*Young v. Greneker Studios*,
   26 N.Y.S.2d 357 (N.Y. Sup. Ct. 1941) ..................................................................................20

**Statutes**

17 U.S.C. § 102(a) ............................................................................................................................2

17 U.S.C. § 408(a) ............................................................................................................................2

17 U.S.C. §§ 411(a), 412 ..................................................................................................................2

17 U.S.C. § 504(b) ............................................................................................................................5

17 U.S.C. § 1201(c) ........................................................................................................................13

17 U.S.C. § 1202(b) ..................................................................................................4, 8, 16, 17, 18

17 U.S.C. § 1202(c) ..................................................................................................................14, 15

17 U.S.C. § 1203(c) ..........................................................................................................................5

17 U.S.C. § 1203(c)(2)......................................................................................................................6

N.Y. Stat. Law § 231 ......................................................................................................................19

New York Civil Rights Law § 51 ...........................................................................................19, 20

**Other Authorities**

Fed. R. Civ. P. Rule 8 ...........................................................................................11, 13, 15

Fed. R. Civ. P. 15(a) ...........................................................................................26

Restatement of the Law, Copyright § 10.03 ...........................................................................3, 4

Restatement (Second) of Torts § 652c, comment c (1977) ...........................................................22

Bill Jacket for N.Y. Civil Rights Law § 51 (available at
    https://digitalcollections.archives.nysed.gov/index.php/Detail/ objects/40901) ....................19

## I.     INTRODUCTION AND OVERVIEW OF THE ARGUMENT

ElevenLabs insists it can lawfully hack through digital locks on Plaintiffs' professionally produced audiobooks, duplicate them without permission to create unprotected copies, strip away copyright management information, and use the unauthorized copies for AI training to clone the unique voices of two successful audiobook narrators, and then market recordings from these AI voice clones for profit—all without recourse to the impacted voice actors and copyright owners.

Its argument has alarming implications. Under ElevenLabs' theory, it can clone nearly anyone's voice and use it to espouse nearly any message—from a top executive announcing market panic to a faith leader endorsing hate—and market, for profit, synthetic recordings others recognize as that person's likeness, with impunity. ElevenLabs' position is unsupported by law.

ElevenLabs justifies its extraordinary stance by misconstruing Plaintiffs' allegations and misstating the law. It presumes, for example, that copyright owners have no rights unless their works are registered—ignoring "black letter" law that protection arises under the Copyright Act upon creation, and that infringement of unregistered works causes injury. The vast majority of courts have thus concluded registration is *not* required to bring a DMCA claim. ElevenLabs also ignores that the classic injury protected under the DMCA—enacted to prevent digital piracy—is *infringement* enabled by the DMCA violation, and gives plaintiff standing to elect damages based on actual *or* statutory damages any time prior to final judgment.

ElevenLabs likens this case to other pending AI disputes, that claim the alleged DMCA violation facilitated copyright infringement based on a theory that outputs from AI models like ChatGPT *might someday* reproduce the copyrighted work. Plaintiffs' Complaint is very different. It alleges a direct DMCA violation: ElevenLabs *itself* directly circumvented technological protection measures shielding professional audiobooks and stripped their copyright management

information, ***to enable its own direct and immediate unauthorized copying of Plaintiffs' original works***. The infringement tied to DMCA violations is not speculative; it has occurred and will continue as ElevenLabs trains new models. Thus, requirements imposed by some courts, like "double-scienter," and "identicality" are easily met.

As to the voice actors' misappropriation claims, ElevenLabs takes the untenable position that the law limits personality rights to the voices of "famous singers" despite clear law broadly protecting any person's likeness, expressly including one's "voice." Without support, ElevenLabs also claims that a misappropriation is not actionable if the likeness is created using—not a camera, pencil, or a human impersonator—but using "AI." These arguments do not withstand scrutiny.

While the technology may be new, there is nothing novel about requiring a defendant to answer for systematic piracy and misappropriation of an actor's likeness by commercially exploiting recordings that imitate their voice. ElevenLabs' motion to dismiss should be denied.

## II. LAW AND ARGUMENT

### A. Plaintiffs Have Standing Under the DMCA.

#### 1. Copyright registration is not required to bring a DMCA claim.

ElevenLabs' standing arguments misrepresent copyright law. The Copyright Act protects original works from the moment they are fixed in tangible medium—regardless of registration. 17 U.S.C. § 102(a). Indeed, "registration is *not a condition of* ***copyright protection***." 17 U.S.C. § 408(a) (emphasis added). While registration is a prerequisite to bring a federal claim for copyright infringement, registration is *not* required to *own* valid copyrights or to suffer copyright injury.[1] These rights can be violated—causing *injury*—regardless of registration status.

---

[1] *See* 17 U.S.C. §§ 411(a), 412; *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 307–08 (2019) ("[T]he Copyright Act safeguards copyright owners, irrespective of

For this reason, the *great* majority of courts to consider the issue have recognized that DMCA claims do *not* require copyright registration.[2] As the *Diamondback* court explained:

> Because copyright registration is not a prerequisite to this action, plaintiff's DMCA claim need not be dismissed for failure to state a claim.... Although a DMCA claim requires the defendant to know of potential infringement, such requirement does not necessitate registration ***because infringement can occur absent registration***. A copyright owner's exclusive rights vest at the time of the creation of the work, and infringement occurs any time those rights are violated, even if registration has not occurred.... Therefore, although the DMCA mentions infringement, the plain text does not require registration.

*Diamondback*, 2019 WL 5842756, at *2 (emphasis added).

### 2.    Plaintiffs properly allege a concrete injury under the DMCA.

ElevenLabs argues that Plaintiffs lack Article III and statutory standing because they have not alleged "concrete injury" tied to DMCA violations. ElevenLabs' argument misconstrues the DMCA's purpose, the injury required to establish standing, and holdings in the AI cases it cites. Plaintiffs have properly alleged loss of licensing revenue, and risk of future harm. D.I. 1 ("Compl.") ¶¶ 127, 150, 173, 175.

### a.    The DMCA was enacted to prevent digital piracy.

Congress enacted the DMCA to prevent digital piracy and safeguard a copyright owner's

---

registration, by vesting them with exclusive rights upon creation of their works and prohibiting infringement from that point forward.").

[2] *Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019); *Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003) ("Nothing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit.... [C]laims under the DMCA... are simply not copyright infringement claims and are separate and distinct from the latter."); *Glob. Ref. Grp., Inc. v. PMD Analysis Inc.*, No. 21CV0532JLRBCM, 2023 WL 5733968, at *11 (S.D.N.Y. Aug. 15, 2023), rep. and rec. adopted, No. 121CV00532JLRBCM, 2023 WL 5734171 (S.D.N.Y. Sept. 5, 2023) ("However, most of the district courts that have considered the question – including courts in our Circuit – have concluded that claims under the DMCA are not 'infringement' claims, and consequently are not subject to § 411(a)."); RESTATEMENT OF THE LAW, COPYRIGHT § 10.03 TD No 5 (2024) ("[R]egistration is not required to pursue a DMCA claim.") (citation omitted); 5 Patry on Copyright § 17:78.

ability to control its works in the digital marketplace.[3] Section 1201's anticircumvention provisions target "piracy of digital property—a modern form of theft." *Green*, 111 F.4th at 96. Likewise, Section 1202's prohibition on removing Copyright Management Information ("CMI") applies when done "knowing, [or] having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). This forward-looking language—focused on what "will" happen rather than what has happened—reaffirms that Congress aimed to prevent interference with digital property that *increases the risk* of infringement.[4]

### b. DMCA Violations that enable infringement constitute actionable injury without a separate pecuniary loss.

Establishing Article III standing under the DMCA is "not a high bar." *FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, 2022 WL 891473, at *26 (D. Minn. Mar. 25, 2022). A plaintiff "need not show that it actually suffered financial harm, it is sufficient to show that a chain of events resulting from the removal of the CMI could result in harm." *Id.* "[T]he injury contemplated by 17 U.S.C. § 1202 is *an increased risk of copyright infringement*, which is an injury specific to copyright owners." RESTATEMENT OF THE LAW, COPYRIGHT § 10.03 TD No 5 (2024). A DMCA plaintiff has standing to seek relief for violations that pose a *threat* of infringement. *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217, at *4-5 (N.D. Cal. Jan. 3, 2024) (holding Does 3 and 4 had standing for injunctive relief based on substantial risk of future infringement, despite failure to allege completed act of infringement, and thus, no injury-in-fact).

---

[3] *Green v. United States Dep't of Just.*, 111 F.4th 81, 89 (D.C. Cir. 2024) ("The Act 'backed with legal sanctions' copyright owners' use of 'digital walls' *to protect their copyrighted works from piracy*.") (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 458 (2007)) (emphasis added).

[4] 17 U.S.C. § 1202(b); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (affirming dismissal where record showed no completed infringement or intent to infringe but underscoring that "as the statute is written in the future tense, [plaintiffs] need not show that any specific infringement has already occurred," so long as they show "[defendant] had reasonable grounds to be aware of the probable future impact").

4

Where a DMCA violation *has* enabled a completed act of infringement, as alleged here, that infringement itself establishes injury and gives rise to a claim for damages—without any further showing that plaintiff suffered a monetary loss.[5] The DMCA's damages provisions (like the Copyright Act), grant plaintiffs the right to elect—any time before final judgment—either (1) actual damages (which include plaintiff's loss and/or defendant's illicit gains) *or* (2) statutory damages. 17 U.S.C. § 1203(c) (DMCA) (mirroring remedies under 17 U.S.C. § 504(b) (Copyright Act)). This scheme deters violations, not merely compensates for losses:[6] "*[T]he DMCA authorizes a plaintiff to opt for statutory damages even where it cannot adequately support a claim for actual damages.*"[7] Thus, standing is established if Plaintiffs allege ElevenLabs committed DMCA violations causing actual *infringement*. *Fisher*, 2023 WL 4967375 at *16.

The January 3, 2024 *GitHub* decision illustrates this point. There, some plaintiffs alleged a *completed* infringement based on plaintiffs themselves prompting the defendant's AI model to produce code substantially similar to their own, "save for a few 'cosmetic' differences." 2024 WL

---

[5] *Trent P. Fisher Enters., LLC v. SAS Automation, LLC*, No. 3:20-CV-216, 2023 WL 4967375, at *16 (S.D. Ohio Aug. 3, 2023) ("Court decisions interpreting [Section 1203(c) of] the statute *make clear 'injury' refers to standing*. [This] is 'not a high bar'… [Plaintiff] asserts it sustained sufficient injury because it *lost the ability to control its copyrighted works and a license fee* it intended to earn…. Thus, should Defendants be found to have violated Plaintiffs' copyright without a defense, Plaintiffs will be allowed to prove damages [for their DMCA claim].") (emphasis added).

[6] *Energy Intel. Grp., Inc.*, 948 F.3d at 276 ("Like statutory damages under § 504(c), the structure of statutory damages under § 1203 indicates an intent to deter, not just compensate…. [T]extually, *nothing in § 1203 requires statutory damages to be linked to actual damages*.") (emphasis added); *see also Broad. Music, Inc. v. Crocodile Rock Corp.*, 634 F. App'x 884, 886 (3d Cir. 2015) (quoting *F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 233 (1952)) ("Even for *uninjurious and unprofitable* invasions of copyright the court may, if it deems it just, impose a liability within statutory limits.") (emphasis added); *Raydiola Music v. Revelation Rob, Inc.*, 729 F. Supp. 369, 375–76 (D. Del. 1990) ("[T]he purpose of statutory damages is *to remedy a wrong which would otherwise go unremedied if actual damages could not be proven*.") (emphasis added) (cleaned up).

[7] *GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 851 (N.D. Ill. 2019) (emphasis added); *see also Broad. Music, Inc.*, 634 F. App'x at 886 (courts may impose liability "[e]ven for *uninjurious and unprofitable* invasions of copyright") (emphasis added).

235217 at *2. Even though plaintiffs themselves induced and received the infringing copy—and thus necessarily suffered no distinct monetary loss—the allegations established injury giving rise to standing under the Article III and the DMCA *both* for injunctive relief *and* monetary damages. *Id.* at **4-5 (noting this was true "even if the injury could be described in some sense as willingly incurred").

Nothing in the DMCA requires a plaintiff to allege a separate monetary injury from the DMCA violation distinct from the infringement it enabled, to establish standing.[8] Moreover, plaintiff's monetary damages under the DMCA include the greater of plaintiffs' loss *or* defendant's gain (17 U.S.C. § 1203(c)(2) from the violation—a "gain" ElevenLabs does not deny Plaintiffs adequately pled. *See*, *e.g.*, Compl. ¶¶ 157-171 (use of Boyett recordings to train AI model), ¶ 148 (commercial exploitation of Boyett's voice); ¶¶ 31-40 (use of "Adam" on landing page and rapid growth). In alleging ElevenLabs deliberately bypassed protection measures and removed CMI in order to then create and use unauthorized copies outside the licensing process— Plaintiffs claim ElevenLabs engaged in exactly the conduct Congress sought to penalize.

### c.    Lawful "access" to listen to a work does not excuse DMCA liability for circumventing copy protections.

ElevenLabs suggests that Plaintiffs' DMCA allegations fail because they do not allege "Defendant failed to pay the *appropriate licensing fee* for any of their audiobooks, nor could they." D.I. 19 ("MTD") at 9. They claim such "access" would preclude DMCA liability for any

---

[8] *See*, *e.g.*, *Notte v. New Sushi, LLC*, No. 22CV6394 (EP) (JBC), 2024 WL 706783, at *4 (D.N.J. Feb. 20, 2024) (noting courts may "award statutory damages . . . where there is no evidence of direct injury caused by a defendant's willful violation, like here, where Plaintiff provides no evidence that Defendant's violations of the DMCA injured him in a manner distinct from Defendant's [copyright violation]"); *Mantel v. Smash.com Inc.*, No. 19-CV-6113-FPG, 2019 WL 5257571, at *4 (W.D.N.Y. Oct. 17, 2019) (same).

circumvention. *Id.* at 15-16. The argument misreads the Complaint, misunderstands the nature of Plaintiffs' rights and injury, and the protections afforded under the DMCA.

Plaintiffs expressly allege that they distribute their works *exclusively* through encrypted digital files protected by technological measures that "prevent copying or modification of these files or their contents." Compl. ¶¶ 157-160. ElevenLabs *could not* have paid an "appropriate licensing fee" for unrestricted access to copy and modify its works because no such license exists.

Even if ElevenLabs paid to *access* the audiobooks, this would not relieve it from liability under 1201(a)(1). Access to *view* or *listen* to a work does *not* immunize a defendant from DMCA liability for circumventing copy protections.[9] Courts have repeatedly rejected the argument that purchasing "access" to view content precludes liability for circumventing copy protections.[10] As the Third Circuit explained, referencing a classic and highly analogous situation:

> [I]f a movie studio encrypts a DVD so that it cannot be copied without special software . . . and an individual uses his own software to 'crack' the encryption and make copies without permission, *the studio may pursue the copier both for simple infringement under the Copyright Act and, separately, for his circumvention of the encryption*, which is a 'technological measure' designed to 'control ... access to' the DVD, under the DMCA.[11]

---

[9] *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) (authorization to view DVD does not authorize circumvention of copy protection); *see also Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 863 (9th Cir. 2017) (holding the DMCA "exempts from circumvention liability only those whom a copyright owner authorizes to *circumvent* an access control measure, not those authorized to access the work").

[10] *Id.*; *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 942-43 (N.D. Cal. 2009); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085 (N.D. Cal. 2004).

[11] *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 300 (3d Cir. 2011) (citing *Corley*, 273 F.3d at 444); *see also Corley*, 273 F.3d at 444 (rejecting argument that purchasing a DVD entitles buyer to circumvent encryption for copying).

Were it otherwise, the DMCA's purpose—protecting digital works from piracy—would be upended.[12]

> ### d. *Raw Story Media Inc v OpenAI Inc.* is distinguishable, anomalous, and does not reflect the law in its own jurisdiction; the same court reached the opposite conclusion on near-identical facts 2 weeks later.

Citing *Raw Story Media*, ElevenLabs argues that allegations of unauthorized use of copyrighted works cannot establish Article III injury under the DMCA. MTD at 8-9. *Raw Story* is inapplicable here. The court found no concrete injury after Plaintiff failed to connect the CMI removal to *any* specific acts of infringement or show a realistic prospect of future infringement, as required by Section 1202(b)(1)).[13] The plaintiff, a collective of news organizations, alleged that OpenAI (1) scraped *freely accessible* news articles *without TPM*; (2) removed CMI from these articles in an internal database; and (3) used them to train ChatGPT. *Id.* But unlike here, the plaintiff did not allege OpenAI created unauthorized copies of their works; instead, it speculated about potential future reproduction of their content in AI outputs. *Id.* The court found these attenuated allegations insufficient to infer that OpenAI removed CMI with intent to enable infringement. Without a plausible connection between the DMCA violation and any act of past or future *infringement*, the court concluded that mere "use" (analyzing the original works during AI training) failed to allege any cognizable injury tied to OpenAI's removal of CMI.

This case is fundamentally different. The Complaint alleges that ElevenLabs' training process *necessarily required* creating multiple unauthorized copies of their protected works (*see*

---

[12] ElevenLabs points to Plaintiffs' allegation that ElevenLabs may have obtained recordings "*for its training corpus* [of 500,000 hours] from sources including the open internet, [and] torrent file-sharing sites" (MTD at 16) to suggest that ElevenLabs *could* have collected copies of *Plaintiffs'* works already stripped of their TPM and CMI. *Id.* The argument ignores that the Complaint does not allege Plaintiffs' works are available *anywhere* in unrestricted formats free of TPM and CMI. Nor can the court treat these possibilities as "facts" on a motion to dismiss.

[13] *Raw Story Media, Inc. v. OpenAI, Inc.*, 24 CIV. 01514, 2024 WL 4711729, at *3–5.

Compl. ¶¶85-87, 96-100, 159), and that: (i) ElevenLabs must circumvent TPM and remove CMI to create unrestricted copies of the audiobooks free from these DRM protections (Compl. ¶¶157-160, 165-170)**;** and (ii) create additional copies during preprocessing necessary for AI training, and store them in its training repository. (¶¶96-100, 159). Thus, the Complaint alleges that ElevenLabs circumvented TPM and removed CMI in direct violation of the DMCA *to facilitate its own direct infringement and unauthorized use of fictional works distributed subject to DRM.* To hold that such conduct does not establish injury would mean the DMCA fails to recognize, as concrete harm, the very injury it was designed to prevent.[14]

Moreover, *Raw Story Media* is an outlier that does not reflect the law even in its own jurisdiction. Two weeks later, in *The Intercept Media, Inc. v. OpenAI, Inc.*, 24-CV-1515 (JSR) (S.D.N.Y. Nov. 21, 2024)—involving nearly identical allegations by another news organization against the same defendant—the same court considered the *Raw Story Media* opinion, rejected OpenAI's identical arguments (including injury and standing), and denied its motion to dismiss the 1202(b)(1) claim.[15] *Raw Story Media* neither compels nor supports dismissal here.

**B.    Plaintiffs Have Properly Alleged Their Individual DMCA Claims.**

**1.    The Complaint properly identifies the protected works at issue.**

Citing a dismissal order in *FMHUB, LLC v. MuniPlatform, LLC*, No. 19-15595, 2020 WL 4581828 (D.N.J. Aug. 10, 2020), ElevenLabs argues that Plaintiffs "fail to allege any *valid*

---

[14] *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 300 (3d Cir. 2011) (citing *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 444 (2d Cir. 2001)) (where infringer circumvents DVD protections against copying, "the studio may pursue the copier *both for simple infringement* under the Copyright Act *and, separately, for his circumvention of the encryption* … under the DMCA.").

[15] *See The Intercept Media, Inc. v. OpenAI, Inc.,* No. 24-cv-1515, ECF No. 122 (denying motion to dismiss § 1202(b)(1) claim; *see also* ECF Nos. 52 (Mot. to Dismiss), 80 (OpenAI's Reply), 88–89 (Supp. Memos), 90 (Supp. Opp'n), 99 (Notice of Supp. Auth.); 121 (Pls.' Resp. to OpenAI's Notice of Suppl. Auth.) (arguing Nov. 7, 2024 *Raw Story Media* opinion was distinguishable).

copyright interest … as is required under Section 1201 and 1202 of the DMCA." MTD at 10. Its

argument, however, is foreclosed by the FMHUB court's subsequent opinion. In *FMHUB, LLC v.*

*MuniPlatform, LLC*, No. CV 19-15595 (FLW), 2021 WL 1422873, at *6 (D.N.J. Apr. 15, 2021),

the defendant again challenged both "the existence of any copyrighted work" and the "lack[ of]

registration of these supposed works." *Id.* The court held that "the Amended Complaint corrects

that deficiency" by identifying *unregistered* works as the "unique and original digital content

developed by Plaintiff Munihub on and for its website www.munihub.com, including the text,

images, formatting, use and function." *Id.* This sufficiently identified the "copyrighted works"—

requiring only "that the work was *protected* under the Copyright Act," *not* registered. *Id.*

The Complaint meets this standard by identifying the protected works individually by their

title, specifying the author, and, for the associated audiobooks, narrator. This includes over 40

audiobooks narrated performed by Boyett of works for Larson (Compl. ¶26) and 19 works for

Heppner (Compl. ¶29). The Complaint further alleges that Heppner owns copyrights in all written

works and audiobook narrations (Compl. ¶30), while Larson holds copyrights in all underlying

texts and most audiobook narrations (Compl. ¶27).[16]

### 2. Notice pleading does not require that Plaintiffs identify with certainty which works at issue ElevenLabs actually used.

ElevenLabs faults Plaintiffs for not asserting with certainty which copyrighted works it

used in training. This argument fails. Where the specific works at issue have been disclosed,

plaintiffs need not identify at the pleading stage information exclusively within defendants'

---

[16] Because an audiobook contains the full text of the underlying written work, unauthorized copies of the audiobook also infringe Plaintiffs' copyrights in the literary work. *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015) ("[I]f a third party copies a derivative work without authorization, it infringes the original copyright owner's copyright in the underlying work to the extent the unauthorized copy of the derivative work also copies the underlying work."). For this reason, Larson has DMCA Section 1201 and 1202 claims in all identified works, including audiobooks.

control. *See Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 529 F. Supp. 3d 303, 312-314 (D. Del. 2021) (rejecting argument that plaintiff must identify works used for AI training with certainty when information "solely in [defendant's] possession"); *Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015) ("While in cases of more public infringing activities, failure to enumerate specifically the allegedly infringed works might be fatal to the claim, *Plaintiffs' pleading of the potentially-infringed works suffices* because Defendants are in sole possession of the facts that determine *whether any individual work was infringed*. The list of the specific works … is exhaustive and provides the 'basic factual notice' of the subject of the claim as required under Rule 8.") (emphasis added) (cleaned up); *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 423–24 (S.D. Tex. 2023) (applying same principle for a DMCA claim). Having identified the works at issue, established copyright ownership, detailed the nature and necessity of circumventing TPM and removing CMI, and alleged knowing removal without authorization, Plaintiffs have properly pled claims under DMCA §§ 1201 and 1202.

3. **Plaintiffs properly assert their claim that ElevenLabs circumvented digital protection measures in violation of Section 1201(a)(1)(A).**

a. **Plaintiffs properly allege their works were protected by TPM that was circumvented by ElevenLabs to train its AI systems.**

To state a claim under § 1201(a)(1)(A), Plaintiff must also allege "(2) that the copyrighted work was protected by 'a technological measure that effectively controls access'; and (3) that the measure was 'circumvented' in order to obtain access." *In re: Maxim Integrated Prods., Inc.*, No. 12-244, 2013 WL 12141373, at *16 (W.D. Pa. Mar. 19, 2013). A plaintiff need not identify or describe all technological measures protecting the work, or describe how they operated, alone or with other measures, to control access. *Id.* at *17 (identification of a technological protection that, alone, would not prevent access, paired with allegation that it was used in combination with other unspecified technologies was sufficient). A general description is sufficient.

The Complaint easily meets this standard, explaining that the works (1) are professional audiobooks distributed through commercial channels like Amazon Audible in formats subject to digital rights management systems, indicating use of standard industry protections (¶¶ 23, 30, 157-58, 160); (2) are "legally distributed via the internet *exclusively* through digital files protected by technological measures, including encryption and DRM technologies, which effectively control access to these copyrighted works and prevent unauthorized copying through technological means" (¶ 157); (3) include technological protections that "prevent unauthorized copying *or modification of these files or their contents*—including the extraction and conversion of their contents into unprotected formats" (¶ 158); and that, (4) "[t]he DRM protections on Author/Publisher Plaintiffs' audiobook narrations prevent the creation of such copies or any modification of the original files without authorization" (¶ 160).

The Complaint also shows ElevenLabs *had no choice* but to circumvent these protections because AI training required creating unauthorized copies for preprocessing—converting formats, normalizing volume (¶¶ 96-97)—and segmenting files into "input-output pairs" (¶¶ 85-87, 96-100). Given its massive training corpus of 500,000 hours of audio (¶88), ElevenLabs developed "data processing procedures and/or processes to streamline the removal of DRM protections" (¶ 164) and maintained copies in a "version-controlled repository" (¶¶ 98-100). These detailed allegations of both the protective measures and ElevenLabs' systematic circumvention more than satisfy Rule 8's notice requirements. *Maxim*, 2013 WL 12141373, at *17.

### b. The First Amendment (fair use) does not apply to circumvention claims because it regulates *conduct—not speech*.

ElevenLabs argues that its "alleged use—to create synthesized voices which the Author Plaintiffs never allege appropriate any protected content from their works—would be a transformative, fair use, which the DMCA protects. 17 U.S.C. § 1201(c)." MTD at 14.

Fair use is *not* a defense to Section 1201(a)'s prohibition on circumventing technological protection measures, as the D.C. Circuit recently explained:

> [S]ection 1201(a) expressly regulates *conduct*—the circumvention of technological locks, and trafficking in means of circumvention—*rather than speech*…. The act of circumvention is not inherently expressive. ... As the government aptly notes, trafficking is no more identified with expression than is the sale of lock picks for breaking into bookstores identified with the expressive conduct of reading the stores' books.
>
> ….
>
> The First Amendment protects a right to read, but it does not grant unimpeded access to every reading material a reader might wish for. Similarly, the First Amendment does not guarantee potential fair users unfettered or privileged access to copyrighted works they seek to use in their own expression.... If every work ... 'could be pirated away' via circumvention, soon nothing worth reading would be published electronically. Plaintiffs' premise that fair users are entitled to make unauthorized use of copyrighted works assumes away the very entitlements copyright law validly protects.

*Green v. United States Dep't of Just.*, 111 F.4th 81, 96, 97-98 (D.C. Cir. 2024). Section 1201(a) prohibits the act of circumventing technological protection measures regardless of the purpose for which access is sought. The First Amendment does not protect theft or trespass. *Id.* ("The Heartland conduct [Section 1201's] anticircumvention and antitrafficking provisions criminalize *is piracy of digital property—a modern form of theft*.").[17]

### 4. Plaintiffs properly allege that ElevenLabs removed CMI conveyed with the works in violation of 1202(b)(1).

"[A] cause of action under § 1202 of the DMCA potentially lies whenever the types of information listed in § 1202(c)(1)–(8) and 'conveyed in connection with copies ... of a work ...

---

[17] ElevenLabs claims Plaintiffs fail to allege trafficking under §1201(a)(2). Yet the Complaint explains that ElevenLabs needed a large-scale data pipeline for automated DRM-circumvention and CMI-stripping across thousands of works—i.e., "manufacturing" a circumvention system that §1201(a)(2) covers. It remains unclear whether ElevenLabs' internal or extra-corporate sharing qualifies as "trafficking." Moreover, training frontier AI models typically exceeds the hardware capacity of a small startup, raising a plausible inference that ElevenLabs relied on external providers and shared these tools—a fact that can only be confirmed in discovery.

including in digital form' *is falsified or removed*, regardless of the form in which that information is conveyed." *Murphy*, 650 F.3d at *305.* *"[U]nlike § 1201, § 1202* applies only when a defendant knows or has reasonable grounds to know that the removal will 'induce, enable, facilitate, or conceal' an infringement." *Id.* at 302 n.8 (emphasis added).

Section 1202(c) defines "copyright management information" to include "information conveyed in connection with copies" of the work, including the title, name of the author, name of the copyright owner, as well as terms and conditions for use of the work, and "identifying numbers or symbols referring to such information or links to such information." 17 U.S.C. § 1202(c).

At the pleading stage, allegations need not be "factually specific as to particular documents or data, or the methods [a defendant] allegedly used to copy the Subject Works." *ADR*, 667 F. Supp. 3d at 420. Rather, the allegations must "provide the defendant with notice of the claims against it." *Id.* To meet this requirement, plaintiff only must allege "the existence of CMI in connection with a copyrighted work" along with the prohibited conduct. *Id.* at 420 n.4.

> a.   **Plaintiffs properly identify the relevant CMI and allege its removal by ElevenLabs to train its text-to-speech system.**

ElevenLabs argues Plaintiffs have not adequately identified the CMI at issue (MTD at 12) but the Complaint unambiguously identifies the CMI present in all the works:

> The audiobook narrations performed by Boyett for the Author/Publisher Plaintiffs contain Copyright Management Information ('CMI'), underline including metadata identifying the work, the author, the narrator, the copyright owner, and other related information. This CMI is conveyed in connection with the narrations and is protected under 17 U.S.C. § 1202(c).  Compl. ¶ 166.

*Andersen v. Stability AI*, on which ElevenLabs relies, illustrates by contrast why the allegations are sufficient here. 700 F. Supp. 3d 853 (N.D. Cal. 2023). In *Andersen*, the court demanded precise CMI details for two reasons absent here. First, the works were allegedly created by a putative class of numerous different artists, scraped from hundreds of websites by a *third*

14

party (LAION), and assembled into a dataset of 5 billion images where CMI may have already been stripped, before any use by the defendants. *Id.* at 871. Absent details on the CMI conveyed with the original works and/or present on the scraped copy defendants received, they had no reasonable way to determine if they removed it. Here, the Complaint alleges ElevenLabs directly obtained commercial audiobooks containing standardized CMI, and removed it, itself.

Second, the *Andersen* plaintiffs' theory of intended infringement was similarly speculative—each defendant removed CMI knowing it enabled an AI model *to output* infringing copies of the work. *Id.* at 872. The Complaint here is more straightforward: ElevenLabs removed CMI to itself create unauthorized copies for training, directly infringing Plaintiffs' works. Although technical details about ElevenLabs' circumvention is in its exclusive control, these allegations exceed Rule 8's requirements. *See ADR Int'l Ltd.,* 667 F. Supp. 3d at 423–24.

### b.    Plaintiffs meet the "double-scienter" requirement.

ElevenLabs claims that Plaintiffs fail to assert facts meeting the "double-scienter" requirement under DMCA Section 1202(b)(1). MTD at 13. Courts are split as to whether a plaintiff must meet a double scienter requirement to set out a claim.[18] The Third Circuit has not resolved the issue. Even if such a requirement applies, it only demands that a plaintiff allege both: (1) that the defendant knew CMI was removed, and (2) that the defendant knew the removal would "induce, enable, facilitate, or conceal" an infringement. The Complaint does both.

First, Plaintiffs clearly allege ElevenLabs knew it was removing CMI (Compl. ¶166-167). The professional audiobooks have standardized metadata and DRM protections that prevent copying or modification of the file or its contents (*id.* at ¶¶157-158, 160), precluding innocent or

---

[18] Compare *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) (requiring nexus to copyright infringement) with *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir. 2010) (rejecting requirement of connection to copyright infringement).

accidental removal. And to train its AI system, ElevenLabs necessarily had to create unauthorized copies by circumventing these protections and removing CMI (*id.* ¶¶158-160, 168-170).

Second, Plaintiffs allege ElevenLabs knew this removal would facilitate infringement (*id.* ¶ 171). The CMI removal was not incidental; it was essential to ElevenLabs' business model (*id.* ¶¶ 32-40, 41-45, 72-86, 153-179). By removing CMI and technological protections and creating unrestricted copies of Plaintiffs' works, ElevenLabs enabled its own direct infringement through unauthorized copying and use in AI training to clone Plaintiffs' voices. *Id.*

### c.    There is no distribution requirement under Section 1202(b)(1).

Citing *Tremblay v. OpenAI*, ElevenLabs argues Plaintiffs must allege that Defendant enabled *third-party* infringement or that it distributed Plaintiffs' works to the public. MTD at 13 (citing *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024)). This is incorrect. Third-party infringement is unnecessary when "the asserted DMCA violations are based on acts allegedly taken by [Defendant] to facilitate and conceal *its own* infringements."[19] Defendants cite no case holding that public distribution is an element of a § 1202(b)(1) claim. In fact, the distribution of works without their CMI is a separate violation governed by § 1202(b)(3). The *Tremblay* court focused on Plaintiffs' failure to allege distribution because the plaintiff's theory of infringement was that "*every output* of the OpenAI Language Models is an infringing derivative work." *Id.* at 778; *id.* at 779–80. Thus, distribution *was the sole alleged nexus to any copyright infringement*

---

[19] *Real World Media LLC v. Daily Caller, Inc.*, No. CV 23-1654 (JDB), 2024 WL 3835351, at *9 (D.D.C. Aug. 14, 2024) ("[Defendant] also argued that the complaint lacked allegations that [Defendant's] alleged removal or alteration of CMI would facilitate infringement 'by any third parties.' That is beside the point. RWM's complaint makes crystal clear that the asserted DMCA violations are based on acts allegedly taken by [Defendant] to facilitate and conceal its <u>own</u> infringements.") (emphasis in original). !

*Tremblay presented*. The court imposed no general requirement that CMI removal must enable *downstream distribution* to violate § 1202(b)(1), as no such requirement exists.

            **d.**     **Plaintiffs' allegations meet the "identicality" requirement, should it apply.**

      Citing *GitHub, Inc.*, ElevenLabs argues that plaintiffs' 1202(b)(1) claim fails because they do not allege "that any *output* from ElevenLabs' platform is identical to their (unidentified) works." MTD at 12 (citing *Github*, 2024 WL 235217, at *8–9). This argument fails for two reasons. *First*, the identicality requirement—which requires that the infringing work be otherwise identical to the original work—is of dubious legal validity. *New Parent World, LLC v. True To Life Prods., Inc.*, No. CV-23-08089-PCT-DGC, 2024 WL 4277865, at *3 (D. Ariz. Sept. 24, 2024) (quoting 4 Nimmer on Copyright § 12A.10 at 19) ("'[T]here is no warrant to conclude ... that no DMCA violation exists where the works are not identical. If plaintiff owns the copyright to a 300-page book and defendant propounds a work in which a single sentence is missing … the two are not identical — but are still beyond doubt substantially similar. The authority supposedly requiring identity fails to withstand scrutiny.'"). It is not consistently followed even within districts that have adopted it,[20] and has not been applied by any court within the Third Circuit.

      *Second*, the identicality requirement applies to the *allegedly infringing* work—not necessarily AI outputs.[21] In *GitHub* and *Andersen*, the identicality of AI outputs was relevant because the plaintiffs' sole theory of infringement was that the accused *AI model's outputs* might reproduce their original works. *See Github*, 2024 WL 235217, at *8–9; *Andersen v. Stability AI*

---

[20] *See Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-CV-06012-SI, 2024 WL 3522196, at *9 (N.D. Cal. July 23, 2024) (declining to dismiss claims given "split in authority"); *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 427 (S.D. Tex. 2023) (rejecting requirement as unsupported by DMCA's text, purpose, legislative history, and deeming cases adopting it poorly reasoned); *New Parent World, LLC*, 2024 WL 4277865, at *2.

[21] *Real World Media LLC*, 2024 WL 3835351, at *10.

*Ltd.*, No. 23-CV-00201-WHO, 2024 WL 3823234, at *8 (N.D. Cal. Aug. 12, 2024). Plaintiffs rely on no such theory: the infringement occurred when ElevenLabs *directly created unauthorized copies of the original works*. Even if identicality is relevant, Plaintiffs satisfy the requirement because ElevenLabs created copies *of the original works* stripped of their TPM and CMI. (¶¶157-158, 166-168, 169-170, 98).[22] The nexus to infringement stems from creating unauthorized copies of the original works themselves for AI training. Identicality of ElevenLabs' AI model outputs is irrelevant to Plaintiffs' Section 1202(b)(1) claim.

## C. Plaintiffs Have Properly Asserted Valid Claims for Misappropriation of Their Likeness and Identity.

### 1. Personality Rights Apply to Voices.

ElevenLabs contends that neither Texas nor New York law recognizes misappropriation of Plaintiffs' voices. This contention is meritless.

#### a. New York Civil Rights Law § 51 encompasses digital voices.

N.Y. Civil Rights Law § 51 states, in pertinent part:

> *Any person* whose name, portrait, picture, likeness **or voice** is used within this state **for advertising purposes or** for the **purposes of trade** without the written consent … may maintain an equitable action … against the person … using [it] to … restrain the use thereof; and may also sue and recover damages for … injuries sustained…

To the extent ElevenLabs contends § 51 should not be applied to misappropriation of voices, this argument is futile. The statutory language was explicitly amended in 1995 to provide a claim for anyone "whose name, portrait, picture, likeness ***or voice*** is used" in the manner proscribed by § 51.

---

[22] *Id.* at *10 ("Some courts have held that no DMCA violation exists where an allegedly infringing work is not an 'identical copy' of the original but rather is a derivative work or recreates aspects of the original work's protected expression…. The Court need not engage in this debate, which is ultimately a bit of a red herring here. The question in this case is not whether a derivative work or an independent recreation can support a DMCA claim, but rather whether an <u>exact copy</u> of <u>portions</u> of an original work can. The Court answers that narrower, distinct question in the affirmative.") (emphasis original).

New York Civil Rights Law § 51 (emphasis added); N.Y. Stat. Law § 231; *see also Friss v. City of Hudson Police Dep't*, 592 N.Y.S.2d 855 (N.Y. App. Div. 1993).

ElevenLabs argues § 51 does not apply to "'AI-generated' audio that purportedly mimics someone else's voice." The bill introducing the 1995 Amendment adding "voice" to § 51 singles out the *Midler v. Ford Motor Co.* case, where "the defendants hired Midler's backup singer with instructions to sound like [her]," as its main inspiration—concluding that "California, as evidenced by its decision in *Midler*, already provides relief... New York needs to keep pace."[23] And Courts have broadly applied § 51 to likenesses across different media, without regard to the tools used to create the likeness.[24] Courts have long held that § 51 applies where the likeness merely portrays, imitates, or "mimics" the plaintiff—rather than records them. *See Onassis v. Christian Dior-New York, Inc.*, 472 N.Y.S.2d 254 (Sup. Ct. 1984), *aff'd*, 488 N.Y.S.2d 943 (1985); *Allen v. Men's World Outlet, Inc.*, 679 F. Supp. 360, 367 (S.D.N.Y. 1988).

While ElevenLabs claims that use of AI is not contemplated by § 51, what matters is not the medium or the tools used to create the representation—be it a pencil, camera, or Adobe photoshop software—but rather whether the plaintiff is recognizable from it. *Cohen v. Herbal Concepts, Inc.*, 472 N.E.2d 307, 309 (N.Y. 1984). For § 51 to apply, the plaintiff must "be capable of identification from the objectionable material itself." *Id.* And "whether [material] presents a recognizable likeness is generally a jury question." *Id.* Here, the Complaint alleges numerous

---

[23] Mem. of Sen. Goodman and Assemblyman Sanders, 1995 N.Y. State Leg. Ann. 517, 1995 ch. 674, Bill Jacket, (available at https://digitalcollections.archives.nysed.gov/index.php/Detail/objects/40901) (referencing *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988).

[24] Courts have found that § 51 encompasses mannequins, *Young v. Greneker Studios*, 26 N.Y.S.2d 357 (N.Y. Sup. Ct. 1941), drawings, *Ali v. Playgirl, Inc.*, 447 F. Supp. 723 (S.D.N.Y. 1978), and digital video game avatars, *Lohan v. Take-Two Interactive Software, Inc.*, 97 N.E.3d 389 (N.Y. 2018).

people recognized recordings generated in the "Adam" voice as Boyett's, thereby satisfying the "use of likeness" requirement under § 51. Compl. at ¶¶ 64, 122.

ElevenLabs highlights that, in 2021, the New York legislature enacted § 50-f, prohibiting the creation of "digital replicas" of *deceased* persons, contending that this enactment excluded the same protections for *living* persons. MTD at 19. It does not. The New York legislature did not add the same protections for *living* persons because they are *already protected* from misappropriation under §§ 50 and 51. As one court explained, "New York's Civil Rights Law § 51 has long forbidden such unauthorized uses with respect to living persons…; § 50-f simply extended those protections post-mortem." *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242 (VEC), 2021 WL 4499031, at *4 (S.D.N.Y. Oct. 1, 2021). In other words, the enactment of § 50-f extends protections that *already existed* for the living to the deceased *as well*.

> **b.    Texas's common law misappropriation tort applies to voices.**

ElevenLabs similarly contends that Texas's common law misappropriation tort applies solely to the misappropriation of a "name or likeness." MTD at 19. That is wrong: Texas law recognizes that "[a] voice is as distinctive and personal as a face." *Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000) (recognizing misappropriation of singer's vocal style as a "protected right"). Numerous courts have recognized that Texas's common law claim for misappropriation of likeness applies to one's voice.[25]

---

[25] *Brown,* 201 F.3d at 658*; Matthews v. Wozencraft*, 15 F.3d 432, 438 (5th Cir. 1994) ("[T]he term 'likeness' includes such things as…the use of a singer's distinctive voice."); *Sydney Nicole LLC v. Sheil, No.* 1:24-CV-00423-RP, 2024 WL 4923847, at *4–5 (W.D. Tex. Nov. 15, 2024) (denying motion to dismiss misappropriation claim where the defendant allegedly imitated the plaintiff's "outfits, poses, hairstyles, makeup, and voice"); *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587 (N.D. Tex. 1999) ("A person's right of publicity may be violated when a defendant employs an aspect of that person's persona in a manner that symbolizes or identifies the person, 'such as the use of a name, nickname, voice, picture, performing style, distinctive characteristics or other indicia closely associated with a person.'").

ElevenLabs also insists that courts do not recognize voice claims unless the plaintiff is a famous singer. MTD at 20 (citing *Matthews*). But *Matthews* relied on *Waits v. Frito-Lay, Inc.*, in which the Ninth Circuit affirmed liability for hiring someone to imitate Tom Waits's voice in a commercial. *Matthews*, 15 F.3d at 438 (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1097–98 (9th Cir. 1992)). In affirming the jury verdict in the plaintiff's favor, the Ninth Circuit explained that "*a person is as identifiable by voice as by any other indicia of identity previously recognized as protectable*." *Waits*, 978 F.2d at 1102. Similarly, in *Midler*, relied on heavily by the court in *Waits*, the court explained "when a distinctive voice of a professional singer is widely known and is deliberately imitated in order to sell a product, the sellers have appropriated what is not theirs and have committed a tort.… A voice is as distinctive and personal as a face. The human voice is one of the most palpable ways identity is manifested.…To impersonate [a famous singer's] voice is to pirate her identity." 849 F.2d at 463.

While these cases involved singers, they do not purport to exclude protection for spoken voice and there is no reason why Texas law would protect the voice of a professional *singer*, but not an actor specialized in audiobook narration: in both cases, their voice embodies their professional *persona*, which is of demonstrable commercial value. *Brown v. Ames*, 201 F.3d at 659 ("[T]he tort for misappropriation of … likeness protects 'the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others.' In other words, *the tort … protects a person's persona*."). The rationale for these decisions is that the likeness has been taken for its commercial value. *Id*.; Cf. *Waits*, 978 F.2d at 1098; *Midler*, 849 F.2d at 463. Under Texas law, misappropriation arises when a defendant exploits for commercial gain "the reputation, prestige, social or commercial standing, public interest *or other values of the plaintiff's name or likeness*."

*Matthews*, 15 F.3d at 437 (quoting Restatement (Second) of Torts § 652c, comment c (1977)) (emphasis added). The misappropriation tort "protects the value associated" with the plaintiff's likeness. *Id.* Other courts have found that speaking voices can be misappropriated. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1025–26 (3d Cir. 2008) (holding unauthorized use of sportscaster's speaking voice in video game constituted misappropriation).[26]

ElevenLabs *does not contest* allegations in the Complaint that Ms. Vacker is an award-winning voice actor who is well known and sought after in the audiobook industry, or that her livelihood is based off of her voice. ElevenLabs cloned Ms. Vacker's voice without her consent in order to exploit the value associated with her voice commercially, value which Ms. Vacker has spent the better part of her life honing. Compl.¶¶ 131–135. Ms. Vacker has plausibly pled that ElevenLabs misappropriated her voice in violation of Texas common law.[27]

### 2.    ElevenLabs' use is not protected by the First Amendment.

ElevenLabs contends that the misappropriation claims are barred by New York and Texas's "robust limitations" excluding uses that are expressive works (MTD at 21), and that "[c]omputer code and programs are protected speech" (MTD at 22). First, as a threshold matter, the Court should not consider ElevenLabs assertion that its code and AI programs are "expressive speech" because the factual detail required to support this kind of argument is not alleged in the Complaint

---

[26] *See also Wells v. Talk Radio Network-FM, Inc.*, No. 07 C 4314, 2008 WL 4888992, at *1–3 (N.D. Ill. Aug. 7, 2008) (denying motion to dismiss the plaintiff "radio voice personality's" claim under the Illinois Right of Publicity Act on statute of limitations grounds where the defendant allegedly misappropriated the plaintiff's voice recordings).

[27] ElevenLabs claims Plaintiffs have not alleged that Vacker's voice is recognizable by more than a *de minimis* number of people. MTD at 20 n.17. Plaintiffs allege both that Vacker is a popular voice actor and that fans, friends, family, and colleagues identified the "Bella" voice as hers. Compl. ¶ 53. Because no authority defines "de minimis" and the issue is how recognizable her voice is from the material, not its absolute audience size, whether enough people recognize it is a fact question unsuited to resolution at this stage. *See, e.g.*, *Henley*, 46 F. Supp. 2d at 595.

and First Amendment inquiries require a full record. *In re Orthopedic Bone Screw Products Liab. Litig.,* 193 F.3d 781, 794 (3d Cir. 1999) (upholding denial of 12(b)(6) motion to dismiss on First Amendment grounds for lack of a fully developed record).

Second, it is not ElevenLabs' computer code or AI models (neural networks) that misappropriate the voices of Ms. Vacker and Mr. Boyett, but rather, *the individual recordings* that ElevenLabs generates and distributes to users narrating text in Ms. Vacker's and Mr. Boyett's distinctive voices and professional personas.

ElevenLabs' use of Ms. Vacker's and Mr. Boyett's voices is not protected by the First Amendment. As the *Midler* court explained, in determining whether the use of the person's identity is protected by the First Amendment, "[t]he purpose of the media's use of a person's identity is central. If the purpose is 'informative or cultural' the use is immune; 'if it serves no such function but merely exploits the individual portrayed, immunity will not be granted.'" 849 F.2d at 462. In this case, the use of Ms. Vacker's and Mr. Boyett's voices was not for any informative or cultural purpose. As alleged in the Complaint, both Vacker and Boyett are accomplished, well-known voice actors (Compl. ¶¶ 10–22) and ElevenLabs is a text-to-speech service advertising the ability to create "high quality, ***voice-actor grade speech***" (Compl. ¶ 33). Simply put, ElevenLabs used Plaintiffs' voices, exploiting Plaintiffs' skills and renown, to make money. Indeed, the actual message and substance of any speech generated through ElevenLabs' service is determined entirely by the end user, not ElevenLabs.

ElevenLabs' recordings are wholly commercial efforts to promote and sell services—ElevenLabs' subscription and usage-based text-to-speech services. Courts have held that, where a defendant uses a plaintiff's likeness or identity in "free previews" to promote its monthly subscription services, that use serves a commercial purpose. *See, e.g.*, *Lukis v. Whitepages Inc.*,

454 F. Supp. 3d 746, 760 (N.D. Ill. 2020). ElevenLabs has offered free recordings in Plaintiffs' voices to promote and entice users to pay for a subscription to access ElevenLabs' text-to-speech capabilities. The First Amendment does not shield ElevenLabs from liability for this clearly commercial exploitation of Plaintiffs' voices and likenesses.

### 3. Claims are not barred by Copyright law.

In a footnote, ElevenLabs alleges the state law claims are barred by copyright preemption. One cannot copyright a voice. *See Facenda*, 542 F.3d at 1027–28 ("We hold that [sportscaster,] Facenda's voice is outside the subject matter of copyright."); *Midler*, 849 F.2d at 462 ("A voice is not copyrightable. The sounds are not 'fixed.' What is put forward as protectible here is more personal than any work of authorship."). Accordingly, Plaintiffs' claims are not subject to copyright preemption.

### 4. Boyett's Claim is Not Time-Barred.

Boyett's claim is not time-barred. "New York law provides for a one-year statute of limitations for right of publicity claims." *Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 1063464, at *5 (S.D.N.Y. Mar. 21, 2017). "New York law applies the 'single publication rule' to right of publicity claims, under which a cause of action 'accrues on the date *the offending material* is first published.'" *Id.* However, "republication triggers a new one-year limitations period" (*id.*) "Republication 'occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'" *Comolli v. Huntington Learning Centers, Inc.*, 117 F. Supp. 3d 343, 349 (S.D.N.Y. 2015). "[T]he republication exception [is typically applied] 'where the subsequent publication is intended to and actually reaches a new audience.'" *Id.*

The first publication rule is inapposite here. The "offending material" is *not* ElevenLabs' computer code or its AI model (a neural network), which are unpublished; rather, it is the

*recordings* ElevenLabs creates and distributes in Boyett's voice to its users. Each recording is a *new work that did not previously exist narrating different content*—not a republication of any earlier recording—distributed to a single new or repeat user, for a fee. Each separate unauthorized recording in Boyett's voice is a fresh misappropriation, not a "republication" of a prior work.

**D.    ElevenLabs' Anti-SLAPP Fee Request Is Without Merit or Support.**

ElevenLabs offers no authority showing this case involves public participation or free speech rights, without which it cannot recover attorney's fees. *See VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78, 92 (2024). Indeed, its anti-SLAPP defense fails not only because its service is purely commercial, but message-agnostic—users, not ElevenLabs, provide the content.

### III.    CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss. In the event the Court finds any deficiency in the Complaint, Plaintiffs respectfully request leave to amend. Leave to amend should be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2).

Dated:  January 16, 2025

Respectfully submitted,

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael C. Wilson *(admitted pro hac vice)*
Charles Theodore Zerner *(admitted pro hac vice)*
Abigail R. Karol *(admitted pro hac vice)*
MUNCK WILSON MANDALA, LLP
1900 Texas Capital Center
2000 McKinney Avenue
Dallas, TX 75201
(972) 628-3600

*Attorneys for Plaintiffs Karissa Vacker, Mark*
*Boyett, Brian Larson, Iron Tower Press, Inc.,*
*and Vaughn Heppner*