# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **KARISSA VACKER, MARK BOYETT, BRIAN LARSON, IRON TOWER PRESS, INC., and VAUGHN HEPPNER,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **C.A. 24-cv-987 (RGA)** |
| **ELEVEN LABS, INC.,** | ) ) ) | **CONFIDENTIAL – FILED UNDER SEAL** |
| **Defendant.** | ) ) | |

---

## PLAINTIFFS' OPPOSITION TO DEFENDANT ELEVEN LABS, INC.'S MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

---

Dated: January 23, 2025

Michael C. Wilson *(admitted pro hac vice)*
Charles Theodore Zerner *(admitted pro hac vice)*
Abigail R. Karol *(admitted pro hac vice)*
**MUNCK WILSON MANDALA, LLP**
1900 Texas Capital Center
2000 McKinney Avenue
Dallas, Texas 75201
(972) 628-3600

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs Karissa Vacker, Mark Boyett, Brian Larson, Iron Tower Press, Inc., and Vaughn Heppner*

## TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT ................................................................................. 1

II.   FACTS & PROCEDURAL HISTORY ............................................................................ 2

III.  ARGUMENTS & AUTHORITIES ................................................................................... 4

   A.   Legal Standard ............................................................................................................. 4

   B.   ElevenLabs Fails To Meet Its Burden To Show Transfer Is Warranted............................ 6

     1.   The Private Interest Factors Do Not Strongly Favor Transfer ......................................... 6

       a.   Plaintiff's Choice of Forum ...................................................................................... 6

         i.   Plaintiffs' Choice of Forum Should Be Given Deference ....................................... 6

           (a)   Plaintiffs chose Delaware for legitimate and rational reasons......................... 7

           (b)   Plaintiffs are not required to sue ElevenLabs on its "home turf." .................. 8

         ii.   Plaintiff's Choice of Forum Weighs Strongly Against Transfer ........................... 9

       b.   Defendant's Forum Preference .................................................................................. 9

       c.   Where the Claims Arose ......................................................................................... 11

       d.   Convenience of the Parties....................................................................................... 11

       e.   Convenience of the Witnesses ................................................................................. 13

       f.   Location of Books and Records ............................................................................... 13

     2.   The Public Interest Factors Do Not Strongly Favor Transfer ........................................ 14

       a.   Enforceability of the Judgment................................................................................ 14

       b.   Practical Considerations........................................................................................... 14

       c.   Court Congestion ..................................................................................................... 14

       d.   Local Interest .......................................................................................................... 15

       e.   Public Policies of the Fora ...................................................................................... 18

       f.   Familiarity of Trial Judge with Applicable State Law............................................. 19

     3.   Summary of *Jumara* Factors........................................................................................ 20

IV.  CONCLUSION .............................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Abraxis Bioscience, LLC v. HBT Labs, Inc.*,
   No. CV 18-2019-RGA, 2019 WL 2270440 (D. Del. May 28, 2019)
     (J. Andrews) .............................................................................................5, 8, 9, 10

*Academisch Ziekenhuis Leiden v. Cardiomems, Inc.*,
   No. 10-1127, 2011 WL 864911 (D. Del. Mar. 9, 2011) ......................................7, 8

*ADE Corp. v. KLA-Tencor Corp.*,
   138 F. Supp. 2d 565 (D. Del. 2001) .........................................................................5

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*,
   No. 06–187, 2006 WL 3783477 (D. Del. Dec. 21, 2006) .........................................7

*Autodesk Can. v. Assimilate, Inc.*,
   No. 08-587-SLR-LPS, 2009 WL 3151026 (D. Del. Sept. 29, 2009)................................15, 18

*Blackbird Tech LLC v. Cloudflare, Inc.*,
   No. 17-283-MSG, 2017 WL 4543783 (D. Del. Oct. 11, 2017).............................13

*Cradle IP, LLC v. Texas Instruments, Inc.*,
   923 F. Supp. 2d 696 (D. Del. 2013).........................................................................7

*Deloitte Consulting LLP v. Sagitec Sols. LLC*,
   692 F. Supp. 3d 421 (D. Del. 2023)................................................................. *passim*

*Helicos Biosciences Corp. v. Illumina, Inc*.,
   858 F. Supp. 2d 367 (D. Del. 2012).........................................................................7

*Human Genome Scis. Inc. v. Genentech Inc.*,
   No. 11-082-LPS, 2011 WL 2911797 (D. Del. July 18, 2011)..........................15, 18

*Intellectual Ventures I LLC v. Altera Corp*.,
   842 F. Supp. 2d 744 (D. Del. 2012)......................................................................5, 7

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
   797 F. Supp. 2d 472 (D. Del. 2011)....................................................................12, 17

*Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor
   to the Imperial Court v. Heublein, Inc.*,
   936 F. Supp. 177 (D. Del. 1996)...............................................................................7

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir.1995)............................................................................... *passim*

*L'Athene, Inc. v. EarthSpring LLC*,
570 F. Supp. 2d 588 (D. Del. 2008)..................................................................................6, 10

*Memory Integrity, LLC v. Intel Corp.*,
No. 13-1804-GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015)................................................13

*In re ML-Lee Acquisition Fund II, L.P.*,
816 F. Supp. 973 (D. Del. 1993)..............................................................................................8

*Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*,
No. 23-1250-RGA, 2024 WL 3925117 (D. Del. Aug. 23, 2024) ...........................................14

*Pragmatus AV, LLC v. Yahoo! Inc.*,
No. 11-902-LPS-CJB, 2012 WL 4889438 (D. Del. Oct. 15, 2012)..................................17, 18

*Praxair, Inc. v. ATMI, Inc.*,
No. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004).......................................5, 9, 10

*Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*,
524 F. Supp. 2d 628 (W.D. Pa. 2006) ....................................................................................12

*Scanlan v. Am. Airlines Group, Inc.*,
366 F. Supp. 3d 673 (E.D. Pa. 2019) .....................................................................................11

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1970)..................................................................................................4, 6

*Smart Audio Techs., LLC v. Apple, Inc.*,
910 F. Supp. 2d 718 (D. Del. 2012).......................................................................................11

*Solomon v. C'nt'l Am. Life Ins. Co.*,
472 F.2d 1043 (3d Cir. 1973).................................................................................................12

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)....................................................................................................................4

*Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.*,
No. 01-309-JJF, 2002 WL 500920 (D. Del. Mar. 26, 2002) ....................................................7

*Tessera, Inc. v. Sony Elecs. Inc.*,
No. 10-838(RMB), 2012 WL 1107706 (D. Del. Mar. 30, 2012)............................................13

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*,
775 F. Supp. 759 (D. Del. 1991)...............................................................................................6

*Werner v. Hive Media Group, LLC*,
No. 20-1176-LPS, 2021 WL 3662902 (D. Del. Aug. 18, 2021)..............................................17

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    157 F.R.D. 215 (D. Del. 1993) .......................................................................5, 9

*Wimbush v. BP Expl. & Prod. Inc.*,
    No. 24-525, 2024 WL 3742341 (D. Del. Aug. 9, 2024)..........................................14

**Statutes**

28 U.S.C. § 1404(a) .........................................................................................4

Digital Millenium Copyright Act..................................................................3, 17, 18

New York Civil Rights Law Section 51 ........................................................19

**Other Authorities**

Rule 12(b)(6)...................................................................................................3

U.S. District Courts–Federal Court Management Statistics–Profiles–September
    30, 2024 Reporting Period, available at
    https://www.uscourts.gov/sites/default/files/2024-
    12/fcms_na_distprofile0930.2024.pdf ....................................................15

## I.    SUMMARY OF THE ARGUMENT

ElevenLabs' motion fails to show that litigating in Delaware—its own state of incorporation—would be uniquely burdensome. Yet ElevenLabs is a billion-dollar company operating worldwide, with offices in several countries. According to its own declaration, ElevenLabs' primary operations and virtually all relevant employees are in Europe—making air travel to any U.S. court on the East Coast largely equidistant and unavoidable. Despite claiming inconvenience, ElevenLabs identified *no* witness who would be unavailable for trial in Delaware, *no* physical evidence that could not be produced here, and no material difference in cost or convenience between litigating in Delaware versus New York. Indeed, according to ElevenLabs' own briefing and declaration:

1. Although it has a "legal" place of business in New York, only a handful of employees work there;

2. Most of its employees are in Europe, requiring international travel to either forum;

3. Its software was developed in Europe;

4. Its documents are stored in the cloud and "readily accessible" in New York—but nowhere does ElevenLabs claim its documents are any less available in Delaware;

5. It cannot identify *any* physical document or other evidence in the U.S., much less New York; and

6. ElevenLabs does not identify *any* witness—party or third-party—unavailable in Delaware, but available in New York.

Because ElevenLabs fails to identify *any* unusual cost or burden in litigating in Delaware, nor shows any meaningful convenience resulting from transfer to the Southern District of New York, it cannot establish the "**unique or unexpected**" burden required to justify transfer away from its state of incorporation, and none of the *Jumara* factors weigh **strongly** in favor of

disturbing Plaintiffs' chosen forum. Plaintiffs' forum choice should be respected. This Court should deny the motion and allow this case to proceed in the District of Delaware.

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiffs Karissa Vacker ("Vacker") and Mark Boyett ("Boyett") (the "Voice-Actor Plaintiffs") are professional voice actors specialized in audiobook narration, whose livelihoods depend on the distinctiveness of their voices and aural renditions. Vacker, a Texas resident, has narrated over 300 audiobooks for major publishers and has also worked in television, film, and video games. Boyett, a New York resident, has a substantial catalog of audiobook narrations and has also acted in film and television. Though both have achieved considerable professional success, they are working artists with limited resources.

Plaintiffs Brian Larson ("Larson"), Iron Tower Press, Inc. ("ITP"), and Vaughn Heppner ("Heppner") (the "Author-Publisher Plaintiffs") are authors and publishers who own copyrights in works narrated by Boyett. Larson, a California resident, is a bestselling science fiction author with over 70 published books; ITP is his California-based publishing company. Heppner, a Nevada resident, is a prolific author of military science fiction, space opera, and thrillers. Boyett has narrated over 40 audiobooks for Larson and 20 for Heppner.

Defendant ElevenLabs, Inc. ("ElevenLabs") is a Delaware corporation claiming its U.S. principal place of business in New York City that maintains extensive operations overseas.[1] ElevenLabs is an artificial intelligence ("AI") company specialized in offering generative AI-driven speech synthesis (text-to-speech) services.

---

[1] In the Haskell Declaration, filed in support of Defendant's Motion, Defendant clarifies that New York City is its "principal place of business in the U.S.," but notes that most of its operations are overseas. Haskell Decl. ¶¶ 6-8.

Plaintiffs allege that ElevenLabs used the professional audiobook recordings performed by the voice-actor Plaintiffs and owned by the Author-Publisher Plaintiffs to create two premade "default" voices named "Bella" and "Adam," that clone the voices and speaking styles of Vacker and Boyett, respectively. ElevenLabs launched its "speech synthesis" service in early 2023—using these voice clones to promote its services and attract users, offering free audio narrations using these voices on its landing page. Using ElevenLabs' service, subscribers could then generate audio recordings narrating text in these voices in exchange for subscription-based and usage-based fees.

Vacker and Boyett did not license, authorize, or consent to ElevenLabs cloning their voices or using their likenesses. Vacker and Boyett learned of the voice cloning through friends and fans who recognized their voices in recordings generated by ElevenLabs. Vacker asserts misappropriation of likeness and unjust enrichment under Texas law. Boyett asserts violations of New York's right of publicity statute, which prohibits the use of one's voice in trade without their consent.

The Author-Publisher Plaintiffs allege ElevenLabs circumvented DRM protections on copyrighted audiobooks, first to create unauthorized copies free of these DRM protections, and then to process and segment these recordings into the input-output (text-speech) pairs necessary to train its AI system. Plaintiffs allege ElevenLabs circumvented these technological protection measures and removed copyright management information from Plaintiffs' recorded works in violation of the Digital Millenium Copyright Act ("DMCA").

Because ElevenLabs is incorporated in Delaware, Plaintiffs brought this suit in the District of Delaware—a forum neutral to all parties where jurisdiction is indisputably proper. Defendant has moved to dismiss under Rule 12(b)(6), and simultaneously seeks a transfer of venue to the Southern District of New York. *See* Opening Brief In Support of Defendant Eleven Labs Inc.'s

Motion to Dismiss, Rec. D.I. 19 (December 6, 2024); Defendant Eleven Labs Inc.'s Opening Brief in Support of Its Motion To Transfer Venue, Rec. D.I. 28 (December 11, 2024). Plaintiffs respectfully oppose both motions.

### III.    ARGUMENTS AND AUTHORITIES

#### A.    Legal Standard

Under 28 U.S.C. § 1404(a), courts consider convenience and fairness on a case-by-case basis. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 883 (3d Cir.1995); *see also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). The plaintiff's choice of venue "should not be lightly disturbed." *Jumara,* 55 F.3d at 879. And thus, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970) (internal citations omitted). The burden rests squarely on the party seeking a transfer "to establish that a balancing of proper interests weighs in favor of the transfer." *Id.*; *see also Jumara,* 55 F.3d at 879. The burden is a heavy one: "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiffs' choice of forum should prevail." *Shutte,* 431 F.2d at 25 (internal citations omitted) (emphasis in original). A defendant seeking transfer bears the burden of showing that the relevant factors "strongly" favor disturbing plaintiff's forum choice, and a transfer will be denied if the factors are only evenly balanced or weigh only slightly in favor of the transfer. *Id.*

"While there is no definitive formula or list of the factors to consider, […] courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Jumara*, 55 F.3d at 879 (internal citations omitted). The private interests have included: (1) plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) the convenience of the parties as indicated by their relative physical and financial condition, (4) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (5) and the location of books and records

(similarly limited to the extent that the files could not be produced in the alternative forum). *Id*.

Relevant public interests have included: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id*.

In the District of Delaware, a defendant incorporated in Delaware must show "a ***unique or unexpected burden***" in litigating here before a transfer is warranted—particularly if that defendant operates nationwide or internationally—and should otherwise "not be successful in arguing that litigation in its state of incorporation is inconvenient." *Abraxis Bioscience, LLC v. HBT Labs, Inc.*, No. CV 18-2019-RGA, 2019 WL 2270440, at *3 (D. Del. May 28, 2019) (emphasis added) (J. Andrews) (citing *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001))[2]; *see also Wesley-Jessen Corp. v. Pilkington Visioncare, Inc*., 157 F.R.D. 215, 218 (D. Del. 1993) (holding that a Delaware corporation must show that litigating in Delaware poses a unique or unexpected burden). Unless the defendant "is truly regional in character," that is, operating near-exclusively within a region and with no business in Delaware—transfer is almost always inappropriate. *See Praxair, Inc. v. ATMI, Inc.,*  No. 03-1158-SLR, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004) (denying defendants' 1404(a) motion to transfer to the Southern District of New York for failure to show a unique or unexpected burden). When transfer is sought by a defendant with operations on a national or international scale, the defendant "must prove that litigating in

---

[2] Defendant does not cite to or mention the "unusual or unexpected burden" analysis that is prevalent in the District of Delaware, including this Court, when Delaware corporations claim that litigation in Delaware is inconvenient. *See Abraxis*, 2019 WL 2270440, at *3; *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp.2d 744, 754 (D. Del. 2012).

5

Delaware would pose a unique or unusual burden on [its] operations." *L'Athene, Inc. v. EarthSpring LLC,* 570 F. Supp. 2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted).

**B.    ElevenLabs Fails To Meet Its Burden To Show Transfer Is Warranted.**

ElevenLabs cannot meet its heavy burden. It is a Delaware corporation valued at over $1 billion, operating worldwide, with offices and employees overseas, yet claims inconvenience from defending suit in its state of incorporation.[3] Haskell Decl. ¶¶ 6-8. Its employees are nearly all in Europe. *Id.* It identifies no party or third-party witnesses who would be unavailable in Delaware nor any material evidence that could not be produced here. Thus, it cannot show any unique or unexpected burden. As explained further below, the *Jumara* factors weigh strongly against transfer and this Court should deny Defendant's motion.

**1.    The Private Interest Factors Do Not Strongly Favor Transfer**

**a.    Plaintiff's Choice of Forum**

**i.    Plaintiffs' Choice of Forum Should Be Given Deference**

A plaintiff's choice of forum is "a paramount consideration" that "should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). While this choice receives greatest deference when a plaintiff elects their *home* forum, Plaintiffs' choice of forum warrants "substantial weight" even if it is not his place of residence, when supported by plaintiff's "legitimate and rational" reasons. *Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759 (D. Del. 1991).

---

[3] *See* Affidavit of Charles Zerner ("Zerner Aff."), Exs. A–E (collecting articles discussing ElevenLabs' $1.1 billion valuation in January 2024, and rise to $3 billion dollar valuation in late 2024).

**(a) Plaintiffs chose Delaware for legitimate and rational reasons**

Plaintiffs' decision to file in Delaware rests on multiple rational and legitimate grounds. *First*, Delaware is ElevenLabs' state of incorporation: this is a traditional and legitimate venue because it ensures personal jurisdiction over Defendant. *Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F. Supp.2d 696, 699 (D. Del. 2013) ("[D]efendant's state of incorporation is a traditional and legitimate venue."). This alone qualifies Delaware as a legitimate choice that should not be disregarded in favor of the Defendant's home forum. *Id.; Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.,* No. 01-309-JJF, 2002 WL 500920, at *2, 7 (D. Del. Mar. 26, 2002) (holding defendant's incorporation in Delaware "a rational and legitimate reason" for filing suit there, and refusing to transfer to Defendant's California "home turf"); *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.,* Civ. A. No. 06–187, 2006 WL 3783477 (D. Del. Dec. 21, 2006) ("Nonetheless, the court should not disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum."); *see also Intellectual Ventures I*, 842 F. Supp.2d at 754; *Helicos Biosciences Corp. v. Illumina, Inc*., 858 F. Supp. 2d 367, 371 (D. Del. 2012) ("a defendant's state of incorporation had always been a predictable, legitimate venue for bringing suit" where defendant can always be sued).

*Second*, Delaware provides a neutral forum—for Plaintiffs, who reside, respectively, in Texas, New York, California, and Nevada and assert claims under multiple states' laws—and for ElevenLabs, who operates globally, but claims New York as its U.S. base. Courts in this District recognize that choosing a neutral forum ***to avoid litigating on a defendant's home turf is itself a legitimate basis for venue selection***. *Academisch Ziekenhuis Leiden v. Cardiomems, Inc.*, No. 10-1127, 2011 WL 864911, at *3 (D. Del. Mar. 9, 2011) (recognizing legitimacy of choosing neutral forum to avoid home-court advantage); *see also Stratos Lightwave, Inc.*, 2002 WL 500920 at **2, 7; *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the*

*Imperial Court v. Heublein, Inc.*, 936 F. Supp. 177, 191 (D. Del. 1996) (denying motion to transfer despite plaintiff not suing in its "home turf"). Plaintiffs' desire to avoid any "home-court" advantage and to litigate its claims in a neutral venue is rational, legitimate, and entitled to deference. *Academisch Ziekenhuis Leiden,* 2011 WL 864911, at *3 ("Plaintiff may have made a strategic decision to litigate outside of Defendant's home turf in an effort to avoid any attendant advantages that [Defendant] might gain.").

*Third*, this District has substantial experience adjudicating complex technology disputes with national implications.

Because Plaintiffs' choice of venue is supported by legitimate bases, the "burden remains at all times on defendants seeking transfer to show that balance of convenience and interests of justice lay *strongly* in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973 (D. Del. 1993). Defendant should not be permitted to commandeer Plaintiffs' choice of venue, absent a showing of significant hardship. ElevenLabs shows none.

### (b) Plaintiffs are not required to sue ElevenLabs on its "home turf."

ElevenLabs argues that Plaintiffs' choice deserves less deference because none reside in Delaware. But a lack of physical ties to Delaware, alone, does not undermine a Plaintiffs' choice of forum. *See Abraxis Bioscience*, 2019 WL 2270440, at *2 ("I will not discount Plaintiff's choice of forum based on a lack of physical ties to Delaware."). The relevant inquiry is *not* whether Plaintiffs chose their home forum, but whether they had legitimate reasons for choosing Delaware. They clearly did. Plaintiffs filed suit in Delaware because it is one of two states where Defendant has indisputably subjected itself to the jurisdiction of the courts, and it is a neutral forum for this litigation that contains federal claims, a New York claim, and Texas claims. Their decision to choose a neutral forum is entitled to deference and weighs against transfer. ElevenLabs cannot

8

overcome it merely by showing that another forum is marginally more convenient.

          **ii.**      **Plaintiff's Choice of Forum Weighs Strongly Against Transfer**

Because Plaintiffs' choice of forum is rational and legitimate, it "should not be lightly disturbed." *See Jumara,* 55 F.3d at 879. Plaintiffs' choice is entitled to deference, despite not being Plaintiffs' "home turf." Therefore, this factor weighs strongly against transfer.

      **b.**      **Defendant's Forum Preference**

ElevenLabs' forum preference warrants little weight because it identifies no "unique or unexpected burden" in defending suit in its state of incorporation. *Abraxis Bioscience*, 2019 WL 2270440, at *3. This is not the "very rare case" where a Delaware corporation can avoid litigating in Delaware. *See Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993).

ElevenLabs' own declaration undermines its convenience arguments. First, it admits most of its operations and potential witnesses are overseas—London, Warsaw, Germany, Serbia, Slovakia, and Spain—making international travel unavoidable, whether trial is in Delaware or New York. Haskell Decl. ¶¶ 6-8, 11. Second, while ElevenLabs claims a handful of employees in New York, it fails to identify a single witness—by name or even job title—who would actually testify at trial. *Id.* ¶ 6.[4]

Third, ElevenLabs' claim that travel from Europe to New York is materially more convenient than Delaware ignores the reality of East Coast travel options. The Court addressed

---

[4] ElevenLabs speculates that New York would be more convenient for its New York-based employees *if* they must testify, but never proves that any New York employee is a relevant witness likely to testify at trial. *See* Haskell Decl. ¶ 6 ("*If* any of these New York based employees, including myself, is a witness in this case, the SDNY is a more convenient forum than Delaware. *My understanding is that all other Eleven Labs employees with potentially relevant knowledge for this proceeded are located in Europe.*") (emphasis added).

this very argument in *Praxair*:

> Apparently, defendants' New York counsel is unfamiliar with the Philadelphia International Airport. Besides offering full international jet travel and operating as a hub for several large airlines, it is located a mere 23 miles from Wilmington. Unlike in Manhattan, travel time to the airport may be done in under a half hour from downtown Wilmington. The court also notes that the courthouse is located a few blocks from the Amtrak station. While not as glamorous as Manhattan, Wilmington also offers a variety of reasonably priced hotels within short walking distance of the court.

*Praxair*, 2004 WL 883395, at *3, n.1. The same is true here. A minor difference in travel time or cost—assuming it even exists—cannot override Plaintiffs' forum choice in light of the strong presumption that Delaware corporations should litigate in Delaware.

Even if litigation in New York is "easier" for Defendant, that does not weigh in favor of transferring suit away from Defendant's incorporation state. A "company should not be successful in arguing that litigation in its state of incorporation is inconvenient" absent "***unique*** or ***unexpected*** burden." *Abraxis,* 2019 WL 2270440, at *3 (emphasis added) (J. Andrews). ElevenLabs cannot plausibly claim it failed to contemplate potential litigation in Delaware, its state of its incorporation, and fails to show it lacks the resources to bear the *minor* inconvenience associated with defending the suit in Delaware rather than New York City.

ElevenLabs—a billion-dollar global AI company—offers only generic complaints that apply to any non-Delaware-headquartered corporation. Such generalized claims of inconvenience cannot overcome the presumption that a Delaware corporation anticipates litigation here. *See L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 592 (D. Del. 2008) (defendant operating nationally or internationally "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations") (internal quotations omitted). Given the relative convenience of this District compared to the Southern District of New York, this factor does not favor transfer. At most, this factor carries minimal weight.

### c.    Where the Claims Arose

ElevenLabs fails to show that this factor favors transfer to New York. *ElevenLabs* bears the burden of demonstrating that the operative facts underlying Plaintiffs' claims *occurred predominantly* in the target forum. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012). ElevenLabs fails to do so. Instead, it merely states that no "relevant conduct" took place in Delaware—which is beside the point. Indeed, Defendant claims its speech synthesis software was "*developed in Europe* and made available online." Haskell Decl. ¶ 8. ElevenLabs points to some alleged activity in New York, but identifies *no specific development, design, or business decisions that occurred there*. Although ElevenLabs asserts that it maintains a small U.S. office in New York with some sales and operations staff (Haskell Decl. ¶ 6), this type of generalized connection to a forum is insufficient. Because ElevenLabs failed to carry its burden, this factor does *not* favor transfer and is neutral.

### d.    Convenience of the Parties

Transfer is unwarranted because it would not materially improve convenience for *all* parties involved. Defendant fails to identify any unique operational burden. *See gen.*, Haskell Decl. Nor does it show litigation here would substantially disrupt operations. *Id.* ¶ 11 (stating that "travel to Delaware would create disruptions to ElevenLab's business").

Defendant's vague assertions[5] regarding the locations of its business operations and witnesses lack the specificity required to justify a transfer.[6] Defendant admits that the bulk of its

---

[5] *See* D.I. 28 at 7 ("(1) it is the location of its principal place of business *in the U.S.* (2) relevant witnesses are located in the SDNY, and relevant documents were created or are otherwise readily accessible there; and (3) for those *potential Eleven Labs witnesses located overseas*, it would be *easier and less costly* for these witnesses to travel to the SDNY than this District.").

[6] *See Scanlan v. Am. Airlines Group, Inc.*, 366 F. Supp. 3d 673, 678 (E.D. Pa. 2019) (noting that the defendant, with vast financial resources, was not inconvenienced by travel to Philadelphia from Fort Worth, Texas).

workforce is in Europe, necessitating international travel regardless. Only a small fraction of Defendant's employees are located in New York. And Defendant fails to identify *any* New York employee likely to be called to testify. Instead, it focuses on its international ties and lack of ties to Delaware. But that is not the test.

Defendant's arguments fail to recognize the impact of modern technologies like videoconferencing on deposition practice, which further reduce any purported burden. *C.R. Bard, Inc.*, 156 F. Supp. 3d at 545, 547 (D. Del. 2016) (holding that convenience factors do not favor transfer because "discovery is a local event and trial is a limited event"). To the extent that domestic or international travel to Delaware is required, it would likely be limited to trial.[7]

Defendant claims defending suit in Delaware would "significantly" disrupt its business. ElevenLabs' argument rings hollow where it is a billion-dollar global AI company—its resources and multinational footprint make routine litigation costs neither unique nor unexpected.[8] Its inconvenience arguments must be analyzed in light of its financial condition, making bare assertions of "disruption" implausible.[9] While ElevenLabs labels itself a "startup software company," that does not negate its considerable financial means. Defendant's bare assertion that a lawsuit in Delaware will significantly disrupt business versus New York is implausible and should be given no weight. *Intellectual Ventures I LLC*, 797 F. Supp. 2d at 481.

---

[7] Defendant further argues that its attorneys are based in New York. Convenience of counsel is not a relevant factor. *Solomon v. C'nt'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) (rejecting argument that case should be transferred to district where counsel was located).

[8] *See* Zerner Aff. at Exs. A–E.

[9] *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 481 (D. Del. 2011) (holding Defendants' contention, as a billion-dollar business, that litigating one case in Delaware would "significantly disrupt" their operations was implausible); *see also Affymetrix,* 28 F. Supp.2d at 202 ("Financially, ... [multi-million-dollar corporation defendant is] capable of shouldering this burden…. While their resources are not infinite, they are vast. Litigating in Delaware should not impose an undue financial burden on them.") (internal citations omitted).

e.    **Convenience of the Witnesses**

Defendant has not identified any party or non-party witnesses who would be unavailable for trial in Delaware. *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 628, 633 (W.D. Pa. 2006) (denying transfer because the defendant failed to explain how any witnesses would be unavailable for trial in the forum). As such, this factor is neutral.

f.    **Location of Books and Records**

ElevenLabs has not identified any physical documents or evidence that would be unavailable or burdensome to produce in Delaware. *See Jumara*, 55 F.3d at 879 (limiting this factor to whether "the files could not be produced in the alternative forum"). This should end the inquiry.

ElevenLabs admits its workforce is global, documents are stored electronically in the cloud, and its documents are "readily accessible" in New York. Haskell Decl. ¶¶ 7, 9. Where these electronic documents are located is immaterial because they can be transmitted anywhere. *See Tessera, Inc. v. Sony Elecs. Inc.*, No. 10-838(RMB), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012). Despite claiming this factor favors transfer, ElevenLabs fails to identify a single piece of *physical* evidence located in New York or unavailable in Delaware. Such vague assertions cannot support transfer. *See Memory Integrity, LLC v. Intel Corp.*, No. 13-1804-GMS, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015) (refusing to weigh this factor in favor of transfer absent identification of specific documentary evidence that would be difficult to produce in forum). Thus, unlike in *Blackbird Tech LLC v. Cloudflare, Inc.*, No. 17-283-MSG, 2017 WL 4543783 (D. Del. Oct. 11, 2017), where defendant identified specific physical documents in the transferee district, ElevenLabs merely states its documents are "readily accessible" in New York—a claim equally true of Delaware. Without evidence of physical documents uniquely located in New York, Defendant cannot meet its burden. This factor is neutral.

## 2.    The Public Interest Factors Do Not Strongly Favor Transfer

### a.    Enforceability of the Judgment

Both parties agree this factor is neutral.

### b.    Practical Considerations

Defendant argues that the cost of retaining local counsel is a practical consideration that warrants transfer. Defendant cites *Contour IP Holding, LLC v. GoPro, Inc.* for the proposition that the Court granted transfer, in part, because of the expense in retaining local counsel. No. 15-1108-LPS-CJB, 2017 WL 3189005 (D. Del. July 6, 2017). *Contour* is a clear outlier—a "very rare case" where the Court did not give affirmative weight to a plaintiff's proffered reasons for filing in this District. *Id.* at \*15. Moreover, even there, the cost of retaining local counsel "weigh[ed] only slightly in favor of transfer" because Defendant was "financially capable of easily bearing this expense." *Id.* at \*13. The same is true here.

### c.    Court Congestion

The District of Delaware and the Southern District of New York are two of the most active courts in the federal judicial system. Defendant cites to an outdated June 30, 2024, Federal Court Management Statistics report, arguing that the Southern District of New York is less congested than the District of Delaware. However, this Court has previously concluded that this factor did not favor transfer when a movant presented similarly disparate statistics between two proposed forums. *See Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*, No. 23-1250-RGA, 2024 WL 3925117, at \*6 (D. Del. Aug. 23, 2024) (holding this factor "neutral" when the District of Delaware had 682 weighted filings, and the Central District of California had 578); *Wimbush v. BP Expl. & Prod. Inc.*, No. 24-525, 2024 WL 3742341, at \*3 (D. Del. Aug. 9, 2024) ("Because both the District of Delaware and the Northern District of Florida have congested dockets, I find this factor to be neutral.").

Furthermore, Defendant ignores the fact that between September 30, 2023, and September 30, 2024, the District of Delaware had a shorter median time from filing to trial, which Chief Judge Connolly has held is a "better proxy of the congestion of the courts." *Wimbush*, 2024 WL 3742341, at *3. Between September 30, 2023, and September 30, 2024, the median time from filing to trial in the District of Delaware was 32.2 months, compared to 42.0 months in the Southern District of New York.[10] Accordingly, because both the District of Delaware and the Southern District of New York are similarly congested dockets and the District of Delaware has a shorter median time to trial, this factor weighs in favor of retaining the case in Delaware.

### d.    Local Interest

Delaware has a substantial interest in adjudicating disputes involving its corporate citizens, particularly those involving emerging technologies and novel legal issues. *See Autodesk Can. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009 WL 3151026, at *9 (D. Del. Sept. 29, 2009) ("Delaware clearly has a substantial interest in addressing lawsuits brought against Delaware corporations."); *Human Genome Scis. Inc. v. Genentech Inc.*, No. 11-082-LPS, 2011 WL 2911797, at *11 (D. Del. July 18, 2011). This interest extends beyond mere incorporation—Delaware has a legitimate regulatory interest in whether companies formed under its laws are engaging in misappropriation or technology-driven infringement, particularly given this Court's expertise in complex technology disputes with national implications.

ElevenLabs significantly overstates New York's local interest while understating Delaware's legitimate stake in this controversy. Relying on *Deloitte Consulting LLP v. Sagitec*

---

[10] *See* U.S. District Courts–Federal Court Management Statistics–Profiles–September 30, 2024 Reporting Period, available at https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distprofile0930.2024.pdf (last accessed January 23, 2025).

*Sols. LLC*, 692 F. Supp. 3d 421 (D. Del. 2023), ElevenLabs argues that New York has a greater local interest making transfer proper because ElevenLabs "operates from New York." D.I. 28 at 11 (describing *Deloitte* as "granting motion to transfer ... finding ... transfer district had a local interest in the case because defendant had its headquarters in that district"). ElevenLabs' characterization of *Deloitte* is incorrect—the court **denied** transfer, finding the local interest factor "neutral." *Deloitte*, 692 F. Supp. 3d at 437-38 ("The District of Minnesota has a local interest in this case because Sagitec has its headquarters in that district. On the other hand, the plaintiffs' status as Delaware corporate entities means that Delaware has at least some interest in adjudicating the dispute. Both forums have a local interest in the controversy, and neither forum's interest is substantially greater than the other. This factor is therefore neutral.").

If anything, *Deloitte* undercuts ElevenLabs' position and further illustrates why any "local interest" in New York does not substantially exceed Delaware's. Like in *Deloitte*, this lawsuit involves a technology-driven dispute affecting consumers nationwide. *See* Complaint, ¶ 6 ("Defendant does business throughout the United States, including in this District."). And there, like here, Delaware retains a strong interest in adjudicating controversies involving one of its corporate citizens and affecting its consumers. Indeed, ElevenLabs' own declaration reveals that its operations are predominantly global, not local to New York. Haskell Decl. ¶¶ 6-8 (noting (i) most employees and operations are in Europe; (ii) only a "handful" of sales and operations staff work in New York; (iii) its software was developed in Europe; and (iv) its primary business is conducted through a cloud-based platform with services offered worldwide).

Indeed, the digital nature of ElevenLabs' AI service makes this inherently a national—if not global—dispute. ElevenLabs operates a cloud-based platform accessible from any internet connection, and the alleged harms occurred across multiple states: voice actors in Texas and New

York, authors and publishers in California and Nevada. The mere presence of one plaintiff and some of Defendant's employees in New York is insufficient to create a strong local interest given ElevenLabs' global operational footprint and inherently non-local nature of the violations.[11]

As in *Deloitte*, neither forum's interest predominates here. While both forums have legitimate interests—Delaware's interest in regulating its corporations and New York's interest due to some operations there—neither's interest substantially outweighs the other because (i) the alleged harms occurred across multiple states; (ii) the service operates globally; (iii) most operations including R&D are conducted in Europe; and (iv) the technology impacts consumers nationwide. *Deloitte*, 692 F. Supp. 3d at 437-38; *see also Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011) (holding California's local interest did not outweigh that of Delaware in suit against Defendants incorporated in Delaware and headquartered in California—despite plaintiff also having offices in California, where infringing products were sold nationwide).

ElevenLabs thus fails to show that New York has a "significant" local interest that outweighs the national (and global) nature of this dispute. Because Plaintiffs assert claims under Texas law and the DMCA that implicate nationwide interests in copyright protection and rights of publicity, this factor weighs against transfer or is neutral at most.

---

[11] ElevenLabs' reliance on *Werner v. Hive Media Group, LLC*, No. 20-1176-LPS, 2021 WL 3662902 (D. Del. Aug. 18, 2021) is misplaced. While *Werner* found that "national accessibility" of defendant's website did not diminish local interest, that finding rested on the fact that the defendant was genuinely local to the transferee forum—maintaining its headquarters, principal place of business, and most employees there, such that allegations of wrongdoing implicated "the reputation of individuals who live and work" in that district. *Id.* at *5. Here, by contrast, ElevenLabs claims its operations are predominantly in Europe, with only a handful of employees in New York. It identifies no key employees located in New York central to the dispute, no relevant operational decisions made, or processes conducted there to give New York a strong local interest in this dispute.

To the extent ElevenLabs seeks to rely on the application of New York law[12] to establish local interest here, those considerations receive their own *Jumara* factors and are more properly addressed below under *Jumara* factors 5 (Public Policies of the Fora) and 6 (Familiarity with State Law), discussed below, and incorporated herein by reference.

e.    **Public Policies of the Fora**

This factor favors retaining the case in Delaware, because Delaware has an interest in adjudicating disputes brought against the corporations of this state. Delaware has a substantial interest in this litigation because Defendant is a Delaware corporation. *See, e.g.*, *Autodesk Can. v. Assimilate, Inc.*, 2009 WL 3151026, at *9 (D. Del. Sept. 29, 2009) ("Delaware clearly has a substantial interest in addressing lawsuits brought against Delaware corporations."); *Human Genome Scis. Inc. v. Genentech Inc.*, No. 11-cv-82-LPS, 2011 WL 2911797, at *11 (D. Del. July 18, 2011) (concluding Delaware has local interest in "adjudicating disputes involving companies incorporated in Delaware"). That policy generally weighs against transfer "even where only one party is a Delaware corporation." *Deloitte*, 692 F. Supp. 3d at 438(internal citations omitted).

Defendant did not address the public policy of Delaware, and instead only discussed New York's alleged public policy. D.I. 28 13-14. The Court should not double count any alleged New York interest that Defendant has raised for other factors (local interest, state law). Given that Defendant failed to address the clear public policy of Delaware and New York's interest has been

---

[12] Although one Plaintiff asserts a single claim under New York law, Plaintiffs also assert multiple claims under Texas law and federal law. Claims under the DMCA are federal issues, and the effects of the DMCA are national in scope. In cases involving federal issues of intellectual property, "the local interest factor is typically neutral." *See Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2012 WL 4889438, at *13 (D. Del. Oct. 15, 2012), *report and recommendation adopted*, 2013 WL 174499 (D. Del. Jan. 16, 2013) (denying Section 1404 motion to transfer, "our Court has noted that the nationwide interest in and impact of certain patent litigation often renders [the local interest factor] insignificant in such cases.").

considered under other factors, this factor weighs in favor of retaining the case in Delaware.

     **f.**    **Familiarity of Trial Judge with Applicable State Law**

The Author-Plaintiffs assert federal claims under the DMCA. *See Pragmatus AV, LLC v. Yahoo! Inc.*, 2012 WL 4889438, at *13 (D. Del. Oct. 15, 2012) (discussing that this factor is neutral as to federal claims); *Deloitte,* 692 F. Supp. 3d at 438 (same). If anything, this case presents novel questions of federal law under the DMCA, as applied to this emerging technology.

ElevenLabs argues that Plaintiff Boyett's New York law claim warrants transfer. It does not. Citing outdated caselaw, ElevenLabs suggests his claim seeks to dramatically expand Section 51 of the New York Civil Rights Law, because the misappropriation involves the imitation of Boyett's voice using "AI." Yet the statute was amended in 1995 to explicitly include misappropriation of "voice"—which was expressly intended to cover cases where someone's vocal likeness is represented through an *imitation* rather than a recording of their voice.[13] The tools used to create the imitation—whether a human impressionist or AI software—are legally irrelevant. The issue—whether Defendant misappropriated Plaintiff's recognizable voice and exploited it through use for "advertising or trade purposes"—do not depend on the tools used to create the representation of Plaintiff's likeness. Misappropriation exists regardless of whether the defendant used a pencil, a camera, computer Photoshop software to capture Plaintiff's likeness. Taking a professional narrator's cloned voice and marketing it as a narration service falls squarely within the statute's prohibition on use for purposes of "advertising or trade." No novel legal issues arise simply because a new kind of software was used to create the representation. Defendant *significantly* overstates any alleged interest in having New York courts adjudicate this dispute.[14]

---

[13] *See* D.I. 30, Plaintiffs' Opposition to ElevenLabs' Motion to Dismiss at 18-19; *id.* n.23 (citing legislative history).

[14] ElevenLabs cites no authority suggesting its speculative fee request under New York's anti-

Likewise, Defendant asserts in its 12(b)(6) motion that Vacker's claims present novel issues of state law. They do not. Regardless, New York courts are no more equipped to handle Texas state law claims than this Court.[15] This Court is well-equipped to apply both states' legal frameworks protecting individuals' rights of publicity. This factor is neutral.

### 3.    Summary of *Jumara* Factors

None of the *Jumara* factors weigh strongly in favor of transfer. At most, two or three factors slightly favor transfer, three factors are against transfer, and the remaining factors are neutral.

## IV.    CONCLUSION

Because Defendant cannot meet its burden to show that litigation in its state of incorporation poses a **unique or unexpected** burden, or that the *Jumara* factors, considered together, weigh **strongly** in favor of transfer, its 1404(a) Motion to Transfer Venue to the Southern District of New York should be denied.

---

SLAPP statute could justify transfer. Moreover, its fee request is frivolous: ElevenLabs' alleged misappropriation—by offering recordings narrating text in Plaintiffs' voices as a paid service—is purely commercial conduct where users, not ElevenLabs, supply the message to be narrated. This viewpoint-neutral commercial service involves no protected speech by ElevenLabs that could trigger anti-SLAPP protection. Moreover, any consideration of its fee request would be premature, as Defendant would first have to show this lawsuit lacks any substantial basis in fact *or* law. It has not done so.

[15] Each of these issues are briefed in detail in Defendant's 12(b)(6) Motion to Dismiss (D.I. 19) and Plaintiffs' Response (D.I. 30), respectively.

Dated:  January 23, 2025

Respectfully submitted,

FARNAN LLP

*/s/ Michael J. Farnan*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael C. Wilson *(admitted pro hac vice)*
Charles Theodore Zerner *(admitted pro hac vice)*
Abigail R. Karol *(admitted pro hac vice)*
MUNCK WILSON MANDALA, LLP
1900 Texas Capital Center
2000 McKinney Avenue
Dallas, TX 75201
(972) 628-3600

*Attorneys for Plaintiffs Karissa Vacker, Mark Boyett, Brian Larson, Iron Tower Press, Inc., and Vaughn Heppner*