IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KARISSA VACKER, MARK BOYETT, BRIAN LARSON, IRON TOWER PRESS, INC. and VAUGHN HEPPNER,

Plaintiffs,

v.

ELEVEN LABS INC.,

Defendant.

C.A. No. 24-987 (RGA)

**DEFENDANT ELEVEN LABS, INC.'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS AND FOR ATTORNEYS' FEES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant*

OF COUNSEL:

Dori Ann Hanswirth
Joseph A. Greenaway, Jr.
Theresa M. House
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000

February 19, 2025

TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The DMCA Claims Must Be Dismissed ..... 2

i. The Author Plaintiffs Do Not Allege Article III and Statutory Standing ..... 2

ii. The Complaint Fails to State Any DMCA Claim as a Matter of Law ..... 5

B. The Voice Actor Plaintiffs' Misappropriation Claims Must be Dismissed ..... 9

i. Plaintiffs Do Not Dispute They Lack Supplemental Jurisdiction ..... 9

ii. The Voice Actor Plaintiffs' New Misappropriation Theory Fails ..... 9

C. Eleven Labs' Anti-SLAPP Remedy Should Not Be Dismissed ..... 12

III. CONCLUSION ..... 12

TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADR Int'l Ltd. v. Inst. For Supply Mgmt. Inc.*,
667 F. Supp. 3d 411 (S.D. Tex. 2023) ....5

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) ....6

*Andersen v. Stability AI Ltd.*,
No. 23-CV-00201-WHO, 2024 WL 3823234 (N.D. Cal. Aug. 12, 2024) ....8

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*,
No. CV 10-9378 CBM (MANx), 2011 WL 7447148 (C.D. Cal. Oct. 3, 2011) ....4, 6, 8

*Authors' Guild v Google Inc.*,
804 F.3d 202 (2d Cir 2015) ....4

*Bendit v. Canva, Inc.*,
No. 23-CV-473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023) ....10

*Brown v. Ames*,
201 F.3d 654 (5th Cir. 2000) ....11

*Busch v. Basic Organics, Inc.*,
No. 3:06-CV-2261-L, 2007 WL 603385 (N.D. Tex. Feb. 27, 2007) ....10

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008) ....3

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) ....5

*Doe 1 v. GitHub, Inc.*,
No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 3, 2024) ....4

*Edmondson v. RCI Hosp. Holdings, Inc.*,
No. 16-CV-2242 (VEC), 2021 WL 4499031 (S.D.N.Y. Oct. 1, 2021) ....11

*Energy Intel. Grp., Inc. v. Jefferies, LLC*,
101 F. Supp. 3d 332 (S.D.N.Y. 2015) ....5

*FMHUB, LLC v. MuniPlatform, LLC*,
No. 19-15595 (FLW), 2021 WL 1422873 (D.N.J. Apr. 15, 2021) ....9

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)....................12

*InkMango, Inc. v. Warren*,
221 N.Y.S.3d 922 (N.Y. Sup. Ct. 2024)....................12

*Lohan v. Take-Two Interactive Software, Inc.*,
31 N.Y.3d 111 (2018)....................11

*Lyon v. Whisman*,
45 F.3d 758 (3d Cir. 1995)....................9

*Matthews v. Wozencraft*,
15 F.3d 432, 437 (5th Cir. 1994)....................10

*McGlynn v. Cube New York Inc.*,
No. 20 Civ. 4546 (NRB), 2021 WL 1338955 (S.D.N.Y. Apr. 9, 2021)....................7

*Messenger v. Gruner Jahr Printing & Pub.*,
208 F.3d 122 (2d Cir. 2000)....................11

*M2M Sols. LLC v. Telit Commc'ns PLC*,
C.A. No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015)....................6

*Midler v. Ford Motor Co.*,
849 F.2d 460 (9th Cir. 1988)....................11

*Murphy v. Millennium Radio Grp. LLC*,
650 F.3d 295 (3d Cir. 2011)....................8

*Ranke v. Sanofi-Synthelabo Inc.*,
436 F.3d 197 (3d Cir. 2006)....................12

*Ratermann v. Pierre Fabre USA, Inc.*,
651 F. Supp. 3d 657 (S.D.N.Y. 2023)....................10

*Raw Story Media, Inc. v. OpenAI, Inc.*,
No. 24 CIV. 01514, 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024)....................2, 3, 4, 5

*Real World Media LLC v. Daily Caller, Inc.*,
No. 23-1654 (JDB), 2024 WL 3835351 (D.D.C. Aug. 14, 2024)....................7

*Sang Geoul Lee v. Won Il Park*,
720 Fed. App'x 663 (3d Cir. 2017)....................2, 9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................2, 4

*Tesfay v. HanesBrands Inc.*,
No. 1:19-CV-3889-GHW, 2019 WL 6879179 (S.D.N.Y. Dec. 17, 2019) ....................10

*The Intercept Media, Inc. v. OpenAI, Inc.*,
24-CV-1515 (JSR) (S.D.N.Y. Nov. 21, 2024)....................3

*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*,
529 F. Supp. 3d 303 (D. Del. 2021)....................5

*Thomson Reuters Enter. Ctr. GMBH v. ROSS Intel. Inc.*,
C.A. No. 20- 613-SB, 2025 WL 458520 (D. Del. Feb. 11, 2025) ....................5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................2, 4

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ....................7, 8

*Trent P. Fisher Enters., LLC v. SAS Automation, LLC*,
No. 3:20-CV-216, 2023 WL 4967375 (S.D. Ohio Aug. 3, 2023) ....................2, 4

*United States v. G Wilkenfeld & Co.*,
46 F.2d 462 (E.D.N.Y.), *aff'd*, 46 F.2d 464 (2d Cir. 1930) ....................6

**Statutes and Rules**

17 U.S.C. § 1201....................2, 5, 6, 8

17 U.S.C. § 1201(a)(1)(A) ....................8

17 U.S.C. § 1201(a)(2)....................5, 6

17 U.S.C. § 1202....................2, 3, 4, 6, 7, 8

17 U.S.C. § 1202(b) ....................3, 7, 8

17 U.S.C. § 1202(b)(1) ....................6

17 U.S.C. § 1203(c) ....................6

28 U.S.C. § 1367....................9

47 U.S.C. § 230(c)(1)....................10

Fed. R. Civ. P. 12....................6

N.Y. Civ. R. L. § 50-f....................11, 12

N.Y. Civ. R. L. § 51 ....................10, 11, 12

D. Del. Local Rule 15.1 ....................................................................................................14

# I. INTRODUCTION

Plaintiffs, who point to no harm to their copyrighted works and no advertising use of their likenesses, are still in search of a legal theory to support their claims.[1] Because their Opposition (D.I. 30) (the "Opp.") makes clear that they cannot find one, the Complaint should be dismissed.

The Author Plaintiffs have not stated a claim under the DMCA. For starters, they did not allege injury sufficient to confer standing, and the Opp. fails to remedy this fatal flaw. They articulate *no* harm for their Trafficking Claim or Access Control Claim. For their CMI Removal Claim, they pin their hopes on possible statutory damages, but that is not the law. There is no standing without concrete injury. Their claims also fail on the merits: There is no "trafficking"; there are no well-pleaded allegations concerning CMI removal; and their claims of unauthorized copying are not a proper subject of this DMCA claim.

The Voice Actor Plaintiffs' misappropriation claims likewise should be dismissed. The Opp. does not even address their failure to allege, much less qualify for, supplemental jurisdiction, warranting dismissal on that ground alone. They also cannot state a claim. They concede their claims are *not* based on the Adam or Bella Voices themselves, but rather on user-created audio narrations. But they do not provide *a single example* of a narration that allegedly violates either New York or Texas law, and they cite no authority for the novel proposition that these laws encompass secondary liability. Further, in their attempt to state a claim, Plaintiffs disregard the guardrails applied to these torts: Plaintiffs seek to *expand* these laws, but both states strictly *limit* them; and Plaintiffs seek to *narrow* exceptions for expressive content, but both states instruct that these exceptions *must be read broadly*. Their claims, none of which should be before this Court, should be dismissed.

[1] Defined terms are the same as those in Eleven Labs' Motion to Dismiss (D.I. 19) (the "MTD").

## II. ARGUMENT

### A. The DMCA Claims Must Be Dismissed

#### i. *The Author Plaintiffs Do Not Allege Article III and Statutory Standing*

The Author Plaintiffs do not respond to Eleven Labs' argument that they failed to allege *any* injury from their Access Control and Trafficking claims under § 1201; indeed, their brief only concerns harms they allege are sufficient for a § 1202 claim. Opp. 5, 11.[2] For this reason alone, their two § 1201 claims should be dismissed outright. *Sang Geoul Lee v. Won Il Park*, 720 Fed. App'x 663, 666 (3d Cir. 2017) (failure to oppose argument results in waiver).

For the § 1202 CMI Removal Claim, Plaintiffs argue that, even without harm, "a completed act of [copyright] infringement" supports standing because the DMCA allows recovery of statutory damages and profits. Opp. 5-6. But the case on which they rely says the opposite: That the DCMA "allows for statutory damages in lieu of actual damages *does not change the first requirement* that [plaintiff] *be injured* before it can bring a claim." *Trent P. Fisher Enters., LLC v. SAS Automation, LLC*, No. 3:20-CV-216, 2023 WL 4967375, at *16 (S.D. Ohio Aug. 3, 2023) (emphasis added, cleaned up). This is so because "Article III standing requires a concrete injury *even in the context of a statutory violation*." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (emphasis added). Certain harms, like physical or monetary harms, readily qualify as a "concrete" injury. *TransUnion*, 594 U.S. at 425. Intangible harms may also suffice if they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*.

Applying the correct rule, articulated in *Spokeo* and *TransUnion*, the Court in *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24 CIV. 01514, 2024 WL 4711729, at *3 (S.D.N.Y. Nov. 7, 2024) squarely rejected the argument that interference with a copyright owner's rights under §1202(b),

[2] To the extent that the Opp. fails to distinguish between the DMCA claims, this does not meet Plaintiffs' burden to "demonstrate standing for *each* claim." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021) ("[S]tanding is not dispensed in gross) (emphasis added).

without more, is a "concrete" injury.[3] There, the plaintiffs similarly argued that facial violations of §1202(b) were a "concrete injury" because, like the tort of copyright infringement, the DMCA guarded against interference with property rights, including the right to control copyrighted works. *Id*. The court, however, held that the purpose of § 1202 "was *not* to guard against property-based injury" but rather to "ensure the integrity of the electronic marketplace by preventing fraud and misinformation." *Id.* (emphasis added). It rejected the notion that "the mere removal of identifying information from a copyrighted work—absent dissemination—had *any* historical or common-law analogue," and concluded that facially violating § 1202(b) is not a "concrete" injury. *Id.* at *4.

*Raw Story* also rejected the argument that being deprived of a license fee for using content as training materials sufficed for DMCA standing. It held that such an injury was based on "*use*" of content, which was *not* an injury traceable to "the exclusion of CMI from Defendants' training sets" *nor* "the type of harm that has been 'elevated' by Section 1202(b)(i) of the DMCA." *Id.* at *5; *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (injury must be "fairly traceable" to challenged conduct). Thus, *Raw Story*, a well-reasoned opinion applying Supreme Court precedent to highly similar factual allegations, dooms the Author Plaintiffs' claims.

The Author Plaintiffs' efforts to expand the scope of injury cognizable under § 1202 by citing to *Fisher* and *GitHub* fail to provide the lifeline they seek. *Fisher*, a S.D. Ohio decision with

[3] Plaintiffs' efforts to distinguish *Raw Story* are unavailing. There, like here, the DMCA claims were based on alleged use of works in an internal database "to train an AI-software program," and there, like here, plaintiffs failed to allege that any works had been disseminated in output. *Id*. at *4. Plaintiffs claim the *Raw Story* plaintiffs "did not allege [creation of] unauthorized copies," Opp. 8-9, but that is not so. 2024 WL 4711729 at *4 (plaintiffs sought injunction requiring removal of "all copies of Plaintiffs' copyrighted works" from "training sets and any other repositories"). Plaintiffs also argue that the detailed opinion in *Raw Story* is not persuasive because, in *The Intercept Media, Inc. v. OpenAI, Inc.*, 24-CV-1515 (JSR) (S.D.N.Y. Nov. 21, 2024), "the same court considered the *Raw Story* ... opinion, rejected OpenAI's identical arguments (including injury and standing), and denied its motion to dismiss." Opp. 9. Again, not so. The *Intercept* citation is a "bottom-line order" (for which an opinion has not yet issued) that *grants* dismissal for several defendants, has no analysis, and does not even mention "standing" or *Raw Story*.

no analysis of *Spokeo* or *TransUnion*, is distinguishable because the plaintiffs claimed the defendants modified CMI in an app that *was released to the public*; it thus provides no guidance on standing based on a purely internal use. 2023 WL 4967375, at *5, *16.[4] Plaintiffs also rely on *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 3, 2024), to argue they have standing based on "risk of future infringement." Opp. 4. This conflates standing for damages (which cannot be established based on future harm) with standing for injunctive relief (which can be, if imminent and not speculative[5]). *Id.* at *4-5. *GitHub* in fact supports the outcome in *Raw Story*, namely, that claimed violations of § 1202(b) that do not result in public distribution cannot, without more, support standing for retrospective relief. *Id.* at *4 (finding standing for one set of plaintiffs whose works were "*emitted* by Defendants' programs without their CMI," but no standing for others whose works had not been reproduced in any *output*, even though they were used for training) (emphasis added).[6] *Raw Story* should guide the Court here to find no standing.

---

[4] Also, unlike the Author Plaintiffs, who have not claimed copyright infringement, the *Fisher* plaintiffs did so allege. *Id.* But any copyright infringement claim here would fail. *See, e.g.*, *Authors' Guild v Google Inc.*, 804 F.3d 202, 226 (2d Cir 2015) (Google Books program, which copied books in full, is not infringing because it "does not allow access in any substantial way to a book's expressive content"); *Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, No. CV 10-9378 CBM (MANx), 2011 WL 7447148, at *6 (C.D. Cal. Oct. 3, 2011) ("Incidental exercises of other lawful rights constitute non-infringing 'fair use.'"). Plaintiffs' references to the First Amendment, (Opp. 12-13), are inapposite; Eleven Labs did not argue that the First Amendment bars DMCA claims, but rather that DMCA claims cannot stand where there is no "nexus" to actionable infringement, (MTD 14), which Plaintiffs do not dispute (Opp. 15).

[5] Plaintiffs do not respond to Eleven Labs' arguments that they fail to allege any plausible theory of standing for injunctive relief, which is another concession by waiver. MTD 8, n.7. Further, *GitHub*, on which they rely, demonstrates that they lack such standing. The court there found that plaintiffs had standing to seek injunctive relief based on plausible allegations that their works could be produced as *output*. 2024 WL 235217 at *3. Here, the Author Plaintiffs have not and cannot allege any plausible facts to support their speculation that Eleven Labs' *internal* dataset is likely to lead to *future* distribution of their works as output—indeed, as shown in the MTD, Plaintiffs have not even adequately alleged that *their works* were part of Eleven Labs' training set, freely admitting that they authored only a *fraction* of Boyett's performances. MTD 8, n.7, 11 & n.10.

[6] Furthermore, in an earlier opinion issued in that case, the court *expressly declined to consider* whether allegations that the plaintiffs were "injured by Defendants' use of Plaintiffs' licensed code as training data" were sufficient for standing, because "Plaintiffs' complaint does not describe such an injury." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 850 n.7 (N.D. Cal. 2023) (thus, "the Court does not address whether such an injury is sufficient to confer standing").

**ii. *The Complaint Fails to State Any DMCA Claim as a Matter of Law***

**The Author Plaintiffs Must Identify the Works.** The Author Plaintiffs have sued Eleven Labs for violations of the Copyright Act without identifying *a single* copyrighted work allegedly used by Defendant. That is fatal to their DMCA claims, and no case they cite supports a different conclusion. Opp. 10-11. Indeed, in each, the plaintiffs *did* identify the works at issue. *Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 529 F. Supp. 3d 303, 312-13 (D. Del. 2021) (attaching registration certificates)[7]; *Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015) (providing list of registered works); *ADR Int'l Ltd. v. Inst. For Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 422-23 (S.D. Tex. 2023) ("identif[ying] [its] copyrighted work by registration number"). In contrast, the Author Plaintiffs merely speculate that Eleven Labs *may* have used their works, relying on the fact that *some* of their audiobooks were narrated by Boyett, among the numerous other widely available recordings of his voluminous performances.[8] Thus, they not only fail to identify *any* relevant works, but also fail to allege *any* facts to support an inference that *any* of their works were actually used. MTD 10-11. Thus, their DMCA claims fail.

**No Trafficking Claim Under § 1201(a)(2)**. The Opp. fails to grasp that the Trafficking Claim requires public sale—which is fatal to a theory that alleges internal use. The Author Plaintiffs argue in a footnote that "manufactur[ing]" "a circumvention system" to facilitate "automated DRM-circumvention and CMI-stripping across thousands of works" violates 1202(a)(2). Opp. 13, n.17. Not so. Section 1201(a)(2) pertains to the "manufacture" of

---

[7] Last week, the court in *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.* granted plaintiff's motion for partial summary judgment. C.A. No. 20- 613-SB, 2025 WL 458520 (D. Del. Feb. 11, 2025). This has no relevance here because *Thomson Reuters* involves copyright infringement claims for non-generative AI, not the DMCA nor the right of publicity for a generative AI platform.

[8] "Boyett has narrated an extensive catalog of works spanning a range of literary genres," (D.I. 1 ¶ 18), with over 300 audiobook narrations available on Amazon's Audible service alone. *See* "Showing results by narrator "Mark Boyett" in All Categories," Audible.com, *available at* https://www.audible.com/search?searchNarrator=Mark+Boyett (accessed Feb. 14, 2025).

"technology" *for sale to the public in an open market*, not for internal use. *Ass'n for Info. Media & Equip.*, 2012 WL 7683452, at *9 (allegation that university provided circumvention software to its professors insufficient to support claim that defendants "manufactured, imported, or offered to the public any technology" because professors were "not members of the public"); *cf. United States v. G Wilkenfeld & Co.*, 46 F.2d 462, 464 (E.D.N.Y.), *aff'd*, 46 F.2d 464 (2d Cir. 1930) (manufacture is "process by which an article is made ready for sale on the open market"). Because the alleged "circumvention system" is a singular program allegedly used solely by Eleven Labs on an internal basis, their claim fails.[9]

**No CMI Removal Claim Under § 1202(b)(1)**. The Author Plaintiffs' CMI Removal Claim fails for multiple reasons. First, the Opp. does not clarify what CMI was allegedly removed from their works; it merely parrots the statutory definitions in § 1203(c). Opp. 14. That is insufficient to survive a Rule 12 motion. *See* MTD 12.[10] To get around this glaring error, Plaintiffs premise their CMI Removal Claim on the argument that Eleven Labs *had to* remove CMI from the Author Plaintiffs' works to train its AI model to create the Adam voice. Opp. 16 (citing D.I. 1 ¶¶ 158-60, ¶ 168-70). But the allegations in their Complaint do not support the Opp.'s sweeping assertion. For example, ¶¶ 158-60 describe alleged *circumvention* of "DRM [digital rights management] protections"—i.e., copy controls—not removal of any CMI. Likewise, ¶¶ 168-70 consist of a conclusory statement that removing CMI was "necessary" (¶ 168), followed by

[9] Indeed, Plaintiffs acknowledge that "*[i]t remains unclear* whether ElevenLabs' internal or extra-corporate sharing *qualifies as 'trafficking*,'" and cite no case law to suggest that it does. Opp. 13 n.17 (emphasis added). Their speculations regarding "extra-corporate sharing" and "hardware capacity," *id.*, should be disregarded because they are not alleged in their Complaint. *M2M Sols. LLC v. Telit Commc'ns PLC*, C.A. No. 14-1103-RGA, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015). Nor do they claim the "hardware capacity" is a "technology enabling circumvention."

[10] Plaintiffs attempt to distinguish *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 872 (N.D. Cal. 2023) by arguing that Eleven Labs was "directly" involved in removing CMI, but the same allegation was made for some defendants in *Andersen*. *Id.* at 871.

arguments that removal of "watermarks" would assist with training (¶¶ 169-70). Neither in these paragraphs, nor anywhere else in their Complaint, do the Author Plaintiffs articulate a single reason why it would be necessary to remove the only categories of CMI that they actually allege were conveyed with their works—i.e., "the work, the author, the narrator, the copyright owner, and other related information" (¶ 166). Accordingly, the Complaint lacks any facts to support their speculation that Eleven Labs removed CMI by design. *Tremblay v. OpenAI, Inc*., 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (dismissing § 1202(b)(1) claim where "there are no facts to support the assertion that '[b]y design, the training process does not preserve any CMI'").

The Author Plaintiffs also fail to meet § 1202(b)'s double-scienter requirement.[11] Plaintiffs' entire Complaint contains only a single allegation about scienter, (D.I. 1 ¶ 171), and that allegation does nothing but restate a legal conclusion. *See McGlynn v. Cube New York Inc.*, No. 20 Civ. 4546 (NRB), 2021 WL 1338955, at *2 (S.D.N.Y. Apr. 9, 2021). Relying on *Real World Media LLC v. Daily Caller, Inc.*, No. 23-1654 (JDB), 2024 WL 3835351, at *9, n.7 (D.D.C. Aug. 14, 2024), the Author Plaintiffs now argue that "by removing CMI," "Eleven Labs' enabled its own direct infringement." Opp. 16 & n.19. But *Real World Media* involved the *public display* of copied videos on YouTube and Facebook, which *both* facilitated future infringement by others *and* concealed defendants' infringement *from the public*. 2024 WL 3835351, at *1. Thus, this decision is not in tension with *Tremblay*, 716 F. Supp. 3d at 779, which flatly rejects the argument that "removal of CMI in an internal database will knowingly enable infringement."[12]

---

[11] Plaintiff must allege defendant knew CMI was removed and would "induce, enable, facilitate, or conceal" infringement. MTD 13; *Tremblay*, 716 F. Supp. 3d at 779 ("[A]lleged removal of CMI in an internal database" does not satisfy scienter requirement).

[12] Plaintiffs attempt to side-step the identicality requirement by claiming it is met with identical copies used as training *inputs*, where *outputs* are different. Opp. 18. This contradicts *Andersen v. Stability AI Ltd.*, No. 23-CV-00201-WHO, 2024 WL 3823234, at *7-*8 (N.D. Cal. Aug. 12, 2024), which dismissed claims based in part on training inputs, holding "[without] allegations that any output … was identical to a plaintiff's work, the DMCA section 1202(b) claim fails."

**No Access Control Claim Under § 1201(a)(1)(A)**. Plaintiffs continue to conflate "access controls" with "copy controls." Opp. 12. That difference is paramount. Under § 1201(a)(1)(A), "[n]o person shall circumvent a technological measure that effectively *controls access* to a work protected under this title." (emphasis added). A "technological measure 'effectively *controls access* to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to *gain access to* the work." *Id.* (same). By its clear terms, § 1201(a)(1)(A) concerns *only* access controls, *not* any subsequent actions after obtaining access. *Ass'n for Info. Media & Equip.*, 2012 WL 7683452, at *9 ("[A] person who engages in prohibited usage of a copyrighted work to which he has lawful access does not fall afoul of any provision of Section 1201"; dismissing claims based on alleged improper usage of decrypted DVDs (citation omitted)). Plaintiffs do not rebut the legislative history confirming this clear statutory language cited in the MTD. MTD 15-16.[13]

The Author Plaintiffs also fail to adequately allege what access protections were in place and what steps Eleven Labs took to circumvent them. They argue that "Eleven Labs *had no choice* but to circumvent these protections because AI training required creating unauthorized copies for preprocessing…,'" Opp. 12 (cleaned up), but they do not allege *how* Eleven Labs purportedly did so. *See FMHUB, LLC v. MuniPlatform, LLC*, No. 19-15595 (FLW), 2021 WL 1422873, at *6 (D.N.J. Apr. 15, 2021) (dismissing claim lacking allegations that defendant "actually took steps to 'circumvent' …, *i.e.*, that [it] breached, evaded, or somehow bypassed …

[13] Plaintiffs cite *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 300 (3d Cir. 2011) to argue the Third Circuit has rejected the access vs. copy control distinction, but that is not so. *Murphy* decided the definition of CMI for a claim brought under § 1202, and merely described an example of one court's interpretation of § 1201 as dictum regarding the general background of the DMCA.

protections to access the copyrighted works."). Nor is an inference reasonable, since Plaintiffs concede Eleven Labs did not need to circumvent any TPM to *access* recordings. D.I. 1 ¶ 116.[14]

### B. The Voice Actor Plaintiffs' Misappropriation Claims Must be Dismissed

#### i. *Plaintiffs Do Not Dispute They Lack Supplemental Jurisdiction*

Plaintiffs do not address their failure to plead supplemental jurisdiction under 28 U.S.C. § 1367, nor do they disagree that Vacker's claims are factually distinct from the DMCA claims, which concedes both arguments *Sang Geoul*, 720 F. App'x at 666. Indeed, the Opp. provides additional support that *both* state law claims are factually distinct from the DMCA claims: they now press their claims based solely on third-party user *outputs*, whereas the DMCA claims concern only training *inputs*. Opp. 23. Thus, neither of the Voice Actor Plaintiffs' claims "derive from a common nucleus of operative fact" as the DMCA claims, and the Court should decline to exercise jurisdiction. *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995).

#### ii. *The Voice Actor Plaintiffs' New Misappropriation Theory Fails*

In their Opp., the Voice Actor Plaintiffs abandon their claims to the extent based on Eleven Labs' creation of the highly expressive Adam and Bella voices. Now, they attempt to hold Eleven Labs liable based solely on *output* generated by third parties. Opp. 23. This argument fails.

First, despite admitting that the "purpose" of the use "is central," (Opp. 23), Plaintiffs do not identify *a single output* using their likeness for advertising. Without identifying an allegedly actionable use, they fail to plausibly allege that any use occurred "within the state of New York" and "for purposes of advertising," under New York law, or whether it was used for "some

[14] Despite alleging that "ElevenLabs obtained the recordings for its training corpus from sources including the open internet, 'torrent' file-sharing sites, and/or by creating unauthorized copies of audio recordings *distributed legally* through audiobook subscription services like Amazon's Audible service" (D.I. 1 ¶ 116) (emphasis added), Plaintiffs attempt to walk back their concession by arguing that they do "not allege Plaintiffs' works are available anywhere in unrestricted formats free of TPM," (Opp. 8, n.12). This argument does not change the fact that the Complaint fails to allege that Eleven Labs bypassed any TPM to improperly access any content. MTD 14-15.

advantage or benefit," and not in "an incidental manner" or for an expressive purpose, under Texas law.[15] *Bendit v. Canva, Inc.*, No. 23-CV-473 (RA), 2023 WL 5391413, at *8 (S.D.N.Y. Aug. 22, 2023) (Section 51 elements); *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994) (Texas).[16]

Further, their argument relies on an unrecognized theory of secondary liability—that Eleven Labs is somehow responsible whenever a third-party user independently generates output and uses it in advertising that violates a state's right-of-publicity law.[17] They cite no authority for this expansive proposition, which is contrary to law. *Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 671 (S.D.N.Y. 2023) (agreeing "the plain meaning of 'use' does not include use by someone other than the named defendant"; holding platforms are immune for user content under 47 U.S.C. § 230(c)(1)); *Bendit*, 2023 WL 5391413, at *8; *Tesfay v. HanesBrands Inc.*, No. 1:19-CV-3889-GHW, 2019 WL 6879179, at *7 (S.D.N.Y. Dec. 17, 2019); *Busch v. Basic Organics, Inc.*, No. 3:06-CV-2261-L, 2007 WL 603385, at *7 (N.D. Tex. Feb. 27, 2007).

Meanwhile, Plaintiffs do not dispute that the *only* content published by Eleven Labs—the Adam and Bella Voices—is expressive. Instead, they argue that the Court should not consider the argument because the Complaint lacks "factual detail." Opp. 22. The Complaint's admissions speak for themselves, MTD 21-23, and they obviously are appropriately considered on this motion.

Finally, neither state's tort covers digital voices, and the Opp.'s invitation to expand them is contrary to law. For Texas, Vacker does not dispute that all references to claims based on voice

---

[15] Boyett argues his claim is timely because each user recording is a new appropriation. Opp. 25. But he has not identified a single actionable recording published within the limitations period.

[16] Plaintiffs' argument, based on a decision applying Illinois law, that Eleven Labs is liable for "free previews" promoting services relating to Adam and Bella voices is inconsistent with New York and Texas law excluding claims based on promotions for protected works. MTD 22.

[17] Indeed, Eleven Labs specifically prohibits "illegal use of someone's voice." *See* "ElevenLabs Prohibited Use Policy," *available at* https://elevenlabs.io/use-policy.

alone are dicta; she merely repeats the dicta.[18] Boyett argues New York courts have "broadly applied § 51…." Opp. 19. This gets it backwards. *E.g., Messenger v. Gruner Jahr Printing & Pub.*, 208 F.3d 122, 125 (2d Cir. 2000) (statute is "narrowly construed."). His reading of Section 51's legislative history is inconsistent with *Messenger* and other caselaw. The Goodman & Sanders Memorandum (Opp. 19, n.23) stated a desire to keep pace with California's protection for voices in *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988). That court, however, held that Bette Midler had *no* remedy under California's right of publicity statute because the defendants—who hired Midler's backup singer to impersonate her voice—did not use "anything" of Midler's "whose use is prohibited by the statute." *Id*. Although it barred use of both "voice" and "likeness," Midler stated no statutory claim because "[t]he voice they used was … *not hers*" and "[t]he term 'likeness' refers to a visual image *not a vocal imitation*." *Id.* (emphasis added).[19] Midler's surviving claim was based on a *common-law* right of publicity, *id.*, which New York has long rejected, *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 119 (2018).

Boyett also argues that the Legislature's protection of digital replicas in Section 50-f, which is limited to successors of deceased celebrities, indicates that Section 51 prohibits digital replicas of living persons. But *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242 (VEC), 2021 WL 4499031, at *4 (S.D.N.Y. Oct. 1, 2021), the case they cite, said no such thing; it merely noted that Section 50-f provided a remedy for "uses of the name, voice, signature, photograph, or likeness"

---

[18] *Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000) did *not* "recogniz[e] misappropriation of singer's vocal style as a 'protected right,'" as Vacker claims; rather, it discussed Ninth Circuit law on copyright preemption. To state the contrary intentionally misreads *Brown*.

[19] Plaintiffs' citations applying Section 51 to mannequins, drawings, avatars, and visual depictions are examples of courts finding that the use in question was barred by the statute's prohibition of unauthorized uses of a "portrait," which is a broader term that encompasses visual representations beyond the statute's separate protection against use of a "picture." Opp. 19 (citing cases). By contrast, Section 51 prohibits use of a "voice" and contains no prohibition that encompasses the broader category that Plaintiffs ask the Court to adopt here, i.e., *audio representations* of a voice.

of *deceased individuals.* The decision does not reference "digital replicas" at all. Nor does it stand for the proposition that Section 50-f expands Section 51; to the contrary, it rejected an argument that Section 50-f's categorization of misappropriation as a "property right" of decedent estates altered New York's long-standing rule that Section 51 is *not* a *property* right but rather a right of *privacy*. *Id.* Indeed, Section 50-f contains numerous different rights and provisions, in addition to providing one of the first statutory protections for "digital replicas," indicating that the Legislature knows how to extend misappropriation to such uses—but has not done so for Section 51.

### C. Eleven Labs' Anti-SLAPP Remedy Should Not Be Dismissed

Plaintiffs' claim that anti-SLAPP is not available for commercial uses is without merit. Opp. 25. Commerciality is not the test for whether anti-SLAPP remedies apply. *InkMango, Inc. v. Warren*, 221 N.Y.S.3d 922 (N.Y. Sup. Ct. 2024) (awarding fees to for-profit publication).

## III. CONCLUSION

Eleven Labs respectfully requests the Court dismiss the Complaint[20] and award its fees.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

Brian P. Egan (#6227)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant*

OF COUNSEL:

Dori Ann Hanswirth
Joseph A. Greenaway, Jr.
Theresa M. House
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000

February 19, 2025

[20] Plaintiffs' passing request for leave to amend should be denied as futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Also, Plaintiffs failed to submit a motion attaching a draft amended complaint under Local Rule 15.1. That alone is fatal. *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 206 (3d Cir. 2006).

**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 19, 2025, upon the following in the manner indicated:

Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Michael C. Wilson, Esquire
Charles Theodore Zerner, Esquire
Abigail R. Karol, Esquire
MUNCK WILSON MANDALA, LLP
1900 Texas Capital Center
2000 McKinney Avenue
Dallas, TX 75201
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Brian P. Egan*

Brian P. Egan (#6227)